**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| RALPH BROOKS, JR. on behalf of himself and all others similarly situated, | : : : | |
| Plaintiff, | : : | No.: 06-CV-955 |
| v. | : : | |
| WACHOVIA BANK, N.A., et al., | : : | |
| Defendants. | : : | |

## <u>ORDER</u>

  **AND NOW**, this _____ day of _____, 2006, upon consideration of the Motion of All Defendants to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and any response thereto, it is hereby **ORDERED** that the Motion is **GRANTED**.  Plaintiff's Complaint is hereby **DISMISSED WITH PREJUDICE**.

          **BY THE COURT**


          _____
          **GILES, J.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| RALPH BROOKS, JR. on behalf of himself and all others similarly situated, | : : : | |
| Plaintiff, | : : | No.: 06-CV-955 |
| v. | : : | |
| WACHOVIA BANK, N.A., et al., | : : | |
| Defendants. | : : : | |

## MOTION OF ALL DEFENDANTS TO DISMISS PLAINTIFF'S COMPLAINT

Defendants, by and through their undersigned counsel, move this Court for an Order dismissing Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

As set forth more fully in the accompanying Memorandum of Law and exhibits, which are incorporated herein by reference as though fully set forth, Plaintiff's asserted state law claims are untenable because, among other reasons, they have been released, they are pre-empted by the Securities Litigation Uniform Standards Act, and they seek recovery for conduct that is authorized and permitted under the law.

Respectfully submitted,

_____/s/ *Elizabeth F. Abrams*_____
Andrew J. Soven (Pa. Id. No. 76766)
Elizabeth F. Abrams (Pa. Id. No. 86525)
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
(215) 851-8100

Gregory B. Jordan (Pa. Id. No. 42105)
Mary J. Hackett (Pa. Id. No. 51215)
Sharon L. Rusnak (Pa. Id. No. 84339)
**REED SMITH LLP**
435 Sixth Avenue
Pittsburgh, PA 15219
(412) 288-3131

Attorneys for Defendants Wachovia Bank,
N.A., Wachovia Corporation, Evergreen
Investment Services, Inc., Evergreen
Investment Management Co. LLC,

And

John D. Donovan, Jr.
Mark A. Landis
**ROPES & GRAY LLP**
One International Place
Boston, MA  02110-2624
617-951-7000

Attorneys for Defendants the Evergreen
Funds and Michael S. Scofield

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

RALPH BROOKS, JR. on behalf of himself
and all others similarly situated,

                Plaintiff,

v.

WACHOVIA BANK, N.A., et al.,

                Defendants.

:
:
:
:
:
:    No.: 06-CV-955
:
:
:
:
:
:
:

**MEMORANDUM OF LAW IN SUPPORT OF
THE MOTION OF ALL DEFENDANTS TO DISMISS PLAINTIFF'S COMPLAINT**

Andrew J. Soven (Pa. Id. No. 76766)
Elizabeth F. Abrams (Pa. Id. No. 86525)
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
(215) 851-8100

Gregory B. Jordan (Pa. Id. No. 42105)
Mary J. Hackett (Pa. Id. No. 51215)
**REED SMITH LLP**
435 Sixth Avenue
Pittsburgh, PA 15219
(412) 288-3131

Attorneys for Defendants Wachovia Bank, N.A.,
Wachovia Corporation, Evergreen Investment
Services, Inc., Evergreen Investment Management
Co. LLC,

John D. Donovan, Jr.
Mark A. Landis
**ROPES & GRAY LLP**
One International Place
Boston, MA  02110-2624
617-951-7000

Attorneys for Defendants the Evergreen Funds and
Michael S. Scofield

# Table of Contents

**Page**

I.     INTRODUCTION ..................................................................................................1

II.    FACTUAL BACKGROUND ................................................................................2

    A.    This Case Concerns the Bank's Actions as Trustee. ...............................2

        1.    Only the Bank as trustee had a relationship with Plaintiff............................2

        2.    The Complaint challenges the Bank's actions in investing the Brooks Trusts' assets in affiliated mutual funds and the handling of idle funds in the Brooks Trusts. ...................................4

    B.    Plaintiff's claims were Settled and Released in Prior Litigation. ............................5

III.    ARGUMENT ........................................................................................................8

    A.    Plaintiff's Claims Against All Defendants Should Be Dismissed.............................8

        1.    Legal Standard Under Federal Rule Of Civil Procedure 12(b)(6). ..............9

        2.    Plaintiff Released his Claims in Prior Litigation. .........................................9

        3.    SLUSA Mandates Dismissal of Plaintiff's Complaint. ...............................11

            a.    Plaintiff alleges a covered class action. ........................................12

            b.    Plaintiff's claims are founded on state law....................................13

            c.    The core allegations in the Complaint are that Defendants misrepresented or omitted material facts. ......................................13

            d.    Plaintiff's claims are in connection with the purchase of a covered security. ..........................................................................16

        4.    The Complaint should be Dismissed Because the Actions of the Bank were Permitted and Authorized under State Law and the Trust Instruments. ...................................................................................19

        5.    The Complaint does Not State a Claim for Unjust Enrichment.................22

        6.    Plaintiff's Claims are Barred by the Statute of Limitations. ......................23

    B.    Additional Grounds Support Dismissal Of All Claims Against The Other, Non-Trustee Defendants. ......................................................................24

        1.    Pennsylvania Law Does Not Recognize A Claim For "Aiding and Abetting" a Breach of Fiduciary Duty ........................................................25

        2.    Plaintiff Did Not Enter Into a Contract with the Other Defendants. .........27

IV.    CONCLUSION..................................................................................................28

I.      **INTRODUCTION**

Plaintiff's Complaint filed in this action is a morass of murky and repetitive allegations that presents no cognizable claims against Defendants.  Plaintiff purports to bring state law class action claims against numerous Defendants, including Wachovia Bank, N.A. (the "Bank"), for breach of fiduciary duty, breach of contract, and unjust enrichment.  Plaintiff's Complaint fails to state a claim against Defendants because (1) Plaintiff has released his claims; (2) his claims are preempted by the Securities Litigation Uniform Standards Act; (3) the conduct alleged in the Complaint – the Bank's investment of trust assets in shares of various Evergreen mutual funds - is not unlawful, and, in fact, is expressly authorized by law; and (4) the statute of limitations expired on all of Plaintiff's claims prior to the filing of his Complaint.  Accordingly, the Complaint should be dismissed as to all Defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Only the Bank, as the trustee of two trusts for which Plaintiff was the beneficiary, had a relationship with Plaintiff here.  Even accepting the allegations of the Complaint as true, the claims against the other Defendants, Evergreen Investment Services, Inc. ("EIS"), Evergreen Investment Management Services, LLC ("EIM") Evergreen Funds or Michael Scofield ("Scofield"), fail because:  (1) none of these Defendants had a relationship with Plaintiff – fiduciary, contractual or otherwise; (2) there is no claim for "aiding and abetting" a breach of fiduciary duty under Pennsylvania law; (3) there are no allegations as to the terms of the purported contract between the Defendants, other than the Bank, or the purported terms breached; and (4) the Complaint does not allege that any of the aforementioned Defendants were unjustly enriched through monies received from Plaintiff.

## II.   FACTUAL BACKGROUND[1]

### A.   This Case Concerns the Bank's Actions as Trustee.

Plaintiff's Complaint purports to set forth three causes of action against Defendants: breach of fiduciary duty (Count I); breach of contract (Count II); and unjust enrichment (Count III), all arising out of the Bank's administration of the Brooks' trusts as trustee. Distilling the allegations of the rambling and prolix Complaint, Plaintiff's claims can be understood to arise from the Bank's (1) lawful investment of trust assets into the Evergreen mutual funds, including the exchange of shares of common trust funds held by the trusts at issue for shares of Evergreen funds, and (2) the imposition of "sweep fees" for investing idle cash in short term investment vehicles.

### 1.   Only the Bank as trustee had a relationship with Plaintiff.

The Ralph Brooks Educational Fund and The Ralph Brooks Medical Fund (collectively referred to as the "Trusts") were established in December 1990 by grantors the Philadelphia Daily News and WUSL, a Philadelphia radio station.[2]  See Complaint ¶ 3; see also Trust Instruments, which are attached hereto as **Exhibit A** (The Ralph Brooks Educational Fund) and **Exhibit B** (The Ralph Brooks Medical Fund).[3]  The Trust Instruments appointed CoreStates Bank, N.A. as Trustee.  See Exhibits A and B.  CoreStates Bank, N.A. is a predecessor in interest to the Bank.  See Complaint ¶ 15.

---

[1]   For purposes of this Motion only, the Bank accepts the well-pleaded allegations in Plaintiff's Complaint as true.

[2]   The trusts were funded with an aggregate amount of $81,700 in 1991, and the Bank charged total trustee fees of $400 per year or $200 per trust.

[3]   Although Plaintiff's claims are based on the instruments creating the Trusts, he did not attach them to his Complaint.  Because the trust instruments are central to Plaintiff's claims, they can be considered by this Court when ruling on Defendants' Motion.  See In re Rockefeller Center Prop., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196-97 (3d Cir. 1993); Gould Electronics, Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).  In addition, other documents attached to this Motion are public court filings of which Plaintiff is aware.  See Complaint ¶ 55 (alleging Plaintiff's awareness of prior litigation).

As Trustee, the Bank had broad discretion and powers, including

> all powers and authority necessary or desirable to carry out the purposes of the Trust, including, without limiting the generality of the foregoing, the power and authority without court approval:
>
> A.    To invest and reinvest the principal and income of the Trust in all forms of real and personal property, including, but not by way of limitation, stocks, bonds, mortgages, notes and other evidences of indebtedness, and units of any common trust fund maintained by the Trustee or any affiliate of the Trustee, without regard to any principle of diversification or limitation imposed by law on investments by trustees.
>
>                      \* \* \* \* \*
>
> C.    To invest all or part of the Trust in interest-bearing deposit accounts or certificates of any bank or similar financial institution . . . including the Trustee or any affiliate of the Trustee, and to hold cash uninvested.

See Exhibit A at Article Fifth; Exhibit B at Article Fifth.

In addition, the Bank was "entitled to compensation for its services hereunder in accordance with its standard schedule of charges in effect during the period in which its services are rendered."  See id. at Article Seventh.  Plaintiff does not allege that the Bank deviated from its fee schedule in charging fees because it did not.  The Trusts were dissolved or otherwise terminated in February 2006.  See Complaint ¶ 3.

The Trust Instruments reveal that only the Bank had a relationship with Plaintiff. Plaintiff's vague, conclusory allegations cannot change this fact.  For example, there are no allegations that the Wachovia Corporation, the Bank's parent corporation, did anything but exercise "control."  Purported "control" cannot and does not provide the basis for the claims pled. The Plaintiff cannot allege when the purported contract was entered into, the terms or the nature of the breach because there is no such contract.  The same is true for each and every other Defendant, other than the Bank (the "Other Defendants").

### 2.   The Complaint challenges the Bank's actions in investing the Brooks Trusts' assets in affiliated mutual funds and the handling of idle funds in the Brooks Trusts.

Eight years ago, in 1998, as alleged in the Complaint, the Bank "converted" certain trust account assets invested in "common trust funds" into investments in shares of Evergreen mutual funds – Evergreen mutual funds.  See, e.g., Complaint ¶¶ 4, 28, 31, 35, 38, 40.[4]  Plaintiff alleges that the Bank was improperly motivated to undertake the "conversion" and invest trust assets in Evergreen mutual funds because it would save on administrative expenses, increase fee income and demonstrate to the market that Evergreen mutual funds were growing rapidly.  See Complaint ¶¶ 5, 27, 32, 41.

The harm allegedly springing from this process, dubbed the "Conversion" by Plaintiff, is multi-faceted.  First, allegedly as a consequence of the investment in various Evergreen mutual funds, many trust accounts incurred capital gains taxes that, according to the persons affected, could or should have been avoided.  See Complaint ¶ 84; see also Parsky v. First Union Corp.,

---

[4]   As defined under federal law, a "common trust fund" means, among other things, a fund maintained by a bank exclusively for the collective investment and reinvestment of moneys as a trustee.  26 U.S.C. § 584(a)(1).  Common trust funds or "CTFs" are investment vehicles established by a particular bank or trust company to pool assets in order to diversify the investments of several trusts and spread the risk of loss.  CTFs are limited in a number of ways including only permitting buying and selling shares of a CTF once a month after the valuation of the fund has been completed.  "Mutual funds have significant advantages over common trust funds, and in 1996 Congress facilitated the spread of mutual funds for trust investing by allowing tax-free conversion of existing common trust funds to mutual funds."  John H. Langbein, Questioning the Trust Law Duty of Loyalty: Sole Interest or Best Interest?, 114 Yale L.J. 929, 974 (March 2005); see id. at 973 n. 231 (summarizing advantages of mutual funds over CTFs for trust customers).  Recognizing the advantages of mutual funds over CTFs as pooled investment vehicles for trust accounts, virtually every state amended its laws following the federal legislature's lead permitting a fiduciary to invest trust assets in affiliated mutual funds, although with varying requirements as to fees, notices and disclosures.  "Once the advantages of mutual funds over other forms of pooled investment became manifest, the legislatures had no option consistent with the interests of trust beneficiaries other than to facilitate the spread of the affiliated mutual fund…."  See id.  Accordingly, after the laws changed, nearly every major bank exchanged trust assets invested in CTFs for shares of affiliated mutual funds.

51 D.&C.4th 468, 476-77 (Phila. Cty 2001).  Second, Plaintiff alleges that by investing trust assets in various Evergreen mutual funds, the Bank "abdicat[ed]" a purported obligation to provide "individual investment management services."  <u>See</u> Complaint ¶ 85.  Third, because the Bank charges certain fees for trust administration, and the Evergreen mutual funds charge certain fees for investment services, Plaintiff claims the Bank has imposed duplicative and/or excessive fees since the "Conversion."  <u>See</u> <u>id.</u> ¶¶ 5, 41, 42, 89.  Fourth, the Bank has allegedly been able to reduce its operating expenses, which has purportedly harmed Plaintiff in an unspecified manner.  <u>See</u> <u>id.</u> ¶¶ 43, 44, 90.

In addition to harm allegedly flowing from the "Conversion," Plaintiff complains about the treatment of idle funds in trust accounts.  Plaintiff alleges that the Bank carried some idle cash in trust accounts, and that this was wrongful.  <u>See</u> <u>id.</u> ¶ 57.  With the advent of computer technology, the Bank began to "sweep" trust accounts automatically of idle cash, investing it in short term instruments, and imposing a "sweep fee," which—according to Plaintiff (conveniently ignoring a controlling Pennsylvania statute, 20 Pa.C.S. § 7207(b), discussed below)—was also wrongful.  <u>See</u> <u>id</u>.  He seeks a judgment prohibiting the Bank's imposition of sweep fees.  <u>See</u> Complaint, Prayer for Relief at (g).[5]

**B.    Plaintiff's claims were Settled and Released in Prior Litigation.**

Plaintiff acknowledges and admits that, as a result of a prior class action, he received payment on claims resulting from the investment of assets of the Brooks Trusts in various mutual

---

[5]    Plaintiff also makes many puzzling allegations that seem to have no connection to any of the claims pled.  For example, the Bank "us[ed] information regarding the beneficiaries of fiduciary accounts to market various goods and services . . . from which products they have been unjustly enriched."  <u>See</u> Complaint ¶ 89.  No facts alleged in the Complaint concern marketing practices of the Bank.  In addition, marketing to existing customers is not wrongful or illegal.  Accordingly, Plaintiff's allegation concerning purported unjust enrichment resulting from marketing goods and services to trust beneficiaries, like many of Plaintiff's allegations, is nothing more than a bald, unwarranted legal conclusion that this Court should disregard.  <u>See</u> <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).

funds, including some of the Evergreen Funds.  <u>See</u> Complaint ¶ 55.  That prior class action, <u>Robert Parsky and Ann Roantree, on behalf of themselves and all others similarly situated v. Wachovia Bank N.A. f/k/a First Union National Bank</u>, Philadelphia County Court of Common Pleas, February Term 2000, No. 771, resolved on a class-wide basis all claims existing against the Bank and its affiliates at the time, including those relating to the conversion of trust investments invested in common trust funds into the Evergreen mutual funds – precisely the same claims raised here.  <u>See</u> Final Order And Judgment Approving Settlement, dated October 24, 2003, attached hereto as **Exhibit C**.[6]  A notice about the <u>Parsky</u> class action was sent to all class members on or about December 7, 2001.  <u>See</u> Stipulation of Settlement, attached hereto as **Exhibit D**, at 3 ¶ G.

Plaintiff asserts —"upon information and belief" and despite receiving benefits as a member of the settlement class in the <u>Parsky</u> litigation—that he nevertheless released no claims.  <u>See</u> Complaint ¶ 55.  This assertion is patently erroneous.  The Stipulation of Settlement expressly includes "all persons . . . who incurred tax liability by reason of capital gains" on investments held in common trust funds of the Bank.  <u>See</u> Exhibit D § I.3.  In exchange for substantial consideration, the class members and various related parties released claims against the Bank and its affiliates, covenanted not to commence any action concerning released claims, and conceded that the Stipulation of Settlement constitutes a complete defense to any further attempted proceedings on the released claims.  <u>See</u> Exhibit D § III.

In the Stipulation of Settlement, the parties note that the Complaint concerned breach of contract and breach of fiduciary duty claims arising out of the "conversion" – "the conversion of common trust funds into shares of Evergreen mutual funds" – precisely the claims asserted here.  <u>See</u> Exhibit D at 2.  <u>See also</u> <u>Parsky</u>, 51 D.&C.4th at 477.  Indeed, "conversion" is defined in the

---

6    The Court is entitled to rely on public record documents in considering a motion to dismiss under Rule 12(b).  <u>See</u> <u>Pension Benefit Guar. Corp.</u>, 998 F.2d at 1196.

agreement to mean the process of terminating certain common trust funds and transferring the assets into Evergreen mutual funds.  Exhibit D at 7.

The <u>Parsky</u> Stipulation of Settlement defines "Released Claims" broadly, including any claims relating to the "transactions" which most certainly includes the "conversions" challenged in <u>Parsky</u> and now challenged again in this action:

> "Released Claims" means each and every direct, individual, class, representative, derivative and other claim, right, action, allegation, demand, defense, counterclaim, issue, setoff, liability, penalty, and cause of action of every nature and description whatsoever, known or unknown, suspected or unsuspected, including (without limitation) all claims for damages, restitution, disgorgement or rescission, or any other legal or equitable relief, liquidated or unliquidated, which the Releasors, or any of them, had, now has or may hereafter have against the Releasees, or any of them, arising from or in connection with or in any way related, directly or indirectly, to any of the acts, facts, matters, transactions, events, occurrences, disclosures, statements, representations, omissions, or failures to act set forth, alleged, referred to or otherwise embraced in this case, including but not limited to claims arising under the statutory or common laws of the United States, the Commonwealth of Pennsylvania or any other state, territory or jurisdiction (whether domestic or foreign), or arising from or in any way related to the Settlement of these Actions, excepting only any claim to enforce the terms of this Settlement Agreement.

Exhibit D § I.22.  The "Releasees" in the <u>Parsky</u> litigation includes all Defendants in this action:

> "Releasees" means Defendant, its predecessors, successors, present and past parents, joint ventures, affiliates, subsidiaries, divisions or other organizational units of any kind, any entity now or in the past controlled by, controlling or under common control with any of the foregoing, the past and present officers, directors, partners, shareholders, employees, agents, attorneys, representatives, beneficial owners, investment advisors, investment bankers, insurers, independent contractors, accountants, heirs, executors, administrators, predecessors, successors and assigns of each of the foregoing.

Exhibit D § I.23.  Accepting the allegations of Plaintiff's Complaint as true, all Defendants are allegedly completely intertwined and under common control.  <u>See</u>, <u>e.g.</u>, Complaint ¶¶ 1, 6, 7, 16,

17, 18, 46.  Accordingly, all Defendants in this action are encompassed as "Releasees" in the Parsky settlement.

Further, Brooks, as a member of the Class in the Parsky settlement, also agreed not to file suit against the Releasees, including Defendants herein, for the "Released Claims."  Exhibit D at 13.[7]

In summary, Plaintiff brazenly admits that there has already been a class action regarding the "Conversion," and that he has already received payment from the settlement of that prior class action.  See Complaint ¶ 55.  Accordingly, it is Plaintiff who appears to be "double dipping" by seeking compensation for claims that have already been settled and released.

## III.   ARGUMENT

### A.   Plaintiff's Claims Against All Defendants Should Be Dismissed.

As elaborated below, all of Plaintiff's claims have been released in the Parsky litigation, and he is precluded him from asserting his claims here.  Second, Plaintiff's claims are preempted by federal law, namely the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").  Third, the actions that Plaintiff complains of are simply not wrongful, and in fact are authorized under applicable law, thereby barring all causes of action in the Complaint as a matter of law.  Finally, Plaintiff's Complaint was first filed after the statute of limitations for his claims had already expired.  Accordingly, Plaintiff's Complaint should be dismissed in its entirety.

---

[7]    The Stipulation of Settlement excepts from the settlement class only those who could not be located and those who chose to opt out.  See Exhibit D § I.24.  Plaintiff is not among the roughly one hundred class members in those small groups who did not release claims.  See Lists of "Unlocated Potential Class Members" and "Opt Outs" attached to the Stipulation of Settlement as Exhibits A and B, respectively.  Rather, Plaintiff is among the more than eight thousand class members who released all claims against the Bank over two and a half years ago, on the Effective Date of the Stipulation of Settlement.  See Exhibit D at p. 3 ¶ I (providing number of Class Members); § I.12 (defining "Effective Date"); § III (setting forth the release and its effect).

1.      **Legal Standard Under Federal Rule Of Civil Procedure 12(b)(6).**

When ruling on a Federal Civil Rule 12(b)(6) motions to dismiss, the Court may accept only the well-pleaded allegations in the complaint as true.  See Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519 (1983).  The Court may ignore legal conclusions, unsupported conclusion, unwarranted inferences and "sweeping legal conclusions cast in the form of factual allegations."  Maio v. Aetna, Inc., 221 F.3d 472, 485 (3d Cir. 2000); Morse v. Lower Merion School Dist., 132 F.3d 902, 906 n.8 (3d Cir. 1997) (quoting Wright & Miller, Federal Practice and Procedure § 1357 (2d ed. 1997)).  If, when accepting only the well-pleaded facts as true, the Court determines that the plaintiff has failed to state a claim upon which relief can be granted, then dismissal of the complaint is warranted.

2.      **Plaintiff Released his Claims in Prior Litigation.**

As a member of the class in the Parsky litigation, Plaintiff has already released his claims against the Bank and all other Defendants in this action arising out of the "Conversion."  The Parsky release, which is governed by Pennsylvania law, see Exhibit D § X.f, precludes the current litigation in its entirety.  "Parties with possible claims may settle their differences upon such terms as are suitable to them. . . . However improvident the release may be or subsequently prove to be for either party, their agreement, absent fraud, accident or mutual mistake, is the law of their case."  Taylor v. Solberg, 566 Pa. 150, 155, 778 A.2d 664, 667 (2001).

The Parsky release became effective only after all class members received due and adequate notice and a full opportunity to be heard, and a court of competent jurisdiction determined that the settlement, including the release, was fair, adequate, reasonable, in the best interests of the class members, and in satisfaction of the requirements of due process.  See Exhibit C ¶¶ 1-5.  As a member of the class, Plaintiff has released his claims and been enjoined and barred from asserting released claims.  See Exhibit C ¶¶ 10-12.

The Parsky release must be construed in accordance with the plain meaning of its language, and ordinary principles of contract interpretation.  See Buttermore v. Aliquippa Hosp.,

522 Pa. 325, 328-29, 561 A.2d. 733, 735 (1989); Davis v. Government Employees Ins. Co., 775 A.2d 871, 875 (Pa. Super. Ct. 2001).  The plain language of the Parsky release encompasses ***all causes of action*** against the Bank and its affiliates "of every nature and description whatsoever, . . . including (without limitation) all claims for damages . . . which the Releasors, or any of them, had, now has or may hereafter have against the Releasees, or any of them, arising from or in connection with or in any way related" to the claims asserted in the Parsky litigation.  See Exhibit D § I.22.

Plaintiff's claims in this litigation are clearly within the scope of the Parsky release.  A release of all manner of actions and causes of action must be construed as a general settlement of accounts and liabilities.  Three Rivers Motors Co. v. Ford Motor Co., 522 F.2d 885, 895 (3d Cir. 1975) (ordering dismissal of all claims in light of a broadly worded release construed under Pennsylvania law).  Pennsylvania law is clear "that where the parties manifest an intent to settle all accounts, the release will be given full effect even as to unknown claims."  Three Rivers, 522 F.2d at 896.  The broad sweep of the Parsky release includes all of the claims Plaintiff now asserts.  The Court should act in accordance with the "strong judicial policy in favor of parties voluntarily settling lawsuits," Rothman v. Fillette, 503 Pa. 259, 266, 469 A.2d 543, 546 (1983), by dismissing this subsequent action as an unjustifiable attempt to undo a freely negotiated and judicially approved agreement.

As outlined above, the release in Parsky includes the same transactions challenged in this action.  The scope of the release in Parsky  is very broad and the scope of the "Released Parties" encompasses all Defendants herein.  Plaintiff released all of his current claims against the Bank and all of its affiliates in 2003 and cannot resurrect those claims now.  Accordingly, the Complaint should be dismissed with prejudice.[8]

---

[8]      Further, having clearly been advised of the conversion and related issues via the Parsky case and having failed to take any further action for five years, Plaintiff ratified the

Continued on following page

### 3.    SLUSA Mandates Dismissal of Plaintiff's Complaint.

Even if they had not been released in the Parsky litigation, Plaintiff's claims would need to be dismissed because they are completely preempted and subject to dismissal under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").

In 1995, after determining that meritless and abusive private lawsuits were harming the nation's securities markets, Congress enacted the Private Securities Litigation Reform Act ("PSLRA") to impose procedural and substantive restrictions on private securities suits in federal court, including heightened pleading requirements, more rigorous standards for class representation, and strict statutes of limitations.  An unintended consequence of PSLRA's reforms was the recharacterization of securities fraud claims as state law causes of action pursued in state court.  Congress enacted SLUSA to close this loophole and to ensure that national, federal standards would be applied to challenges involving publicly traded securities. See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. ---, 2006 WL 694137 (Mar. 21, 2006); Rowinski v. Salomon Smith Barney Inc., 398 F.3d 294, 298-99 (3d Cir. 2005).  See also SLUSA, Pub. L. No. 105-353, § 2, 112 Stat. 3227, 3227 (Congress enacted SLUSA "in order to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the [PSLRA]").

SLUSA "mandates dismissal of any: (1) covered class action; (2) based on state law; (3) alleging a misrepresentation or omission of a material fact or act of deception; (4) in

---

Continued from previous page
conduct, barring his claims on yet another, independent ground.  Hughes v. LaSalle Bank, N.A., No. 02 Civ. 6384, 2006 WL 620654 at *10-*12 (S.D.N.Y. Mar. 13, 2006) (Mukasey, C.J.) (attached hereto as **Exhibit E**).  Ratification results if a party "remains silent, or acquiesces in the contract for any considerable length of time after the party has the opportunity to annul or avoid the contract."  National Auto Brokers Corp. v. Alleda Development Corp., 364 A.2d 470, 476 (Pa. Super. Ct. 1976).  See also Peoples Mortgage Co. v. Federal Nat'l Mortgage Ass'n, 856 F. Supp. 910, 922 (E.D. Pa. 1994) (citing National Auto Brokers and finding ratification where validity of agreement was not attacked until eighteen months after execution).

connection with the purchase or sale of a covered security." In re Lord Abbett Mutual Funds Fee Litigation, 407 F. Supp. 2d 616, 627 (D.N.J. 2005) (dismissing claims for breach of fiduciary duty and unjust enrichment for purported scheme to pay excessive brokerage commissions); see also 15 U.S.C. §§ 78bb(f)(1)-(2).

The Court must focus on the substance of Plaintiff's allegations and be cognizant that SLUSA's "preemptive force cannot be circumvented by artful drafting." Rowinski 398 F.3d at 304; see also In re Dreyfus Mutual Funds Fee Litigation, 04-CV-0128, 2005 U.S. Dist. LEXIS 29152, at *43-*44 (W.D. Pa. Sept. 30, 2005) (stating that the preemption determination is not a "name game" and requires examination of the substance of the allegations in dismissing state law claims for actions allegedly taken to steer unwitting investors into particular mutual funds to increase fees). The presence or absence of a key word or phrase is not determinative of SLUSA's applicability, but rather whether a reasonable reading of the Complaint reveals allegations generally within SLUSA's purview. See Rowinski, 398 F.3d at 304. When the essence of the complaint involves an untrue statement or substantive omission of a material fact, and when that conduct coincides with a transaction involving a covered security, SLUSA mandates dismissal. See Dudek v. Prudential Securities, Inc., 295 F.3d 875, 880 (8th Cir. 2002); see also SEC v. Zandford, 535 U.S. 813, 819 (2002). In this case, Plaintiff's efforts to circumvent SLUSA through artful pleading are obvious. Consequently, the claims alleged in his Complaint are preempted and should be dismissed.

### a.    Plaintiff alleges a covered class action.

Under SLUSA, a "covered class action" is a lawsuit in which "[d]amages are sought on behalf of a class of more than 50 persons or prospective class members . . . ." 15 U.S.C. §§ 78bb(f)(5)(B)(i)(I); 77p(f)(2)(A)(i)(I). Here, Plaintiff purports to bring various state law claims on behalf of a nationwide class and state subclasses of beneficiaries whose trusts had

assets invested in shares of the various Evergreen Funds by the Bank acting as trustee.[9]  See
Complaint ¶¶ 58-75.  Plaintiff expressly alleges that the purported class and subclasses include
"many thousands" of beneficiaries.  See Complaint ¶ 59.  Clearly, Plaintiff's lawsuit meets
SLUSA's definition of a covered class action.

### b. Plaintiff's claims are founded on state law.

Plaintiff's claims are also clearly founded on state law, as they purport to constitute state
law claims for breach of fiduciary duty, breach of contract, and unjust enrichment.
See Complaint ¶¶ 76-92.

### c. The core allegations in the Complaint are that Defendants misrepresented or omitted material facts.

On its face, Plaintiff's Complaint alleges that Defendants misrepresented and omitted key
material facts.  Plaintiff's Complaint centers on the singular theme that Defendants wrongfully
invested assets of Plaintiff's and other beneficiaries' trust accounts in shares of the Evergreen
mutual funds, misrepresenting related fees and expenses, and touting allegedly false benefits to
the beneficiaries.  Plaintiff's numerous allegations of misrepresentation include, but are not
limited to:

> Each of the defendants had continuous and systematic contacts
> with this District by reason of, *inter alia*, their common scheme,
> plan and conspiracy set forth below, to foist upon the fiduciary
> accounts of plaintiff and all members of the Class shares of the
> proprietary mutual funds of defendants, including, in particular,
> those of the Evergreen Funds.

Complaint ¶ 11 (emphasis added).

> [Defendants] permitted the advisory fees and other expenses
> charged to the various Evergreen Funds to be established and
> maintained by the Business Trust at artificially high levels despite
> *pro forma* negotiations, all of which was to the disadvantage of the
> holders of shares of the various Evergreen Funds, including the

---

9    Defendants do not concede that the predominance requirement for class certification, or
     any other requirement for class certification under Fed. R. Civ. P. 23, can be satisfied
     here.

Brooks Trust fiduciary account and those of the other members of the Class.

Id. ¶ 24 (emphasis added).

To the best of plaintiff's knowledge, information and belief, <u>in addition to [predecessor] FUB's misrepresentations</u> of the capital gains tax-free nature of the Conversions, <u>none of its communications disclosed</u> to affected co-fiduciaries or beneficiaries the substantial incremental expenses that would be incurred by these fiduciary accounts as a consequence of their assets being invested in the Evergreen Funds as compared to Common Trust Funds, all of which information was known or could have been known to FUB as well as to each of the defendants prior to the Conversions.

Id. ¶ 39 (emphasis added).

Enclosed with the Bank's various letters set to, inter alia, some beneficiaries of fiduciary accounts, co-fiduciaries, administrators of employee benefit plans and/or managers of foundations were <u>various Evergreen Funds prospectuses and other documents which were drafted so as to conceal</u> the motives of Wachovia and the Bank for the Conversions into their proprietary mutual funds, the benefits of the Conversions to them and their subsidiaries or the increased costs and expenses that would be incurred by the fiduciary accounts as a result of the Conversion. . . . In fact the Bank and the lawyers who drafted these documents used such language to conceal the fact that although in many cases there was a credit for certain of the post-Conversion investment advisory fees to be incurred by fiduciary accounts, the credits were insufficient to overcome the substantially higher expenses that fiduciary accounts would bear post-Conversion and that the Bank intended to reduce or eliminate the credit as soon as practicable thereafter once consents were obtained and/or the Conversions completed.

Id. ¶ 45. (emphasis added).

At <u>no place</u> in any of the Evergreen Funds prospectuses the defendants issued to beneficiaries of fiduciary accounts in connection with the Conversions . . . <u>did they disclose</u> that, post-Conversions, all fiduciary accounts affected by the Conversions would be forced to bear substantially higher investment-related expense levels post-Conversion than those which preceded it, even allowing for whatever credits the Bank applied to its fees for serving as fiduciary.

Id. ¶ 47 (emphasis added).

Significantly, <u>at no time</u> did the foregoing "disclosure" documents <u>disclose</u> clearly to a co-fiduciary, a beneficiary or other person interested in the affected fiduciary accounts the true additional direct and indirect expenses of the Conversion they were being asked to approve (although some of such "disclosures" were buried in the Evergreen Funds prospectuses) nor, in fulfillment of the Bank's fiduciary responsibilities, did the Bank make any personal

> efforts to insure that plaintiffs or others similarly situated
> understood the extent to which the Bank, Wachovia, Evergreen,
> the Business Trust and its Trustees would benefit from the
> Conversions and how the plaintiff's account and other fiduciary
> accounts would end up paying substantially more for the
> investment and related services that the Bank had historically
> supplied in partial consideration for the Bank's fees for serving as
> corporate fiduciary.

Id. ¶ 49 (emphasis added).

> Upon information and belief, despite its ability to dictate the
> content of the Evergreen Funds prospectuses, at no time following
> the foregoing "disclosure" did the Bank make any complete and
> candid disclosure of the full extent of the damages caused to the
> fiduciary accounts by the Conversions or other improper
> investments in the Bank's proprietary funds.  Further, the
> defendants made no disclosure of the true motives of the
> defendants in carrying out the Conversions or the full extent to
> which the defendants were profiting unjustly there from and, in
> particular, the additional assets which would flow into the
> Evergreen Funds and other proprietary mutual funds, making them
> more saleable to the investing public generally.

Id. ¶ 50 (emphasis added).

The disclosure of fees associated with mutual fund investments is an area comprehensively regulated by federal securities laws and thus is precisely the type of action which SLUSA was intended to preempt.  See Press v. Quick & Reilly, Inc., 218 F.3d 121, 131-32 (2d Cir. 2000).  In cases like this, where Plaintiff has attempted merely to recharacterize claims based on the misrepresentation or omission of material facts by pasting state law labels on them, courts in this Circuit have disregarded these labels and dismissed the claims as preempted by SLUSA.  See, e.g., Rowinski, 398 F.3d at 304; In re Lord Abbett, 407 F. Supp. 2d at 627.

In Rowinski, the plaintiff filed a putative class action alleging that the defendant artificially inflated the ratings of stocks of its investment banking clients to induce its brokerage customers to buy the stocks of those clients.  Rowinski, 398 F.3d at 296-97.  The plaintiff initially filed his claims in Pennsylvania state court and purported to assert claims of breach of contract, unjust enrichment, and violation of Pennsylvania's consumer protection law.  Id. at 297. The defendant removed the action to federal court and moved to dismiss based on SLUSA preemption.  Arguing against the motion to dismiss, the plaintiff claimed that SLUSA should not

preempt his case because "the 'breach of contract claim does not involve a misrepresentation or omission.' In other words, plaintiff contends that because 'misrepresentation' is not an essential legal element of his claim under Pennsylvania contract law, the factual allegations of misrepresentation included in the complaint are irrelevant to the SLUSA inquiry." Id. at 300. The Third Circuit Court of Appeals disagreed with the plaintiff's narrow conception of SLUSA preemption:

> SLUSA preempts any covered class action "alleging" a material misrepresentation or omission in connection with the purchase or sale of securities. . . . Under this provision, preemption does not turn on whether allegations are characterized as facts or as essential legal elements of a claim, but rather on whether the SLUSA prerequisites are "alleged" in one form or another. A contrary approach, under which only essential legal elements of a state law claim trigger preemption, is inconsistent with the plain meaning of the statute. Furthermore, it would allow artful pleading to undermine SLUSA's goal of uniformity – a result manifestly contrary to congressional intent. . . . Where, as here, allegations of a material misrepresentation serve as the factual predicate of a state law claim, the misrepresentation prong is satisfied under SLUSA.

Id.

Each and every count of Plaintiff's Complaint incorporates by reference all of the alleged misrepresentations and omissions. See Complaint at ¶¶ 76, 83, 88. In other words, the "gravamen" of the Complaint is one of misrepresentation and omission with respect to investments in a covered security and, in that regard, is preempted by SLUSA. See Rowinski, 398 F.3d at 305 (where allegations warranting dismissal under SLUSA are incorporated into all counts of the complaint, the entire complaint is preempted by SLUSA and must be dismissed).

### d.   Plaintiff's claims are in connection with the purchase of a covered security.

#### (i)   Plaintiff's claims involve a covered security.

There is no dispute that shares of Evergreen mutual funds are "covered" securities, which are defined as securities that satisfy the standards of the Securities Act of 1933 §§ 18(b)(1) and (b)(2), including "those securit[ies] issued by an investment company that is registered, or that

has filed a registration statement, under the Investment Company Act of 1940." See 15 U.S.C. §§ 77p(f)(3), 77r(b); see also In re Lord Abbett, 407 F. Supp. 2d at 627 (implicitly conceding that shares of mutual funds at issue are covered securities by arguing only that deceptive practices were not in connection with the sale of securities); In re Blackrock Mutual Funds Fee Litig., 04-CV-164, 2006 U.S. Dist. LEXIS 13846, at *45 (W.D. Pa. Mar. 29, 2006) (noting that plaintiffs did not dispute that the mutual fund shares they held were covered securities for purposes of SLUSA).

(ii)    The "in connection with" requirement is met.

The Supreme Court has traditionally given a broad interpretation to the phrase "in connection with" and has held that this language is to be construed "not technically and restrictively, but flexibly to effectuate its remedial purpose," which is "to achieve a high standard of business ethics in the securities industry." Zandford, 535 U.S. at 819. See also Merrill Lynch, 2006 WL 694137, at *7 (citing Super. of Ins. of N.Y. v. Bankers Life & Cas. Co., 404 U.S. 6 (1971)); Zandford, 535 U.S. at 820).

In Merrill Lynch, the Court affirmed that the traditional broad interpretation that has been given to this language extends to the "in connection with" phrase as it is used in SLUSA. Specifically, the Court held that "it is enough that the fraud alleged 'coincide' with a securities transaction--whether by the plaintiff or by someone else." See 2006 WL 693137 at *7. "The requisite showing, in other words, is 'deception "in connection with the purchase or sale of any security," not deception of an identifiable purchaser or seller.'" Id. (citing United States v. O'Hagan, 521 U.S. 642, 651, 658 (1997)). See also SEC v. Zandford, 535 U.S. at 825 (When the complaint "describes a fraudulent scheme in which the securities transactions and breaches of fiduciary duty coincide[,] . . . [t]hose breaches [are] therefore 'in connection with' securities sales within the meaning of § 10(b)." (emphasis added)).

17

Relying on this traditional interpretation, the Third Circuit in Rowinski set forth a framework for analyzing whether an alleged misrepresentation or omission is made "in connection with" the sale of a covered security.  The "guideposts" set out by the Rowinski Court are (1) whether the covered class action alleges a fraudulent scheme that coincides with the purchase or sale of securities; (2) whether the complaint alleges a material misrepresentation or omission disseminated to the public in a medium upon which a reasonable investor would rely; (3) whether the nature of the parties' relationship is such that it necessarily involves the purchase or sale of securities; and (4) whether the prayer for relief connects the state law claims to the purchase of securities.  Rowinski, 398 F.3d at 302.

Plaintiff here alleges what amounts to a fraudulent scheme to induce beneficiaries of trust accounts to consent to the Bank using the assets of those trusts to invest in shares of the Evergreen mutual funds by misleading them about the value of those investments and the related fees and expenses.  As in Merrill Lynch, the alleged breach of fiduciary duty, as well as the claims for breach of contract and unjust enrichment, coincides with the purported scheme to invest trust assets in shares of the Evergreen mutual funds.  Thus, the first Rowinski guidepost points toward SLUSA preemption.

Plaintiff also alleges various communications that allegedly induced some trust beneficiaries to consent to investment of trust assets in the Evergreen mutual funds.  See, e.g., Complaint ¶¶ 35-39.  These communications were sent out to the persons potentially affected by the proposed conversion, and were in a form intended to be relied upon by the recipients.  See, e.g., Complaint ¶¶ 33-35.  The second Rowinski guidepost, therefore, also indicates that preemption is appropriate.

The damages Plaintiff seeks are also relevant in connecting the allegations to the securities transactions.  See Rowinski, 398 F.3d at 301.  Plaintiff alleges that he is entitled to reimbursement of management and advisory fees charged to the trust assets in relation to

Evergreen mutual funds investments, as well as apparent derivative relief of repayment of money to the Evergreen Funds.  These damages "connect" the allegations of misrepresentations about the Nations Funds and the fees associated with those funds to transactions in securities.  Cf. Behlen v. Merrill Lynch, 311 F.3d 1087, 1094 (11th Cir. 2002) (allegations of "excess fees and commissions" incurred in association with securities transactions are a relevant factor in determining whether claims are "connected" to securities transactions), cert. denied, 539 U.S. 927 (2003).

In sum, Plaintiff's claims of misrepresentations and omissions on the part of the Defendants, which pervade the entire Complaint and form the basis of every claim, are "in connection with" a securities transaction and are preempted by SLUSA.  The Complaint therefore must be dismissed.

**4.     The Complaint should be Dismissed Because the Actions of the Bank were Permitted and Authorized under State Law and the Trust Instruments.**

Each of Plaintiff's claims for breach of fiduciary duty, breach of contract, and unjust enrichment is predicated on the faulty contention that the investment of trust assets and charging of fees was improper.  See, e.g., Complaint ¶¶ 28-33, 40, 41, 57.  Plaintiff has failed to state a claim upon which relief can be granted because the alleged improper conduct that forms the basis for his claims— investment in the Evergreen Funds and imposition of "sweep fees"—is expressly authorized by state law and permitted by the Trusts themselves.  No claim, therefore, exists as a matter of law.

The laws of the Commonwealth of Pennsylvania (and virtually every other state) explicitly permit trustees to invest the assets of trust investments in mutual funds advised or serviced by an affiliate of the trustee.  See 20 Pa. C.S.A. § 7209 ("Notwithstanding that a bank or trust company or an affiliate provides services to the investment company or investment trust, . . . and receives reasonable compensation for those services and notwithstanding any other

provision of law, a bank or trust company acting as a fiduciary, agent or otherwise may invest and reinvest in a mutual fund").  Because investment of trust assets in mutual funds thus carries the imprimatur of the Pennsylvania General Assembly, investing assets of the Brooks Trusts was not wrongful and was not an "abdication" of any duty owed to Plaintiff.[10]  See also 1996 OCC ltr.  LEXIS 33 (OCC Interpretive Letter No. 722 (May 1996)) (the Office of the Comptroller of the Currency, which regulates the bank, has opined that a national bank may invest trust assets in proprietary mutual funds and receive trustee fees notwithstanding any fees the mutual fund servicer may charge); Restatement (Third) of Trusts, Prudent Investor Rule § 227, comment M, at 51.

Furthermore, Pennsylvania law explicitly permits the "sweep fees" that Plaintiff claims were wrongfully charged to the Trusts.  See 20 Pa. C.S.A. § 7207(b) (authorizing a fiduciary to make temporary investments of funds it may hold uninvested, and to charge a reasonable fee in addition to any other fee for services rendered in making temporary investments).  As counsel for Plaintiff knows well, the Orphans' Court in Pennsylvania expressly held years ago that the Probate, Estates and Fiduciaries Code permits fiduciaries to "sweep" income into investment vehicles in which the bank may have an ancillary relationship, and "to charge a reasonable fee, in addition to all other compensation, for said temporary investments."  In re Packard Trust, 12 Fiduciary Rep. 2d 148, 150-51 (Mont. Cty. 1992) (emphasis in original).[11]

---

[10]     20 Pa.C.S. § 706(f) ("Mutual funds.—Investment in a mutual fund is not a delegation of investment function, and neither the mutual fund nor its advisor is an investment agent.")

[11]     The Packard case resolved the question of the propriety of sweep fees under Pennsylvania law at a time when Plaintiff's counsel was attempting to secure federal court adjudication of the same question.  Although he obtained a ruling from the district court, that, contrary to Pennsylvania law, the fees were improper, the Third Circuit promptly reversed the decision, finding that the lower court lacked subject matter jurisdiction.  See Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1050 (3d Cir. 1993), cert. denied sub nom. Upp v. Mellon Bank, N.A., 510 U.S. 964 (1993).  While subsequent changes in the scope of the Court's diversity jurisdiction have altered the jurisdictional calculus, Pennsylvania law on sweep fees remains explicit and unchanged.

Accordingly, because the Bank's actions were authorized under state law, it is axiomatic that those actions did not breach a duty of care owed to Plaintiff.  See In re Packard Trust, 12 Fiduciary Rep. 2d at 151 ("the Court affirms the practice of 'sweeping' income [and] affirms the practice of charging reasonable 'sweep' fees"); see also Heritage Surveyors & Eng'rs, Inc. v. National Penn Bank, 801 A.2d 1248, 1253 (Pa. Super. Ct. 2002) (bank did not breach a duty owed to plaintiff when it complied with its legal duty to maintain the confidentiality of its customer's information).  Accord Exhibit E, Hughes v. LaSalle Bank, N.A., No. 02 Civ. 6384, 2006 WL 620654 at *11 (S.D.N.Y. March 13, 2006) (in dismissing claims brought by the same Plaintiffs' counsel, the Court noted that the applicable state law "expressly permits a trustee to invest and reinvest the trust estate in a mutual fund, including those mutual funds 'for which the trustee or an affiliate acts as advisor or manager' and receives 'reasonable remuneration' for any services provided to the mutual funds").

Plaintiff's breach of contract claim must also be dismissed because Plaintiff cannot identify any provisions of the Brooks Trusts Instruments that the Bank allegedly breached.[12] Indeed, Plaintiff does not identify in the Complaint any term of the instruments that prohibited investment in shares of the Evergreen mutual funds.  To the contrary, the Trust Instructions explicitly permitted the Bank to invest in "all forms of real or personal property" without limitation.  Exhibit A, Article Fifth; Exhibit B, Article Fifth (emphasis added).  A party cannot

---

[12]     While Plaintiff repeatedly claims that certain unspecified fees were "excessive," he does not claim that the Bank's fees breached the terms of the Trust Instruments because they did not.  Under these circumstances, he has failed to state a claim for breach of contract or breach of fiduciary duty for "excessive" fees.  20 Pa.C.S.A. §7185(c); In re Duncan Trust, 391 A.2d 1051, 1055 (Pa. 1978) (compensation set forth in the instrument creating the trust will be enforced).  Given the inherent individual nature of the inquiry as to whether fees are "excessive," courts have held that a claim for excessive fiduciary fees is not amenable to class treatment.  See, e.g., Freedman Estate, 1 Fiduciary 2d 60 (O.C. Allegh.  Co. 19800), aff'd on other grounds, 453 A.2d 651 (Pa. Super. 1982); Price v. Wilmington Trust, 730 A.2d 1236 (Del. Ch. 1997); Wood v. Victoria Bank and Trust Co., 69 S.W.3d 235 (Tex. App. 2001).  .

be liable for breach of contract when its actions did not breach a term of the contract.  See Cable & Assoc. Ins. Co. v. Commercial Nat'l Bank, 875 A.2d 361, 364-65 (Pa. Super. 2005) (a bank does not breach a contract where it has complied with the terms of the agreement).  Accordingly, Plaintiff's breach of contract claim fails as a matter of law for this reason as well and should be dismissed.

Ironically, in addition to seeking damages for the imposition of "sweep fees," Plaintiff also seeks damages for the practice that pre-dated sweeping accounts—that of leaving funds idle for periods of time.  See Complaint ¶ 57.  In Plaintiff's case, however, the Trusts explicitly *authorized* the Bank to hold trust assets uninvested.  See Exhibit A, Article Fifth at C; Exhibit B, Article Fifth at C.  Thus, because the terms of the Trusts allowed the Bank to hold uninvested assets of the Trusts, having idle funds on hand cannot now serve as a basis for a cause of action.

Finally, Brooks can only recover if the Trusts have suffered a loss, which he does not and cannot allege here.  See, e.g., In re Mendelhall, 484 Pa. 77, 82 n.3, 398 A.2d 951, 954 n.3 (1979); In re McCune, 705, A.2d 861, 865 (Pa. Super. 1997).

In sum, because both state law and the Trust Instruments authorized the conduct challenged in the Complaint and there was no loss to the trust, Plaintiff's claims for breach of fiduciary duty and breach of contract are barred as a matter of law.  See In re McCune, 705 A.2d 861, 865, 868 (Pa. Super. 1997) (investment of charitable trust funds by a corporate trustee in its own stock was not improper self-dealing where authorized by the will); In re Will of Heidenreich, 378 N.Y.S.2d 982, 985 (N.Y. Sur. Ct. 1976) (same).

### 5.        The Complaint does Not State a Claim for Unjust Enrichment.

Count III asserts a claim against all Defendants for unjust enrichment.  A plaintiff must prove three elements to succeed on an unjust enrichment claim under Pennsylvania law: (1) "benefits conferred on one party by another," (2) "appreciation of such benefits by the recipient," and (3) "acceptance and retention of these benefits under such circumstances that it

would be inequitable [or unjust] for the recipient to retain the benefits without payment of value."  Allegheny General Hosp. v. Philip Morris, Inc., 228 F.3d 429, 447 (3d Cir. 2000) (brackets in original).  See also Torchia v. Torchia, 346 Pa. Super. 229, 233, 499 A.2d 581, 582 (1985) (setting forth the elements of an unjust enrichment claim).

Given that the conduct challenged here, including the collection of both trustee and mutual fund fees relating to invest trust assets in mutual funds administered by Bank affiliates, is permissible under state law as well as the Trust Instruments, there is no basis to conclude that the fees paid to the Bank or the Evergreen mutual funds were "unjust" as a matter of law.  Further, the gravamen of Plaintiff's claims is that he paid too much money to the Bank for the services it provided, yet he does not and cannot allege that the Bank charged more for its services than provided for in the terms of the Trust Instruments.

There are no allegations that Plaintiff paid fees to any Defendants other than the Bank – unjust or otherwise.  Any vague allegations to the contrary are simply unwarranted given that there are no facts alleged in the Complaint which suggest that there was any relationship between Plaintiff and the Other Defendants pursuant to which Plaintiff conferred any benefit upon them.

**6.     Plaintiff's Claims are Barred by the Statute of Limitations.**

Under Pennsylvania law, claims for breach of contract and unjust enrichment must be brought within four years of accrual of a cause of action.  See 42 Pa. C.S.A. § 5525 (4), (8); see also Cole v. Lawrence, 701 A.2d 987, 989 (Pa. Super. Ct. 1997) (claims for unjust enrichment are subject to a four-year limitations period as contracts implied in law).  A two-year statute of limitations applies to breach of fiduciary duty claims.  See 42 Pa. C.S.A. § 5524 (7); see also Gurfein v. Sovereign Group, 826 F. Supp. 890, 917 (E.D. Pa. 1993) (finding the two year statute of limitations applies to breach of fiduciary duty claims under Pennsylvania law).

As admitted in the Complaint, the "conversion" occurred more than eight years ago in 1998.  Further, as a member of the Parsky class, Plaintiff received a court-approved class notice

in December 2001.  See Exhibit D at 3 ¶ G.  Accordingly, even in the absence of the release that bars all of Plaintiff's current claims, any claims based upon the alleged "conversion" of trust investments into the Evergreen mutual funds are barred by the statute of limitations.

Plaintiff's claims concerning the "conversion" of common trust fund investments to shares of Evergreen mutual funds would have accrued at or about the time the investment changes were made.  The "conversion" of investments allegedly took place in "late 1998 and continued into 1999."  Complaint ¶ 27.  The limitations period, therefore, would have expired at the latest in 2003.  For purposes of this motion to dismiss, however, even if Plaintiff contends his claims did not accrue at the time the "conversions" took place, it is apparent that those claims accrued no later than December 2001, when the class notice went out to all Parsky class members.  Undeniably, at that time, Plaintiff's claims had accrued (and were, in fact, being actively litigated by the plaintiffs in Parsky), and it would be implausible to assert otherwise. Even under this overly generous reading of the facts, Plaintiff's claims would have expired in December 2005.  Because his suit was filed in March 2006, all of his claims have expired.

**B.    Additional Grounds Support Dismissal Of All Claims Against The Other, Non-Trustee Defendants.**

Clearly for leverage and harassment purposes, Plaintiff names multiple Defendants, asserting oblique, vague and imprecise allegations.  None of the Other Defendants (other than the Bank) had a relationship of any kind with Plaintiff, and this Court should not accept any vague, unwarranted, and illogical contentions to the contrary.  See Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 184 (3d Cir. 2000) (in ruling on a motion under Rule 12, the Court "need not accept as true unsupported conclusions and unwarranted inferences" and should "draw on the allegations of the complaint, but in a realistic, rather than a slavish, manner" (internal quotations omitted)).  As Plaintiff alleges, the conduct arose out of the two trusts for which only the Bank served as trustee.

**1.      Pennsylvania Law Does Not Recognize A Claim For "Aiding and Abetting" a Breach of Fiduciary Duty**

Under Pennsylvania law, a fiduciary relationship arises where "one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on one side, or weakness, dependence or justifiable trust on the other."  Plaum v. Jefferson Pilot Financial Ins. Co., 2004 WL 2980415, at *5 (E.D. Pa. Dec. 22, 2004).  Even accepting as true the allegations of the Complaint, the only entity that could conceivably have a fiduciary relationship is the entity that administered the Brooks Trusts account, Wachovia Bank, N.A.  Indeed, the decisions which Plaintiff claims constituted a breach of fiduciary duty were all made by "the Bank," and not any of the Other Defendants.  Complaint, ¶¶ 78-82 (all referencing "the Bank's" conduct").

Plaintiff tries to assert a fiduciary relationship with the Other Defendants, but there is no authority to support his claim.  For example, Plaintiff claims that because some of the Evergreen mutual funds accepted his Trusts' assets for investment purposes, those Evergreen mutual funds assumed the "pre-existing" fiduciary duties of the Bank and that, in turn, each Board member, including Scofield, assumed a fiduciary duty to Plaintiff.  Complaint ¶¶ 23-24.  Nothing in the law supports this expansive interpretation, which would turn the financial services industry on its head.  Surely the Complaint makes no comment on what Mr. Scofield or any mutual fund did after "accepting" the trust assets that violated an alleged duty.  Further, there is no authority that Plaintiff's repeated allegations of conspiracy can support a claim for breach of fiduciary duty against the Other Defendants.

Plaintiff's only apparent theory, that the Other Defendants "aided and abetted" the Bank's breach of fiduciary duty, fails under Pennsylvania law.

The most recent case to consider the existence of an aiding and abetting cause of action under Pennsylvania law is Flood v. Makowski, 2004 WL 1908221 (M.D. Pa. Aug. 24, 2004).  In Flood, the Court refused to recognize a claim under Pennsylvania law for aiding and abetting a

breach of fiduciary duty by another.  Id. at *36.  The Flood court began its analysis by noting that

"the Pennsylvania Supreme Court has not recognized aiding and abetting breach of fiduciary

duty" as a cause of action under Pennsylvania law.  Id.  Citing controlling Third Circuit

precedent, the Court refused to expand Pennsylvania law:

> [F]ederal courts may not engage in judicial activism.
> Federalism concerns require that we permit state courts to
> decide whether and to what extent they will expand state
> common law…. Our role is to apply the current law of the
> jurisdiction, and leave it undisturbed.

Flood, 2004 WL 1908221, at *36 (citing Leo v. Kerr-McGee Chem. Corp., 37 F.3d 96, 101 (3d

Cir. 1994)).  The Flood Court noted that a very small number of lower court cases had

recognized the aiding and abetting tort, but nonetheless determined that the Third Circuit's

admonition prohibited it from recognizing an entirely new cause of action under Pennsylvania

law.  Id.

Likewise, in Daniel Boone Area School District v. Lehman Bros., Inc., 187 F. Supp.2d

400 (W.D. Pa. 2002), the court refused to recognize a tort under Pennsylvania law for aiding and

abetting a breach of fiduciary duty by another, holding that recognizing such as cause of action

would result in "a significant expansion of Pennsylvania tort liability."  Daniel Boone, 187

F.Supp.2d at 413.  Former Chief Judge Smith determined:

> As a federal court sitting in diversity, it is not for me to say
> whether the common law of Pennsylvania should include an action
> under § 876b [of the Restatement (Second) of Torts]. I will
> therefore dismiss [plaintiff's] cause of action because it has not
> been recognized under Pennsylvania law.

Id.

Both the Flood and Daniel Boone decisions reflect the appropriate restraint for federal

courts to exercise when deciding novel issues of state law.  Unless and until the Pennsylvania

Supreme Court recognizes a cause of action for aiding and abetting the breach of fiduciary duty

by another, it would be improper for this Court to step in and create a new cause of action under

Pennsylvania law.  The Third Circuit has made clear that under these circumstances, "it is not the role of a federal court to expand state law in ways not foreshadowed by state precedent."  City of Philadelphia v. Beretta U.S.A. Corp., 277 F.3d 415, 421 (3d Cir. 2002) (citation omitted);  see also Werwinski v. Ford Motor Co., 286 F.3d 661, 680 (3d Cir. 2002) (where faced with novel state law question not addressed by Pennsylvania Supreme Court, "we should opt for the interpretation that restricts liability, rather than expands it, until the Supreme Court of Pennsylvania decides differently") (citations omitted);  "Our role is to apply the current law of the jurisdiction, and leave it undisturbed."  Leo v. Kerr-McGee Chem. Corp., 37 F.3d 96, 101 (3d Cir. 1994) (quoting City of Philadelphia v. Lead Indus. Ass'n, 994 F.2d 112, 123 (3d Cir. 1993)).

Although Plaintiff alleges that the Other Defendants "conspired" with the Bank in such a way that facilitated the Bank's alleged breach of fiduciary duty, this allegation is insufficient to state a claim for breach of fiduciary duty as a matter of Pennsylvania law.  Moreover, nowhere in the Complaint does Plaintiff allege facts that would support a finding that there was a relationship between the Plaintiff and these Other Defendants that would give rise to a fiduciary relationship.  As a result, Count I does not state a claim against the Other Defendants, and therefore it should be dismissed.

### 2.    Plaintiff Did Not Enter Into a Contract with the Other Defendants.

To state a claim for breach of contract under Pennsylvania law, the plaintiff must allege the existence of a contract with the defendant and its essential terms.  See, e.g., Pittsburgh Constr. Co. v. Griffith, 834 A.2d 572, 580 (Pa. Super. 2003).  The Complaint does not allege that there was an express contract between Plaintiff and the Other Defendants or Scofield.  See Complaint ¶¶ 83-86 (Count II).  Indeed, the allegations contained in Plaintiff's breach of contract claim consistently refer to "the Bank's contractual obligations," and not to any contractual obligations of any other Defendant.  Complaint ¶ 85 (emphasis added).

Throughout Count II, Plaintiff references his contractual obligations with the Bank, and in the last paragraphs of that count, as an after thought, Plaintiff avers that "by virtue of the defendants' breach of their respective contractual obligations," he has suffered harm.  Complaint ¶ 87.  Plaintiff's bare allegation that each Defendant has "respective contractual obligations" to Plaintiff is not supported by any other allegations in the Complaint.  Conveniently, Plaintiff does not allege the terms of the purported contracts between him and the Other Defendants.  He does not allege when the contracts purportedly were formed, the terms of those agreements or the terms purportedly breached, and he cannot because no such contracts exist.  Accordingly, Count II should be dismissed.

## IV.    CONCLUSION

Plaintiff's Complaint should be dismissed because it fails to state a claim upon which relief can be granted.  Plaintiff's claims have been released, are preempted by federal law, improperly predicated on conduct that is consistent with state law and Plaintiff's trust instruments, and are time-barred.

Respectfully submitted,


_____/s/ *Elizabeth F. Abrams*_____
Andrew J. Soven (Pa. Id. No. 76766)
Elizabeth F. Abrams (Pa. Id. No. 86525)
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
(215) 851-8100

Gregory B. Jordan (Pa. Id. No. 42105)
Mary J. Hackett (Pa. Id. No. 51215)
Sharon L. Rusnak (Pa. Id. No. 84339)
**REED SMITH LLP**
435 Sixth Avenue
Pittsburgh, PA 15219
(412) 288-3131

Attorneys for Defendants Wachovia Bank,
N.A., Wachovia Corporation, Evergreen
Investment Services, Inc., Evergreen
Investment Management Co. LLC,

and

John D. Donovan, Jr.
Mark A. Landis
**ROPES & GRAY LLP**
One International Place
Boston, MA  02110-2624
617-951-7000

Attorneys for Defendants the Evergreen
Funds and Michael S. Scofield

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of May, 2006, I caused a true and correct copy of the foregoing Motion of All Defendants to Dismiss Plaintiff's Complaint, and the accompanying Memorandum of Law in Support of the Motion to Dismiss to be served via electronic mail through the Court's electronic filing system and via first class U.S. Mail, postage prepaid, upon the following counsel of record:

> Richard D. Greenfield
> Greenfield & Goodman LLC
> 7426 Tour Drive
> Easton, MD 21601
> email:  whitehatrdg@earthlink.net

> Ann Miller
> Ann Miller LLC
> 834 Chestnut Street, Suite 206
> Philadelphia, PA 19107
> email:  am@attorneyannmiller.com

_____/s/ _Elizabeth F. Abrams_____
Elizabeth F. Abrams
