**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RALPH BROOKS, JR. on behalf of himself and all others similarly situated, | : | |
| | : | |
| Plaintiff, | : | No. 06-CV-955 |
| | : | |
| v. | : | |
| | : | |
| WACHOVIA BANK, N.A., et al., | : | |
| | : | |
| Defendants. | : | |

## <u>ORDER</u>

**AND NOW**, this _____ day of _____, 2006, upon consideration of the Defendants' Motion to Dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and any response thereto, it is hereby **ORDERED** that the Motion is **GRANTED**. Plaintiff's Amended Complaint is hereby **DISMISSED WITH PREJUDICE**.

**BY THE COURT**

_____
**GILES, J.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

<table>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>RALPH BROOKS, JR. on behalf of himself<br>and all others similarly situated,</td><td>:<br>:<br>:</td><td></td></tr>
<tr><td>Plaintiff,</td><td>:<br>:</td><td>No.: 06-CV-955</td></tr>
<tr><td>v.</td><td>:<br>:</td><td></td></tr>
<tr><td>WACHOVIA BANK, N.A., et al.,</td><td>:<br>:</td><td></td></tr>
<tr><td>Defendants.</td><td>:<br>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
</table>

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants, by and through their undersigned counsel, hereby move this Court for an Order dismissing Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

As set forth more fully in the accompanying Memorandum of Law and exhibits, which are incorporated herein by reference as though fully set forth, Plaintiff's Amended Complaint fails to state a cause of action under the common law and fails to state a cause of action under the laws of the United States.

Respectfully submitted,

Dated: July 14, 2006

_____/s/ Elizabeth F. Abrams_____
Andrew J. Soven (Pa. Id. No. 76766)
Elizabeth F. Abrams (Pa. Id. No. 86525)
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
(215) 851-8100

and

Gregory B. Jordan (Pa. Id. No. 42105)
Mary J. Hackett (Pa. Id. No. 51215)
Sharon L. Rusnak (Pa. Id. No. 84339)
**REED SMITH LLP**
435 Sixth Avenue
Pittsburgh, PA 15219
(412) 288-3131

Attorneys for Defendants Wachovia Bank,
N.A., Wachovia Corporation, Evergreen
Investment Services, Inc., Evergreen
Investment Management Co. LLC, and
Evergreen Distributors, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RALPH BROOKS, JR. on behalf of himself                  :
and all others similarly situated,                      :
                                                        :
                            Plaintiff,                  :
                                                        :        No.: 06-CV-955
v.                                                      :
                                                        :
WACHOVIA BANK, N.A., et al.,                            :
                                                        :
                            Defendants.                 :
                                                        :
                                                        :

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Andrew J. Soven (Pa. Id. No. 76766)
Elizabeth F. Abrams (Pa. Id. No. 86525)
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
(215) 851-8100

Gregory B. Jordan (Pa. Id. No. 42105)
Mary J. Hackett (Pa. Id. No. 51215)
**REED SMITH LLP**
435 Sixth Avenue
Pittsburgh, PA 15219
(412) 288-3131

Attorneys for Defendants Wachovia Bank, N.A.,
Wachovia Corporation, Evergreen Investment
Services, Inc., Evergreen Investment Management
Co. LLC, and Evergreen Distributors, Inc.

I.    INTRODUCTION ..................................................................................................1

II.   FACTUAL BACKGROUND ................................................................................2

      A.    This Case Concerns the Bank's Actions as Trustee. ................................2
            1.    Only the Bank as trustee had a relationship with Plaintiff. .......2
            2.    The Amended Complaint challenges only the Bank's actions in
                  administering Plaintiff's Trusts. ................................................3
      B.    Plaintiff's Claims Were Settled And Released In Prior Litigation............5

III.  ARGUMENT .......................................................................................................8

      A.    Legal Standard Under Rule 12(b)(6) of the Federal Rules of Civil
            Procedure. ...............................................................................................8
      B.    Plaintiff Settled and Released His Claims In Prior Litigation. ................8
            1.    The Claims in the Amended Complaint are within the scope of the
                  Parsky release. ........................................................................9
            2.    No due process concerns exist to void his release. ...................10
      C.    Plaintiff's RICO Claim (Count I) Must be Dismissed. ..........................12
            1.    RICO does not apply to securities claims. .................................12
            2.    Plaintiff has not alleged a RICO enterprise. ............................14
      D.    Plaintiff's Claims Under the Securities Act of 1933 (Count II) Fail to State
            a Claim as a Matter of Law. ...................................................................15
            1.    Plaintiff lacks standing to pursue Section 11 and 12 claims
                  because he is not a purchaser of the securities...........................15
            2.    Plaintiff's claims under Sections 11 and 12(a)(2) are time-barred. ..........17
            3.    Defendants are not subject to liability under Section 11. ..........18
            4.    Plaintiff has not and cannot properly allege harm compensable
                  under the Securities Act. ..........................................................20
            5.    Plaintiff's Claims for Control Person Liability Under Section 15
                  Should Be Dismissed. ..............................................................22
      E.    Plaintiff's Claim Under The Exchange Act (Count III) Fails as a Matter of
            Law And Should Be Dismissed. .............................................................22
            1.    Plaintiff's Section 10b claim is time-barred. ............................22
            2.    Plaintiff has not satisfied Rule 10b-5's pleading requirements. ...........23
            3.    Plaintiff's Section 10b claim should be dismissed because he did
                  not participate in the decision to purchase Evergreen Funds. ...........25
            4.    Plaintiff's Section 10b claim should be dismissed because Plaintiff
                  fails to plead a material misrepresentation or omission. ...........26
            5.    Plaintiff's Section 10b claim must be dismissed for failure to allege
                  scienter. ...................................................................................28
            6.    Plaintiff's Section 10b claim should be dismissed because he fails
                  to allege reliance......................................................................31
            7.    Plaintiff's failure to plead reliance forecloses transaction
                  causation. ................................................................................33
            8.    Plaintiff's Section 10b claim should be dismissed because he fails
                  to plead loss causation adequately. ..........................................33
      F.    SLUSA Mandates Dismissal of Plaintiff's State Law Class Claims
            (Counts IV-VI)........................................................................................34

*1.     Plaintiff alleges a covered class action.* ...................................................35
*2.     Plaintiff's claims are founded on state law.* ...............................................35
*3.     The core allegations in Plaintiff's Amended Complaint are that Defendants misrepresented or omitted material facts.* ............................35
*4.     Plaintiff's claims are in connection with the purchase of a covered security.* ...................................................................................................37
G.     Plaintiff's Common Law Claims Fail to State a Claim. ......................................38
*1.     Plaintiff's state law claims are time-barred.* ..............................................38
*2.     Plaintiff's state law claims fail as a matter of law.* ....................................39
IV.     <u>CONCLUSION</u> ....................................................................................................................44

## I.     **INTRODUCTION**

The case concerns the role of Wachovia Bank, N.A (the "Bank") as trustee for two trusts with aggregate assets of approximately $81,000.  Plaintiff, who was the beneficiary of the trusts from 1991 until their recent termination, purports to bring federal and state law class action claims against Wachovia Corporation and various subsidiaries for entirely lawful conduct authorized by state statute arising out of the Bank's investment of some of the trusts' assets in the Bank's affiliated mutual funds.  Specifically, Plaintiff purports to state six causes of action against Defendants for alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Securities Act of 1933, the Securities Exchange Act of 1934, and various state law claims.  Each of Plaintiff's claims suffers numerous, fundamental defects and should be dismissed.

First, Plaintiff's claims were previously settled and released.  Indeed, Plaintiff admits that the trusts received compensation pursuant to a class action settlement that Judge Sheppard of the Philadelphia Court of Common Pleas approved a few years ago.  Plaintiff tries to escape the release claiming first that "upon information and belief" he did not consent to or receive notice of the settlement.  The Court records show that he clearly did.  He then asserts that his claims are not the same, ignoring both the language of the prior complaint and settlement stipulation.  This Court should not condone Plaintiff's efforts to bypass a clearly applicable prior settlement and release.

Second, Plaintiff's RICO claim fails pursuant to the express language of the statute which bars Plaintiff's claim here.  Third, Plaintiff's securities law claims suffer numerous, fundamental defects, including that Plaintiff lacks standing and his claims are time-barred.  Based upon a recent opinion from the United States Supreme Court and a recent district court case squarely on point, the state law claims are preempted by the Securities Litigation Uniform Standards Act and must be dismissed.  Finally, all of the state law claims also must fail in the face of the fundamental precept that the conduct of the Bank challenged here is authorized by Pennsylvania

law.  Accordingly, all counts of the Amended Complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.      FACTUAL BACKGROUND[1]

### A.       This Case Concerns the Bank's Actions as Trustee.

Plaintiff's Amended Complaint purports to set forth six causes of action against Defendants arising out of the Bank's administration of the Brooks trusts as trustee.  Although the Amended Complaint contains extraneous material and confusing (and conflicting) allegations, Plaintiff's claims can be understood to arise from the Bank's lawful (1) "conversion" or investment of trust assets into Evergreen mutual funds, and (2) charging of "sweep fees" for investing idle cash in short term investment vehicles.

### 1.       Only the Bank as trustee had a relationship with Plaintiff.

Plaintiff's claims all spring from his relationship with the Bank, which acted as trustee for trust accounts established for his benefit.  The Ralph Brooks Educational Fund and The Ralph Brooks Medical Fund (collectively referred to as the "Trusts") were established in December 1990 by grantors the Philadelphia *Daily News* and WUSL, a Philadelphia radio station.[2]  See Amended Complaint ¶ 21; see also Trust Instruments, which are attached hereto as **Exhibit A** (The Ralph Brooks Educational Fund) and **Exhibit B** (The Ralph Brooks Medical Fund).[3]  The Trust Instruments appointed CoreStates Bank, N.A. as Trustee, which is a predecessor in interest to the Bank.  See Amended Complaint ¶ 21.

As Trustee, the Bank had broad discretion and powers, including

---

[1]      For purposes of this Motion only, the Bank accepts the allegations in Plaintiff's Amended Complaint as true.

[2]      The Trusts were funded with an aggregate amount of $81,700 in 1991.

[3]      Although Plaintiff's claims are based on the instruments creating the Trusts, he did not attach them to his Amended Complaint.  Because the trust instruments are central to Plaintiff's claims, they can be considered by this Court when ruling on Defendants' Motion.  See Gould Electronics, Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000); In re Rockefeller Center Prop., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999).  In addition, other documents attached to this Motion are public court filings of which Plaintiff is aware.  See Amended Complaint ¶ 31 (confirming Plaintiff's awareness of prior litigation).

all powers and authority necessary or desirable to carry out the purposes of the Trust, including, without limiting the generality of the foregoing, the power and authority without court approval:

   A.    To invest and reinvest the principal and income of the Trust in all forms of real and personal property, including, but not by way of limitation, stocks, bonds, mortgages, notes and other evidences of indebtedness, and units of any common trust fund maintained by the Trustee or any affiliate of the Trustee, without regard to any principle of diversification or limitation imposed by law on investments by trustees.

* * * * *

   C.    To invest all or part of the Trust in interest-bearing deposit accounts or certificates of any bank or similar financial institution . . . including the Trustee or any affiliate of the Trustee, and to hold cash uninvested.

See Exhibit A at Article Fifth; Exhibit B at Article Fifth.

The Trust Instruments confirm that only the Bank had a relationship with Plaintiff, and that the Bank had the power and discretion to make investment decisions for the Trusts. Plaintiff had no relationship with the other Defendants, and he does not and cannot plead that he did.

In addition, the Bank was "entitled to compensation for its services hereunder in accordance with its standard schedule of charges in effect during the period in which its services are rendered." See id. at Article Seventh. Plaintiff cannot allege that the Bank deviated from its fee schedule or charged unauthorized fees, because it did not. The Trusts were dissolved or otherwise terminated in February 2006. See Amended Complaint ¶ 21.

     **2.**    ***The Amended Complaint challenges only the Bank's actions in administering Plaintiff's Trusts.***

Eight years ago, in 1998, as alleged in the Amended Complaint, the Bank "converted" certain trust account assets invested in "common trust funds" into investments in shares of Evergreen mutual funds. See, e.g., Amended Complaint ¶¶ 28-30.[4] While in his original

---

4     As defined under federal law, a "common trust fund" means, among other things, a fund maintained by a bank exclusively for the collective investment and reinvestment of moneys as a trustee. 26 U.S.C. § 584(a)(1). Common trust funds or "CTFs" are investment vehicles established by a particular bank or trust company to pool assets in order to diversify the investments of several trusts and spread the risk of loss. CTFs are limited in a number of ways including only permitting buying and selling shares of a CTF once a month after the valuation of the fund has been completed. "Mutual funds have significant advantages over common trust

Continued on following page

Complaint, the "conversion" of trust account investments was the alleged centerpiece of Defendants' purported wrongdoing, to try to avoid a prior settlement and release, Plaintiff now contends that he is making *no* claims relating to the "conversion." See id. ¶ 30. Despite Plaintiff's contention that his claims are now unrelated to the "conversion," the substance of his claims has not changed: Plaintiff continues to allege that, by investing trust assets in affiliated mutual funds, the Bank "engaged in self-dealing and completely abrogated its fiduciary obligation" to "analyze and monitor fiduciary account assets." Id. ¶ 53. In addition, because the Bank charges certain fees for trust administration, and its affiliated mutual funds, the Evergreen Funds, charge certain fees for investment services, Plaintiff claims the Bank imposed duplicative fees. See id. ¶ 77. The Bank also has allegedly been able to reduce its operating expenses, which has purportedly harmed Plaintiff in an unspecified manner. See id. ¶ 76.

In addition to harm allegedly resulting from the investment of trust assets in affiliated mutual funds, Plaintiff complains about the treatment of idle funds in trust accounts. See id. ¶¶ 42, 158. With the advent of computer technology, the Bank began to "sweep" trust accounts automatically of idle cash, investing it in short term instruments to gain interest for the account-holder, and imposing a "sweep fee," which—according to Plaintiff—was also wrongful. See id. ¶ 43.

Plaintiff also asserts that the Bank breached fiduciary and contractual duties by supposedly "robotically feeding irrevocable trust assets into Evergreen Funds." Amended

---

Continued from previous page

funds, and in 1996 Congress facilitated the spread of mutual funds for trust investing by allowing tax-free conversion of existing common trust funds to mutual funds." John H. Langbein, Questioning the Trust Law Duty of Loyalty: Sole Interest or Best Interest?, 114 Yale L.J. 929, 974 (March 2005); see id. at 973 n. 231 (summarizing advantages of mutual funds over CTFs for trust customers). Recognizing the advantages of mutual funds over CTFs as pooled investment vehicles for trust accounts, virtually every state amended its laws following the federal legislature's lead permitting a fiduciary to invest trust assets in affiliated mutual funds, although with varying requirements as to fees, notices and disclosures. "Once the advantages of mutual funds over other forms of pooled investment became manifest, the legislatures had no option consistent with the interests of trust beneficiaries other than to facilitate the spread of the affiliated mutual fund…." See id. at 976. Accordingly, after the laws changed, nearly every major bank exchanged trust assets invested in CTFs for shares of affiliated mutual funds.

Complaint ¶ 73.  Plaintiff's trust account statement, attached to the Amended Complaint as an exhibit, proves this allegation completely false.  As demonstrated by that statement, over fifty percent of the Brooks' trust assets were invested in a loan on real estate – for Plaintiff's family home.  See Wachovia Trust Statement, 9/1/2005 – 11/30/2005, attached to Plaintiff's Amended Complaint, at 9.  The attached statement also directly contradicts the implication in Plaintiff's Amended Complaint that the trust account received no credit against mutual fund fees.  The Trusts did indeed receive a fee credit – something which the Bank voluntarily provided to Plaintiff's Trusts and which it was not obligated to provide under the law.  Compare Amended Complaint ¶ 77 with Wachovia Trust Statement attached to Amended Complaint, 9/1/2005 – 11/30/2005 at 12.

> **B.      Plaintiff's Claims Were Settled And Released In Prior Litigation.**

Plaintiff acknowledges and admits that, as a result of a prior class action, he received payment on claims resulting from the investment of assets of the Brooks Trusts in various mutual funds, including some of the Evergreen Funds.  See Amended Complaint ¶ 31.  That prior class action, Robert Parsky and Ann Roantree, on behalf of themselves and all others similarly situated v. Wachovia Bank N.A. f/k/a First Union National Bank, Philadelphia County Court of Common Pleas, February Term 2000, No. 771, resolved on a class-wide basis all claims against the Bank and its affiliates, including those relating to the investments of trust assets into the Evergreen mutual funds.  See Final Order And Judgment Approving Settlement, dated October 24, 2003, attached hereto as **Exhibit C**.[5]  A notice about the Parsky class action was sent to all class members on or about December 7, 2001.  See Stipulation of Settlement, attached hereto as **Exhibit D**, at 3 ¶ G.  Plaintiff concedes the broad nature of the release.  Amended Complaint ¶ 33.

---

[5]      The Court is entitled to rely on public record documents in considering a motion to dismiss under Rule 12(b).  See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

To try to avoid his prior release, Plaintiff first tries to paint the <u>Parsky</u> case as focusing only on tax issues, citing the notice as proof of this point.  However, by quoting the Notice at length, Plaintiff only confirms that the settlement in <u>Parksy</u> encompasses precisely the claims he is raising now:

> Specifically, the plaintiffs allege that (1) First Union, for its own purposes and advantage, decided to terminate the Class Funds and convert the investments in them into shares of First Union's own Evergreen mutual funds, . . . .
>
> * * *
>
> The plaintiffs allege that First Union breached its duties of loyalty, candor and fair dealing to Class Members, as well as its duties to avoid self-dealing, to furnish information and disclose all material facts involving trusts under its trusteeship, and to administer those trusts solely in the interests of the trusts' beneficiaries rather than its own interests.

<u>Id.</u> ¶ 35 (quoting <u>Parsky</u> Settlement Notice).  The bottom line is that the <u>Parsky</u> case included— and resolved—<i>inter alia</i>, class-wide allegations that the Bank breached a fiduciary duty to trust beneficiaries by investing trust assets in the Evergreen Funds.  <u>See</u> <u>Parsky v. Wachovia Bank</u> First Amended Class Action Complaint, a true and correct copy of which is attached hereto as **Exhibit E**.

As Plaintiff admits, the <u>Parsky</u> Stipulation of Settlement defines "Released Claims" broadly, including any claims relating to the "transactions" which in the <u>Parksy</u> case included the investment of the trust assets in affiliated mutual funds.  The release most certainly includes the investments challenged in this action:

> "Released Claims" means each and every direct, individual, class, representative, derivative and other claim, right, action, allegation, demand, defense, counterclaim, issue, setoff, liability, penalty, and cause of action of every nature and description whatsoever, known or unknown, suspected or unsuspected, including (without limitation) all claims for damages, restitution, disgorgement or rescission, or any other legal or equitable relief, liquidated or unliquidated, which the Releasors, or any of them, had, now has or may hereafter have against the Releasees, or any of them, arising from or in connection with or in any way related, directly or indirectly, to any of the acts, facts, matters, transactions, events, occurrences, disclosures, statements, representations, omissions, or failures to act set forth, alleged, referred to or otherwise embraced in this case, including but not limited to claims arising under the

statutory or common laws of the United States, the Commonwealth of Pennsylvania or any other state, territory or jurisdiction (whether domestic or foreign), or arising from or in any way related to the Settlement of these Actions, excepting only any claim to enforce the terms of this Settlement Agreement.

Exhibit D § I.22; Amended Complaint ¶ 34.  The "Releasees" in the Parsky litigation include all

Defendants in this action:

"Releasees" means Defendant, its predecessors, successors, present and past parents, joint ventures, affiliates, subsidiaries, divisions or other organizational units of any kind, any entity now or in the past controlled by, controlling or under common control with any of the foregoing, the past and present officers, directors, partners, shareholders, employees, agents, attorneys, representatives, beneficial owners, investment advisors, investment bankers, insurers, independent contractors, accountants, heirs, executors, administrators, predecessors, successors and assigns of each of the foregoing.

Exhibit D § I.23.  Accepting the allegations of Plaintiff's Amended Complaint as true, all

Defendants are allegedly completely intertwined and under common control.  See, e.g.,

Amended Complaint ¶ 17.  Accordingly, all Defendants in this action are encompassed as

"Releasees" in the Parsky settlement.  Further, Brooks, as a member of the Class in the Parsky

settlement, also agreed not to file suit against the Releasees, including Defendants herein, for the

"Released Claims."  Exhibit D at 13.

As his second avenue to attack the Parsky settlement, Plaintiff asserts—"upon

information and belief" and despite receiving benefits as a member of the settlement class in the

Parsky litigation—that he nevertheless did not consent to the settlement.  See Amended

Complaint ¶¶ 31, 40.  This assertion is patently erroneous.  First, Plaintiff does not and cannot

dispute that he was a member of the Class whose claims were settled in Parsky.  In exchange for

substantial consideration, the class members and various related parties released claims against

the Bank and its affiliates, covenanted not to commence any action concerning released claims,

and conceded that the Stipulation of Settlement constitutes a complete defense to any further

attempted proceedings on the released claims.  See Exhibit D § III.  Plaintiff admits that he

received a payment as a result of the Parsky settlement.  See Amended Complaint ¶¶ 33-35.

7

Further, Plaintiff did receive notice of the <u>Parsky</u> settlement.  The Stipulation of Settlement sets forth a detailed notice process.  Exhibit D at 3.  The Stipulation excepts from the settlement class <u>only</u> those who could not be located and those who chose to opt out.  <u>See</u> Exhibit D § I.24.  Plaintiff is not among the roughly one hundred class members in those small groups who did not release claims.  <u>See</u> Lists of "Unlocated Potential Class Members" and "Opt Outs" attached to the Stipulation of Settlement as Exhibits A and B, respectively.  Rather, Plaintiff is among the more than eight thousand class members who received notice and released all claims against the Bank over two and a half years ago, on the Effective Date of the Stipulation of Settlement.  <u>See</u> Exhibit D at p. 3 ¶ I (providing number of Class Members); § I.12 (defining "Effective Date"); § III (setting forth the release and its effect).

## III.   <u>ARGUMENT</u>

### A.   Legal Standard Under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

When ruling on a Federal Civil Rule 12(b)(6) motion to dismiss, the Court may accept only the well-pleaded allegations in the complaint as true.  <u>See</u> <u>Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters</u>, 459 U.S. 519 (1983).  The Court may ignore legal conclusions, unsupported conclusions, unwarranted inferences and "sweeping legal conclusions cast in the form of factual allegations."  <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 n.8 (3d Cir. 1997) (quoting Wright & Miller, Federal Practice and Procedure § 1357 (2d ed. 1997)); <u>see also</u> <u>Maio v. Aetna, Inc.</u>, 221 F.3d 472, 485 (3d Cir. 2000).

### B.   Plaintiff Settled and Released His Claims In Prior Litigation.

Plaintiff's claims have been released in the <u>Parsky</u> litigation, and he is precluded from asserting those claims here.  As a member of the class in the <u>Parsky</u> litigation, Plaintiff has already released all of his claims against the Bank and all other Defendants from claims "of every nature and description whatsoever, known or unknown, suspected or unsuspected," in any way relating to "acts, facts, matters, transactions, events, occurrences, disclosures, statements, representations, omissions, or failures to act set forth, alleged, referred to or otherwise embraced

in [the Parsky] case."  See Exhibit D § I.22.  The Parsky release, which is governed by Pennsylvania law, see Exhibit D § X.f, precludes the current litigation in its entirety.

### 1.    The Claims in the Amended Complaint are within the scope of the Parsky release.

The Parsky release must be construed in accordance with the plain meaning of its language, and ordinary principles of contract interpretation.  See Buttermore v. Aliquippa Hosp., 522 Pa. 325, 328-29, 561 A.2d. 733, 735 (1989); Davis v. Government Employees Ins. Co., 775 A.2d 871, 875 (Pa. Super. Ct. 2001).  "Parties with possible claims may settle their differences upon such terms as are suitable to them. . . . However improvident the release may be or subsequently prove to be for either party, their agreement, absent fraud, accident or mutual mistake, is the law of their case."  Taylor v. Solberg, 566 Pa. 150, 155, 778 A.2d 664, 667 (2001).

The plain language of the Parsky release encompasses ***all causes of action*** against the Bank and its affiliates "of every nature and description whatsoever, . . . including (without limitation) all claims for damages . . . which the Releasors, or any of them, ***had, now has or may hereafter have*** against the Releasees, or any of them, arising from or in connection with or in any way related" to the claims asserted in the Parsky litigation.  See Exhibit D § I.22 (emphasis added).  As the Stipulation of Settlement provides, Plaintiff alleged that the Bank's handling of the conversion of investing trust assets in affiliated mutual funds – Evergreen mutual funds – was improper.  Id. at 3.  The Notice of Class Settlement specifically references the very claims raised herein – alleged non-disclosures and breach of fiduciary duty, breach of contract and self-dealing arising out of the Bank's investment of trust assets in Evergreen mutual funds.  See Notice of Proposed Settlement of Class Action, attached hereto as **Exhibit F**, at 2**.**  Plaintiff's claims in this litigation, challenging the Bank's "conversion" and investment of trust assets in Evergreen mutual funds as "self-dealing" and questioning the Bank's disclosure of information clearly fall within the scope of the Parsky release.

9

A release of all manner of actions and causes of action must be construed as a general settlement of accounts and liabilities.  Three Rivers Motors Co. v. Ford Motor Co., 522 F.2d 885, 895 (3d Cir. 1975) (ordering dismissal of all claims in light of a broadly worded release construed under Pennsylvania law).  Pennsylvania law is clear "that where the parties manifest an intent to settle all accounts, the release will be given full effect even as to unknown claims." Three Rivers, 522 F.2d at 896.  The broad sweep of the Parsky release includes all of the claims Plaintiff now asserts, because all of his current claims relate to the Bank's investment of trust account assets into affiliated mutual funds, and associated fees and disclosures.  In accordance with the "strong judicial policy in favor of parties voluntarily settling lawsuits," Rothman v. Fillette, 503 Pa. 259, 266, 469 A.2d 543, 546 (1983), the Court should dismiss this action because all of its claims are swept up in the release.

> ### 2.    *No due process concerns exist to void his release.*

Plaintiff's plea that he was denied due process in the Parsky litigation is unfounded. Plaintiff does not dispute that he was a member of the Parksy settlement class.  He admits that his Trusts received the allotted settlement proceeds.[6]  He offers only his allegation that "upon information and belief," he did not consent or receive the notice.  As set forth above, Plaintiff was among the persons notified of the class action litigation and the settlement.  His due process challenge is without merit.

Further, it is plain from the Parsky Class Notice (a true and correct copy of which is attached hereto as **Exhibit G**) and Notice of Proposed Settlement of Class Action (Exhibit F), both of which Judge Sheppard of the Philadelphia County Court of Common Pleas approved, that the Parsky class alleged that the Bank

---

[6]    Having received the settlement compensation and having failed to act, Plaintiff clearly consented to and ratified the terms of the settlement as a matter of law.  Hughes v. LaSalle Bank, 419 F. Supp. 2d 605 (S.D.N.Y. 2006) (in granting motion to dismiss in similar case brought by same plaintiffs' counsel, Court held that beneficiary who was on notice of affiliated mutual fund investments years before complaint was filed had consented to and ratified the trustee's conduct barring claims as a matter of law.)

> breached its duties of loyalty, candor and fair dealing to class members, as well as its duty to avoid self-dealing, to furnish information and disclose all material facts involving trusts under its trusteeship, and to administer those trusts solely in the interests of the trusts' beneficiaries rather than its own interest.

See Exhibit E at 2.  The Notice of Proposed Settlement of Class Action informed class members that the settlement "provides a broad release of claims" and sets forth the release language later approved by the court and operative against Plaintiff.  See Exhibit F at 3.

The Parsky release became effective only after all class members received due and adequate notice, had a full opportunity to be heard, and a court of competent jurisdiction determined that the settlement, including the release, was fair, adequate, reasonable, in the best interests of the class members, and in satisfaction of the requirements of due process.  See Exhibit C ¶¶ 1-5.  Judge Sheppard explicitly found that the Settlement Agreement and the settlement it embodied satisfied the requirements of due process.  See Exhibit C at ¶ 5.  Once a court "has decided that the due process protections did occur for a particular class member or group of class members, the issue may not be relitigated."  In re Diet Drugs Products Liability Litig., 431 F.3d 141, 146 (3d Cir. 2005), cert. dismissed, 126 S. Ct. 1908 (2006).  To the contrary, "[n]o collateral review is available when class members have had a full and fair hearing and have generally had their procedural rights protected during the approval of the Settlement Agreement."  In re Diet Drugs, 431 F.3d at 146.  Accordingly, Plaintiff cannot relitigate the propriety of the Parsky release or procedural protections afforded to him in that action.

Finally, Plaintiff's attack on the language of the Parsky release cannot properly be litigated in this (or any other) Court, because after a settlement agreement has been approved in a final order that is no longer appealable, the courts cannot entertain "a challenge to the propriety of the settlement agreement and its terms."  In re: Orthopedic Bone Screw Prod. Liab. Litig., 350 F.3d 360, 365 (3d Cir. 2003).

As outlined above, the claims made and released in Parsky include the same alleged wrongdoing—i.e., the investment of trust assets into affiliated mutual funds.  The scope of the release in Parsky is broad by design, and the scope of the "Released Parties" encompasses all

Defendants herein.  A class action settlement "can bar later claims based on the allegations underlying the claims in the settled class action.  This is true even though the precluded claim was not presented, and could not have been presented, in the class action itself."  <u>In re Prudential Ins. Co. of America Sales Practice Litig.</u>, 261 F.3d 355, 366 (3d Cir. 2001).  A class action release can properly "impose strict limitations on a class member's ability to litigate related claims."  <u>Ross v. Metropolitan Life Ins. Co.</u>, 411 F. Supp. 2d 571, 576 (W.D. Pa. 2006).

Plaintiff released all of his current claims against the Bank and all of its affiliates in 2003 and has been enjoined and barred from asserting released claims.  <u>See</u> Exhibit C ¶¶ 10-12.  Accordingly, the Amended Complaint should be dismissed in its entirety with prejudice.

**C.     Plaintiff's RICO Claim (Count I) Must be Dismissed.**

In open and obvious disregard for the explicit terms of RICO, Plaintiff purports to assert a cause of action under RICO that is premised on alleged underlying securities fraud.  This claim is barred by statute.  In addition, Plaintiff can allege no proper enterprise, making his RICO claim unsupportable as a matter of law.

***1.     RICO does not apply to securities claims.***

Plaintiff asserts his civil RICO action against Wachovia under 18 U.S.C. § 1964(c).  Yet Section 1964(c) bars this claim:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor . . . ***except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.***

18 U.S.C. § 1964(c) (emphasis added).  In this action, Plaintiff has actually pleaded securities fraud violations arising from the allegedly wrongful predicate acts.  Therefore, he cannot twist those same alleged facts into claims under RICO.  Furthermore, the simple insertion of the words "in the alternative" works no magic—even had he pleaded ***no*** securities claims, Plaintiff's RICO claim would still be barred, because the alleged facts underlying the RICO claim are still rooted in the securities laws.

Without actually pleading the facts with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure, Plaintiff has alleged that the Bank and its parent company engaged in a pattern of racketeering activity by investing trust account assets into affiliated mutual funds and by charging fees.  Amended Complaint ¶ 104.  These alleged deceitful actions also underlie Plaintiff's securities fraud claims set forth in Counts II and III.  Because the purported actions could be (and actually are) asserted as the basis of a claim involving fraud in the purchase or sale of securities, those actions cannot also serve as predicate acts under RICO.  See Mathews v. Kidder, Peabody & Co., Inc., 161 F.3d 156, 157 (3d Cir. 1998).

Prior to 1995, a private plaintiff could assert a civil RICO claim for securities law violations sounding in "garden variety" fraud.  See Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 504-505 (1985) (Marshall, J., dissenting).  Inasmuch as "fraud in the sale of securities" was a predicate offense in both criminal and civil RICO actions, id. at 504, plaintiffs regularly added RICO claims to securities fraud claims, because RICO offered a potential treble damages bonanza.  In 1995, Congress enacted the Private Securities Litigation Reform Act ("Reform Act"), Pub.L. No. 104-67, 109 Stat. 737 (1995), including an amendment whose specific "focus" was on "completely eliminating the so-called 'treble damage blunderbuss of RICO' in securities fraud cases."  Mathews, 161 F.3d at 164 (quoting 141 Cong. Rec. H2771).  Since the excision from RICO's scope of acts relating to the purchase or sale of securities,

> a plaintiff cannot avoid the RICO Amendment's bar by pleading mail fraud, wire fraud and bank fraud as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud.  Allowing such surgical presentation of the cause of action here would undermine the congressional intent behind the RICO Amendment.

Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc., 189 F.3d 321, 330 (3d Cir 1999).

Indeed, this Court has held that RICO does not cover claims based on misleading people about investment options, failing to disclose conflicts of interest and receiving undisclosed commissions because "regardless of the details of the fraud, there [was] no question that the whole of plaintiff's allegations concern a fraudulent transaction of securities."  Burton v. Ken-

Crest Servs., Inc., 127 F.Supp. 2d 673, 677 (E.D. Pa. 2001).  As in Burton, the whole of Plaintiff Brooks' allegations concern allegedly fraudulent transactions of securities.  Therefore, Plaintiff's purported claim under RICO that Defendants used the mails and wires to misrepresent fees associated with the purchase and sale of securities is in direct conflict with the language of Section 1964(c), and cannot proceed.

### 2.     *Plaintiff has not alleged a RICO enterprise.*

A RICO "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C § 1961(4).  "[T]he defendant 'person' charged with violating [the RICO] statute cannot be the same entity as the alleged 'enterprise'."  Lorenz v. CSX Corp., 1 F.3d 1406, 1411 (3d Cir. 1993).

Although Plaintiff makes unsupported allegations regarding the identity of the "persons" (Wachovia Corporation and the Bank) and the "enterprise" (an unnamed association of Wachovia, the Bank, all other Defendants, and the Board of Trustees for the Evergreen Funds), the "enterprise" Plaintiff alleges here is simply the Bank: all of the actions of the alleged "enterprise" are actions of the Bank.  See Amended Complaint ¶¶ 102, 104.  Plaintiff's self-serving, conclusory allegation that the enterprise is an association in fact that is "separate and distinct" from the Bank is not supported by any facts.  To the contrary, as alleged by Plaintiff, the affairs of the "enterprise" are nothing more than the administration of fiduciary accounts, and acts such as mailing account statements.  Id. at ¶¶ 104, 108.  That is the Bank.  The "person" and the "enterprise" under RICO must be distinct from each other.  Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001).  In other words, a RICO claim requires that the defendant "persons" act through a distinct "enterprise."  Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc., 46 F.3d 258, 268 (3d Cir. 1995).  Here, there is no distinction between the Bank and the alleged enterprise, whose only alleged function was to perform duties of the Bank as trustee. Plaintiff has not pleaded an enterprise to sustain his RICO claims as a matter of law.

**D.    Plaintiff's Claims Under the Securities Act of 1933 (Count II) Fail to State a Claim as a Matter of Law.**

Count II of the Amended Complaint is brought pursuant to Sections 11, 12 and 15 of the Securities Act of 1933 (the "Securities Act").  See Amended Complaint ¶¶ 113-133.  Sections 11 and 12 of the Securities Act impose liability for registration statements and prospectuses that contain an untrue statement of material fact or omit to state a material fact.  See 15 U.S.C. §77k(a); 15 U.S.C. §77l(a)(2).  Section 15 of the Securities Act imposes liability upon those who control any person liable for violations of Section 11 or 12.  See 15 U.S.C. §77o.  In the Amended Complaint, Plaintiff alleges that all of the Defendants, the "controlled persons" of the Bank and un-named members of the Evergreen Funds Board of Trustees, collectively violated Sections 11 and 12(a)(2) of the Securities Act because they "caused" misleading registration statements to be filed and issued, caused to be issued, or participated in the issuance of prospectuses which misrepresented or omitted material facts.  See Amended Complaint ¶ 115. The Bank is allegedly a "controlling person" under Section 15 and thus allegedly liable for the purported misrepresentations and omissions in the registration statements and prospectuses at issue.

As outlined below, Plaintiff's Securities Act claims suffer numerous fundamental defects. Accordingly, Plaintiff's claims in Count II should be dismissed.

**1.    *Plaintiff lacks standing to pursue Section 11 and 12 claims because he is not a purchaser of the securities.***

Under Section 11, if any part of a registration statement is false or misleading, any purchaser of securities sold pursuant to such registration statement can bring suit.  See 15 U.S.C. § 77k.  To state a claim under Section 11, the Plaintiff must be a purchaser and must demonstrate that the challenged securities were in fact acquired pursuant to the particular registration statement found to have been false or misleading.  Lorber v. Beebe, 407 F.Supp. 279 (S.D.N.Y. 1975).  Dismissal is proper under Section 11 if Plaintiff fails to plead that the challenged securities purchased were in fact "new" (i.e., sold pursuant to the challenged registration statement) and not "old" (i.e., sold in the course of a previous offering).  Id. at 285 (dismissing

Section 11 claim where Plaintiff could not demonstrate whether the challenged securities were sold pursuant to the challenged registration statement); see also Barnes v. Osofsky, 373 F.2d 269, 273 (2d Cir. 1967) (limiting Section 11 to purchasers of securities that were acquired through the registration statements).

Plaintiff Brooks was the beneficiary of two trusts.  See Amended Complaint ¶ 7.  As such, Plaintiff had only a beneficial interest in securities held in any Trust account and is not a purchaser as contemplated by Section 11.  The Bank, as trustee for the Trusts, had discretion to purchase, and carried out the purchases of, Evergreen Funds shares for the Trusts.  Indeed, Plaintiff concedes that the Bank purchased and sold the shares and that Plaintiff has "absolutely no discretion with respect to the investments made for him and his Trust." Id. at ¶ 21.  As the beneficiary of the Trusts, he had no investment authority, no discretion, made no decisions and is therefore not a purchaser under Section 11.  Plaintiff has no standing to sue the Bank under Section 11 of the Securities Act.[7]

Similarly, under Section 12, only "the person purchasing such security" from a seller using a misleading prospectus is entitled to bring an action.  15 U.S.C. § 77*l*(2).  Greater Iowa Corp. v. McLendon., 378 F.2d 783, 789 (8th Cir. 1967).  Further, Section 12(a)(2) of the Securities Act only protects the purchasers of **initial offers** against fraud and misrepresentation in an oral communication or prospectus.  Ballay v. Legg Mason Wood Walker, Inc., 925 F.2d

---

[7]    Plaintiff's Section 11 claims should also be dismissed because the Amended Complaint fails to plead that the challenged securities were in fact purchased pursuant to the challenged registration statements.  Plaintiff challenges **only** the Registration Statements filed on September 1, 2005, December 1, 2005 and February 1, 2006.  See Amended Complaint ¶ 116.  However, Plaintiff challenges purchases of shares of Evergreen Funds for the Trusts "throughout the Class Period," "including but not limited to . . . purchase and sales in September, October and November, 2005" and also refers to sales in June 2003.  See Amended Complaint ¶¶ 41, 114.  Plaintiff attempts to create an inference that the securities sold in 1998 were pursuant to the challenged Registration Statements issued in 2005, see Amended Complaint ¶ 85 (class period begins at time of conversion to investments in affiliated mutual funds).  No doubt a purchase of Evergreen Funds in 1998 or 2003 could not be pursuant to purportedly defective Registration Statements in 2005.  Because Plaintiff has failed to link the challenged securities to the purportedly misleading Registration Statements, Plaintiff has not pleaded a viable claim under Section 11, even if he were a purchaser.

682 (3d Cir. 1991) (holding that Section 12(a)(2) applies only to initial offerings and not to aftermarket trading), cert denied, 502 U.S. 820 (1991).  Nowhere in the Amended Complaint does Plaintiff allege that his Section 12(a)(2) claims are derived from or traceable to any initial offerings of the Evergreen Funds.  Instead, Plaintiff relies on vague and conclusory allegations which fail to state a claim under Section 12(a)(2).  See Amended Complaint ¶ 117.  Because Plaintiff fails to allege that the challenged securities were purchased pursuant to an initial offering as opposed to aftermarket trading, his Section 12(a)(2) claims should be dismissed.

Because Plaintiff lacks standing as a purchaser under either Section 11 or Section 12, these claims in Count II should be dismissed.

### 2. Plaintiff's claims under Sections 11 and 12(a)(2) are time-barred.

Count II also should be dismissed because the Securities Act claims are time-barred and Plaintiff has failed to plead adequately that he is within the applicable statute of limitations. Claims under Sections 11 and 12(a)(2) are subject to the statute of limitations set forth in Section 13 of the Securities Act of 1933, requiring claims be brought "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence."  15 U.S.C. §77m.  Section 13 also provides that "in no event" shall claims be brought more than three years after the relevant offering or sale of securities.[8]  See id.; Bull v. American Bank & Trust Co., 641 F. Supp. 62 (E.D. Pa. 1986) (holding that three year limitations period is absolute, equitable considerations notwithstanding). Compliance with Section 13's affirmative pleading requirement is "substantive" and essential. See Davidson v. Wilson, 973 F.2d 1391, 1402 and n.8 (8th Cir. 1992).  For example, a plaintiff must plead "the actual date of purchase of [the] investments, the time and circumstances of the

---

[8]     For purposes of Section 11, the three-year statute of limitations begins to run from the date the security was "bona fide offered to the public."  See 15 U.S.C. §77m; Finkel v. Stratton Corp., 962 F.2d 169 (2d Cir. 1992).  For purposes of Section 12(a)(2), the plaintiff must bring the action within "three years after the sale."  Id.  Section 2 of the Securities Act provides that "[t]he term 'sale' … shall include every contract of sale or disposition of a security or interest in a security, for value." 15 U.S.C. § 77b(3).

discovery of the alleged fraudulent statements, and the reasons why discovery was not made earlier." Davidson, 973 F.2d at 1402 n.8 (affirming dismissal of Section 12 claim where plaintiffs failed to plead compliance with Section 13 with specificity).

Applying these principles to the Amended Complaint, Plaintiff's claims are untimely and fail to comply with Section 13.  Plaintiff merely contends that the Securities Act claims are timely because the "sale" of shares of Evergreen Funds to the Trusts account occurred "since June 2, 2003." See Amended Complaint ¶ 114.  However, the purchase of Evergreen Funds on behalf of Plaintiff commenced no later than with the CTF conversions in 1998 more than eight years ago. See Amended Complaint ¶¶ 28-30.  Despite Plaintiff's attempt to distance his claims from the 1998 conversion, his Securities Act claims derive from the offering and sale of shares of Evergreen Funds to his Trusts account in 1998.  Moreover, no explanation is provided regarding the time and circumstances of the discovery of the alleged misrepresentations and/or omissions or why discovery was not made earlier.  Accordingly, the Securities Act claims are untimely and fail to comply with Section 13.

### 3.    *Defendants are not subject to liability under Section 11.*

Section 11 imposes liability only upon the following enumerated parties:  the issuer of the securities; directors of the issuer; anyone who signed the registration statement; underwriters of the issuer; and experts preparing or certifying a false part of the statement.  See 15 U.S.C. §77k(a)(1) – (a)(5).  These five categories place an "unambiguous limitation on the categories of persons or entities against whom a claim may be brought" and impose liability only upon the parties with a direct role in a registered offering.  In re WorldCom Inc. Securities Litigation, 308 F. Supp. 2d 338, 342 (S.D.N.Y. 2004).

Plaintiff has attempted to plead a violation of Section 11 of the Securities Act against Wachovia Corporation, a bank holding company, and various subsidiaries.  Plaintiff fails to elucidate how the named Defendants fit into the five statutorily defined categories of persons who can be held liable under Section 11 because he cannot.  Rather, Plaintiff employs a kitchen-sink approach, pleading collectively that the "defendants were either directly or ***through*** their

'controlled persons' **underwriters**, **issuers**, offerors, solicitors of sales and or selling shareholders . . . and/or signers [of allegedly relevant statements]."  Amended Complaint ¶ 129 (emphasis added).[9]  Moreover, the vague and circular allegations in Count II draw unsupported legal and factual conclusions that the "defendants and certain 'controlled persons' including the Trustees of the Evergreen Funds, **caused** the Evergreen Funds to file Registration Statements with the SEC."  See Amended Complaint ¶ 116 (emphasis added).  Indeed, Plaintiff's only reference to a category of persons liable under the provisions of Section 11 involves parties not named in this action alleged as "signatories" to the Registration Statements.  See Amended Complaint ¶ 132.

The Bank as trustee for the Plaintiff's trust account is neither an underwriter nor an issuer subject to liability under Section 11.  Only the Bank had a relationship with Plaintiff as trustee for the Plaintiff's trust accounts, and the Bank is not within any of the categories of persons enumerated in Section 11.  See, e.g., Zicklin v. Breuer, 534 F. Supp. 745 (S.D.N.Y. 1982) (bank that purchases shares of a corporation's stock for its customers' accounts is not liable as an underwriter, for example, under Section 11 of the Securities Act).  Plaintiff offers no facts to show a nexus between the Bank's actions as trustee for the Trusts account and the purportedly misleading registration statements.  The blanket allegation that all the Defendants were either "underwriters, issuers, offerors, solicitors of sales and or selling shareholders" is insufficient.

The allegations of liability based on Wachovia Corporation's status as a holding company and its relationship as a parent company to various subsidiaries also fail to state a Section 11 claim.  The Amended Complaint attempts to hold Wachovia Corporation and the Bank liable under Section 11 "through" the acts of various subsidiaries.  Plaintiff's Section 11 claims are premised on vague assertions that the Defendants "**caused**" the challenged Registration

---

[9]      Plaintiff's approach fails even the most basic notice pleading requirements of Rule 8.  Conley v. Gibson, 355 U.S. 41 (1957).  In Kennedy v. Nicastro, 503 F. Supp. 1116, 1122 (N.D. Ill. 1980), the Court found the practice of failing to specify which facts and which claims pertained to which defendants unacceptable and held that "plaintiffs owe defendants the obligation to make a good faith differentiation throughout the complaint that will enable each defendant to know with what he or it is charged and to what he or it must make answer." (emphasis added).

Statements to be filed and shares of Evergreen Funds to be issued "*through*" controlled persons. <u>See</u> Amended Complaint ¶¶115, 116, 129, 130, 132, 133.  However, there is no legal basis for such an "enterprise" theory of liability for a Section 11 claim.  <u>In re WorldCom, Inc.</u> 308 F. Supp. 2d at 345 (dismissing Section 11 claim based on company's status as parent of actual underwriter of security at issue).

Courts have recognized that "[i]t is a general princip[le] of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." <u>Id</u>. (citations omitted).  The Court in <u>In re WorldCom, Inc.</u> dismissed similar allegations that various holding company defendants were liable under Section 11 "through" the acts of a subsidiary that directly underwrote the security offerings at issue.  308 F. Supp. 2d at 341.  Similarly, Plaintiff's attempted "enterprise" theory of liability here fails to state a claim under Section 11, particularly where the Amended Complaint is devoid of *any* factual assertions that any of the Defendants were actual underwriters of the securities at issue.  Plaintiff has failed to plead that Wachovia Corporation, based on its ownership or control of any of the subsidiaries, had any role in the underwriting process.

Because none of the Defendants is subject to liability under Section 11 and because the Amended Complaint fails to set forth any facts supporting these conclusory and vague allegations, Plaintiff's Section 11 claim fails as a matter of law.

> **4.    *Plaintiff has not and cannot properly allege harm
> compensable under the Securities Act.***

Plaintiff's claims as alleged in Count II for violations of Sections 11 and 12(a)(2) are also subject to dismissal because they fail to allege facts demonstrating that Plaintiff has suffered harm within the meaning of either Section.  Indeed, Plaintiff can only assert that he was damaged "in an amount which cannot presently be determined."  Amended Complaint ¶ 133.  Under Section 11, there is only *one* measure of damages, and it should be readily calculable in a legitimate and properly pleaded claim:

> [T]he difference between the amount paid for the security . . . and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security . . . and the value thereof as of the time such suit was brought.

15 U.S.C. §77k(e).[10]

The existence of recoverable damages is an element of a Section 11 claim.  "[A] plaintiff must plead facts demonstrating that he suffered the particular type of injury contemplated by the statute."  Id. (citing Metz v. United Counties Bancorp, 61 F. Supp. 2d 364, 378 (D.N.J. 1999)).  While Plaintiff purports to outline certain transactions in 2005 with respect to three purchases and one sale of shares of the Evergreen Core Bond Fund, he merely asserts a conclusory allegation that these purchases and sales resulted in "losses."  See Amended Complaint ¶ 41.  Such pleading is insufficient and fails to allege the requisite recoverable damages under Section 11.

Plaintiff's Section 12(a)(2) claims should be dismissed for the same reasons.  "Although the statutory language of Section 12(a)(2) is different, the effect is the same."  In re Mutual Funds Investment Litig., 384 F. Supp.2d at 866.  Section 12(a)(2) provides for *two* alternative remedies: (1) rescission upon plaintiff's prompt tender of shares in exchange for the original purchase price, or (2) restitutionary damages if plaintiff has sold his shares.  Id. citing 15 U.S.C. §77l(a)(2).  As under Section 11, "if a plaintiff sells the securities at issue for an amount greater than the plaintiff's purchase price, then the plaintiff has suffered no [recoverable] damages."  Id. at 866 (citation omitted).  Plaintiff fails to allege facts regarding Section 12(a)(2) damages to demonstrate sufficiently that he has sold his shares for an amount *less* than the purchase price.

---

10      Of course, Plaintiff would have to prove that "any difference between the price paid and the later lower value or price – whether at sale or at the time of suit – [is] attributable to the misrepresentation and not depreciation resulting from some other cause, such as a general downtrend in the market."  In re Mutual Funds Investment Litig., 384 F. Supp.2d 845, 866 (D. Md. 2005).

Because Plaintiff has not adequately pleaded a factual basis for damages under either Section 11 or Section 12(a)(2), or for rescission under Section 12(a)(2), these claims should be dismissed.

### 5.    *Plaintiff's Claims for Control Person Liability Under Section 15 Should Be Dismissed.*

Count II includes allegations of control person liability.  Section 15 of the Securities Act does not provide an independent basis for liability.  Rather, Section 15 imposes liability on those who "controlled" any person liable for a primary violation of the Securities Act.  <u>See</u> 15 U.S.C. §77(o).  Because Plaintiff has failed to state a claim against any Defendant for a primary violation of the federal securities laws, the claims for control person liability necessarily fail. <u>See</u>, <u>e.g.</u>, <u>Klein v. General Nutrition Companies, Inc.</u> 186 F.3d 338, 344 (3d Cir. 1999) (holding that controlling person liability under Section 15 hinges on liability under either Section 11 or 12).

### E.    **Plaintiff's Claim Under The Exchange Act (Count III) Fails as a Matter of Law And Should Be Dismissed.**

Count III of Plaintiff's Amended Complaint attempts to set forth a claim pursuant to Section 10b(5) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 (collectively referred to as "Section 10b").  As outlined below, Count III fails for many basic, fundamental reasons, including the fact that the claim is time-barred, Plaintiff has failed to plead the requirements of this claim as a matter of law and Plaintiff lacks standing.

### 1.    *Plaintiff's Section 10b claim is time-barred.*

The statute of limitations for violation of Section 10b(5) of the Exchange Act and SEC Rule 10b-5 was recently clarified by the Sarbanes-Oxley Act.  Under that Act, an action for securities fraud must be brought within two years after the date the facts constituting the violation are discovered or within five years of the violation.  28 U.S.C. § 1658(b); <u>Lieberman v. Cambridge Partners, LLC</u>, 432 F.3d 482, 483 (3d Cir. 2005).

In this case, Plaintiff pleads that he has a Section 10b cause of action based upon allegedly false and misleading information provided in connection with the purchase of Evergreen Funds.  <u>See</u> Amended Complaint ¶ 135.  As Plaintiff admits, the purchase of

Evergreen Funds commenced with the CTF conversions in 1998.  <u>See</u> Amended Complaint

¶¶ 28-30.  However, Plaintiff's Amended Complaint asserting a Section 10b cause of action was

not filed until June 2006 –eight years after the alleged violation of the Exchange Act.  Therefore,

even assuming that there were any misleading statements, Plaintiff's Section 10b claim was filed

well after expiration of the applicable statute of limitations.  Plaintiff's Section 10b claim should

be dismissed.

### 2. *Plaintiff has not satisfied Rule 10b-5's pleading requirements.*

Section 10b(5) and Rule 10b-5 prohibit fraudulent conduct in the sale and purchase of

securities.  <u>See</u> 15 U.S.C. § 78j; 17 C.F.R. § 240.10b-5.  Specifically, Rule 10b-5 provides that it

is unlawful for any person, directly or indirectly:

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of ay security.

17 C.F.R. § 240.10b-5.  In cases involving publicly traded securities, a Rule 10b-5 cause of

action is broken down into six elements: (1) a material misrepresentation or omission; (2) made

with scienter; (3) in connection with the purchase or sale of a security; (4) upon which the

plaintiff relied; (5) resulting in economic loss; and (6) loss causation.  <u>See</u> <u>Dura Pharmaceuticals,</u>

<u>Inc. v. Broudo</u>, 544 U.S. 336, 336, 341-42 (2005); <u>Oran v. Stafford</u>, 226 F.3d 275, 282 (3d Cir.

2000).

Importantly, each of these six elements is subject to heightened pleading requirements of

both Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act (the

"Reform Act").  <u>GSC Partners CDO Fund v. Washington</u>, 368 F.3d 228, 236 (3d Cir. 2004).

Under Rule 9(b), all averments of fraud, including malice, intent, knowledge, and other

conditions of the mind must be pleaded with particularity.  <u>Id.</u>  "This particularity requirement is

'rigorously applied' in securities fraud cases."  <u>Id.</u> (citation omitted).  Under the Reform Act, a

plaintiff must, "with respect to *each* act or omission . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  See 15 U.S.C. § 78u-4(b)(2) (emphasis added).  "This particularity requirement supersedes Rule 9(b)'s provision allowing state of mind to be averred generally."  GSC Partners CDO Fund, 368 F.3d at 237.  Rather, under the standard set by the Reform Act, for a Section 10b claim to survive a motion to dismiss, a plaintiff must plead specific facts showing that *each* defendant acted with scienter.  15 U.S.C. § 78u-4(b)(2).  Congress enacted this more stringent pleading standard "to curtail the filing of meritless lawsuits" and to create a uniform pleading standard among the circuits.  See H.R. Conf. Rep. No. 104-369, at *41 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 740; Ottmann v. Hanger Orthopedic Group, Inc., 353 F.3d 338, 344 (4th Cir. 2003).

Moreover, so called "group pleading" – a presumption that statements in company generated documents represent the collective work of those individuals directly involved in the company's daily management – is inconsistent with the particularity requirements of the Reform Act.  See Payne v. DeLuca, No. C.A. 02-1927, 2006 WL 1157861 (W.D. Pa. May 2, 2006); In re Bio-Technology Gen. Corp. Sec. Litig., 380 F. Supp.2d 574, 584 (D.N.J. 2005) (commenting that although "the Third Circuit has not expressly determined whether group pleading has survived enactment of the [Reform Act] . . . the prevailing authority within this District counsels that group pleading has been abolished").  In other words, plaintiffs may not "presume" that a particular defendant is responsible for making a statement.

Plaintiff here offers nothing more than vague, group pleading.  Given Rule 10b-5's strict pleading requirements, even assuming *arguendo* that absolutely all of the facts pleaded by Plaintiff were true, the allegations fall far short of establishing a Section 10b cause of action. Indeed, what is most telling about Plaintiff's Amended Complaint is not what is alleged, but what is omitted:

- First, Plaintiff fails to plead that his Section 10b claim complies with the applicable statute of limitations (in fact, Plaintiff's claim is time-barred).

- Second, Plaintiff fails to allege that he participated in the decision to purchase Evergreen Funds—in other words that he was a party to the transactions about

which he now complains.  If he was not a party to the transactions, Plaintiff cannot assert a securities fraud claim because he cannot have been induced into buying or selling the securities.

o   Third, Plaintiff fails to establish that the alleged misrepresentations and/or omissions have any connection to the alleged harm.  Without such a connection the alleged misrepresentations and/or omissions are not actionable under Section 10b.

o   Fourth, but for broad legal conclusions, Plaintiff fails to allege that the purported misrepresentations and/or omissions were material.

o   Fifth, even if the purported misrepresentations and/or omissions were deemed material, Plaintiff fails to plead that any of the Defendants other than Wachovia had a duty to disclose the alleged omissions.  Without such a duty all of the other Defendants cannot be held liable under Section 10b.

o   Sixth, Plaintiff's factual allegations are completely devoid of anything approaching establishing scienter on behalf of any of the Defendants.

o   Seventh, Plaintiff cannot (as a matter of law) establish reliance, and even if he could, he fails to plead such reliance adequately.

o   Eighth, Plaintiff's failure to plead reliance forecloses any claim of "transaction causation."

o   Ninth, Plaintiff's factual allegations lack any specificity establishing loss causation suffered as a result of the alleged omissions.

Therefore, despite Plaintiff's attempt to overwhelm the Defendants with repetitive and conclusory allegations, Plaintiffs do not plead a Section 10b claim adequately, and Count III should be dismissed as a matter of law.

### 3.    *Plaintiff's Section 10b claim should be dismissed because he did not participate in the decision to purchase Evergreen Funds.*

Only a person who is defrauded "in connection with" a purchase or sale of securities can bring a Section 10b claim.  See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 737-38 (1975).  Section 10b ensures that parties to securities transactions have access to full and accurate information when making investment decisions.  See O'Brien v. Continental Ill. Nat'l Bank and Trust Co. of Chicago, 593 F.2d 54, 60 (7th Cir. 1979).  Persons who are not parties to the transaction cannot assert securities fraud claims because they simply could not have been induced into buying or selling the securities.  See id.; see also Congregation of the Passion, Holy

<u>Cross Province v. Kidder Peabody & Co., Inc.</u>, 800 F.2d 177, 181 (7th Cir. 1986) (affirming dismissal of Section 10b claim because plaintiffs had no authority to make investment decisions).

In this case, the Plaintiff had no authority over investment decisions for the Trusts. Amended Complaint ¶ 139.  In other words, as a beneficiary, Plaintiff never made, and was not authorized to make, decisions about the purchase and sale of securities.  Consequently, Plaintiff's Section 10b claim fails as a matter of law because he has not pleaded that he controlled the investments of the Trusts.

### 4.    *Plaintiff's Section 10b claim should be dismissed because Plaintiff fails to plead a material misrepresentation or omission.*

The misrepresentations and omissions alleged by Plaintiff are not actionable under Section 10b.  For a misrepresentation to be actionable under Section 10b, there must be a causal link between the alleged misrepresentation and harm incurred when a security is purchased or sold. <u>See</u> <u>Payne</u>, 2006 WL 1157861, at *49; <u>see also</u> <u>Gannon v. Continental Ins. Co.</u>, 920 F. Supp. 566, 576 (D.N.J. 1996).

Each of the alleged misrepresentations and/or omissions upon which Plaintiff purports to base his Section 10b claim have to do with the Bank's alleged motivation and reasoning for investing in Evergreen Funds.  <u>See, e.g.</u>, Amended Complaint ¶ 117.  Those alleged misrepresentations, however, have nothing to do with any damages that Plaintiff allegedly suffered as a result of the purchase of Evergreen Funds, and, at the very most, may be allegations of mismanagement of or by the Bank.  Such mismanagement of the Bank bears no connection to the value of the Evergreen Funds and is therefore not actionable under Section 10b.  <u>Gannon</u>, 920 F. Supp. at 579; <u>Craftmatic Securities Litigation v. Kraftsow</u>, 890 F.2d 628, 639 (3d Cir. 1989) ("The line between a material nondisclosure and the nondisclosure of mere mismanagement is often difficult to draw . . . .  However, courts have been reluctant to permit a federal securities claim to stand when the plaintiff has failed to allege more than nondisclosure of mismanagement.")  As such, Plaintiff's alleged misrepresentations and/or omissions are not of the character actionable under Section 10b.

Count III should be dismissed for the additional reason that Plaintiff fails to plead materiality. Instead, Plaintiff draws the legal conclusion that each of the alleged misrepresentations or omissions constituted material facts that Wachovia and the Bank were responsible for disseminating to Plaintiff. See Amended Complaint ¶ 137. Plaintiff's materiality explanation, an essential element of any Section 10b claim, begins and ends with that legal conclusion. Plaintiff fails to explain which facts were material, why they were material and how the knowledge of these facts would have changed the result of the investments or conversions. Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988) (material information is information that would be important to a reasonable investor in making his or her investment decision); Oran, 226 F.3d at 282. Without such an explanation, Plaintiff has failed to plead the very first element of a Section 10b claim. As such, Plaintiff fails to state a Section 10b claim as a matter of law.

Moreover, Plaintiff's Section 10b claims against each Defendant, other than the Bank, would *still* fail as a matter of law because Plaintiff cannot allege that any other defendant had a duty to disclose the alleged omissions. As the Supreme Court explained in Basic Inc., "[s]ilence, absent a duty to disclose, is not misleading under Rule 10b-5." Basic Inc., 485 U.S. at 239 n.17. Thus, unless the omission of facts makes statements that are made materially misleading, or unless disclosure is required by a regulation or statute, the failure to speak gives rise to no claim. See id. at 238; Oran, 226 F.3d at 285-86.

In this case, Plaintiff attempts to skirt Section 10b-5's pleading requirements by imputing the Bank's fiduciary duty to all of the other Defendants. See Amended Complaint ¶ 137. However, Plaintiff provides no legal or factual basis for extending the fiduciary duty. Rather, he simply relies on overbroad group pleadings, likely crossing his fingers and hoping to get past the motion to dismiss stage. As explained above, such "group pleading" is insufficient to satisfy the particularity requirements of the Reform Act. In Central Bank of Denver N.A. v. First Interstate Bank, 511 U.S. 164, 177 (1994), the Supreme Court rejected the notion of aiding and abetting liability under Section 10b, precisely what Plaintiff is trying to advance here. Thus, absent particular facts tying a defendant to a particular statement, there can be no claim under Section

10b.  See In re Royal Ahold N.V. Sec. & ERISA Litig., 351 F. Supp. 2d 334, 371 (D. Md. 2004) (rejecting "non-speaker" aiding and abetting liability under Central Bank and requiring that to state claim under Section 10b, defendant must "be alleged to have made a misrepresentation, which he knew or should have known would be communicated to investors").  Therefore, without adequately alleging that each Defendant had an affirmative duty to disclose the alleged omissions, and without adequately defining that duty, the Amended Complaint fails to set forth a Section 10b claim.

### 5. Plaintiff's Section 10b claim must be dismissed for failure to allege scienter.

In this case Plaintiff's allegations of scienter (or lack thereof) are defective because he fails to provide an adequate factual basis for a strong inference that *each* Defendant acted with scienter.  The Third Circuit has defined scienter in the context of securities fraud as:

> a mental state embracing intent to deceive, manipulate or defraud, or, at a minimum, highly unreasonable (conduct), involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.

In re IKON Office Solutions, Inc., 277 F.3d 658, 667 (3d Cir. 2002) (citations and internal quotations omitted).

Courts have made explicitly clear that conclusory allegations do not adequately plead actions or behavior satisfying this definition.  In re Stonepath Group, Inc., 397 F. Supp. 2d 575, 586 (E.D. Pa. 2005) ("conclusory allegations will not do under this jurisprudence.").  Rather, the Reform Act requires that a Section 10b complaint state "with particularity" facts giving rise to a "strong inference" that the Defendants acted with the scienter required for the cause of action. See also 15 U.S.C. § 78u-4(b)(2); GSC Partners CDO Fund, 368 F.3d at 237.  To allege scienter adequately, the Plaintiff must plead a "strong inference" that the Defendants acted with scienter either: "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  Id.  Here, Plaintiff has not met these pleading requirements.

To plead motive and opportunity, "blanket assertions" will not suffice, and "catch-all allegations that defendants stood to benefit from wrongdoing and had the opportunity to implement a fraudulent scheme are no longer sufficient, because they do not state facts with particularity or give rise to a strong inference of scienter." In re Advanta Corp. Sec. Litig., 180 F.3d 525, 535 (3d Cir. 1999); see also Payne, 2006 WL 1157861, at *10.  "Moreover, 'motives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from this fraud." Payne at *12 (quoting GSC Partners, 368 F.3d at 237).  Plaintiff must plead that each defendant was motivated to obtain benefits for himself by something other than the general motivation or desire that animates people to act generally in their own interest.  See Payne, 2006 WL 1157861, at *12 ("General motives such as wishing to complete a particular corporate transaction, the desire to avoid breaching loan covenants or disclosing lack of liquidity, attempting to increase a company's stock value as part of an acquisition strategy, or even such personal benefits as increasing one's compensation or maintaining continued employment are insufficient to establish scienter").

Plaintiff's only allegation even approaching an attempt to establish motive and opportunity to commit fraud is that the alleged misrepresentations and/or omissions were intended to "enrich" Wachovia and the Bank.  See Amended Complaint ¶ 137.  This allegation, however, is the very type of "general allegation" now discredited, as set forth above.  Indeed, all business people and entities are motivated by profit.  Something more is required to distinguish the motives of an alleged fraudulent actor from those shared by everyone; otherwise, the requirement of particularized pleading of scienter would be rendered a nullity.

Plaintiff's attempts at pleading conscious misbehavior or recklessness are likewise far too vague to satisfy the strict pleading requirement of the Reform Act.  Specifically, the Third Circuit has defined a reckless statement as a "material misrepresentation or omission 'involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known

to the defendant or is so obvious that the actor must have been aware of it."   In re Advanta, 180

F.3d at 535 (quoting McLean v. Alexander, 599 F.2d 1190, 1197 (3d Cir. 1979)).   Moreover,

under the Third Circuit's standards, "it is not enough for plaintiffs to merely allege that

defendants 'knew' their statements were fraudulent or that defendants 'must have known' their

statements were false . . . [p]laintiffs must plead allegations of scienter with particularity.   They

must support their allegations with the essential factual background that would accompany 'the

first paragraph of any newspaper story' – that is, the 'who, what, when, where and how' of the

events at issue."   GSC Partners CDO Fund, 368 F.3d at 239 (internal citations omitted).

In his Amended Complaint, Plaintiff pleads no facts about reckless behavior.   See ¶¶ 137,

138 (alleging only legal conclusions and no facts about purported recklessness).   In other words,

Plaintiff fails to detail the who, what, when, where and how of the alleged misstatements and/or

omissions.   In fact, simply by pleading in the alternative that the misstatements and/or omissions

were *either* made with knowledge *or* reckless disregard, Plaintiff actually concedes that he lacks

the necessary detail to establish that knowledge or reckless disregard with any particularity.

Even if Plaintiff's legal conclusions could fulfill the Section 10b pleading standards, the

allegations still fall far short of the egregious behavior necessary to establish conscious

misbehavior or recklessness.   To the contrary, as explained above, the Amended Complaint

contains only general allegations of motive and is completely devoid of factual allegations

showing extreme departures from the standards of ordinary care that present a danger of

misleading buyers or sellers.   In re Advanta, 180 F.3d at 535.

Finally, to the extent Plaintiff attempts to assert a Section 10b claim against any

defendant other than the Bank's parent company, that claim is even further undermined by

Plaintiff's group-pleading.   For example, in Plaintiff's Amended Complaint he states that

"Wachovia, through the other defendants of which it was a 'control person,' caused the

dissemination of false and misleading prospectuses and other documents."   See Amended

Complaint ¶ 135.   However, Plaintiff's Amended Complaint provides no further detail and/or

factual allegations as to what ***each*** of those Defendants did that "caused" the dissemination of allegedly false and misleading information.

As such, Plaintiff's failure to plead motive and opportunity and/or recklessness results in Plaintiff's failure to establish scienter within the requirements of the Reform Act.  Without adequately establishing scienter, dismissal of Plaintiff's Amended Complaint is ***mandatory***. GSC Partners CDO Fund, 368 F.3d at 237 ("If a complaint fails to comply with the [Reform Act's] pleading requirements, dismissal is mandatory.") (citing 15 U.S.C. § 78u-4(b)(3)(A)).

> **6.     *Plaintiff's Section 10b claim should be dismissed because he fails to allege reliance.***

The fourth element of a Section 10b claim requires a plaintiff to have relied upon the alleged material misstatements in making investment decisions.  In this case Plaintiff fails to establish reliance for two reasons: (1) as beneficiary of the Trusts, Plaintiff did not have any authority over the purchase and sale of the investments for the Trusts, and therefore could not (as a matter of law) have relied upon the alleged misstatements; and (2) Plaintiff fails to plead any such reliance with the required particularity.

For purposes of a Section 10b claim, actual reliance is established by showing that, but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the securities transactions about which he complains.[11]  Basic, Inc. v. Levinson, 458 U.S. at 243. Therefore, common sense dictates that for someone to have relied upon an alleged misstatement in connection with the purchase or sale of a security, that person must hold authority over the purchase and/or sale of securities in his trust.  Again, as Plaintiff admits, "the Bank caused Evergreen Funds shares to be purchased for the beneficial ownership of plaintiff."  See Amended

---

[11]     Although the fraud-on-the-market presumption may in some cases excuse pleading actual reliance, Basic, Inc., 485 U.S. at 243, that presumption does not apply to mutual funds "because the share price of a mutual fund is not affected by alleged misrepresentations or omissions; the share price of a mutual fund is determined by the value of all underlying securities it holds at a given time."  In re Van Wagoner Funds, Inc., 382 F. Supp. 2d 1173, 1188 (N.D. Cal. 2004) (mutual fund share price not determined by any "market" but by value of underlying assets).

Complaint ¶ 139.  Consequently, there is no way that Plaintiff could have relied on the alleged misrepresentations—he had no authority to prevent the Bank from entering into the transactions and no control over the securities purchased for his benefit.  Therefore, Plaintiff, as a matter of law, cannot establish reliance.

Even if Plaintiff had authority over investment decisions for the Trusts, he still has not pleaded reliance adequately.  Pleading actual reliance requires the complaint to set forth particularized facts addressing, for example, exactly what Plaintiff claims to have read and relied upon.  Conclusory, boilerplate allegations of reliance do not suffice, nor do *post hoc* suggestions about what plaintiffs might have concluded had they read any particular document.  See GSC Partners CDO Fund, 368 F.3d at 240 (setting forth the particularity requirements for pleading a Section 10b claim); TSE v. Ventana Medical Systems, Inc., 297 F.3d 210, 223 (3d Cir. 2002) ("highly speculative chain of events that the plaintiffs ask [the Court] to infer from the evidence they have presented" held insufficient to establish a Section 10b claim.).

In this case, Plaintiff's only allegation of reliance sets forth the broad legal conclusion that "Plaintiff . . . relied to [his] detriment on the false statements set forth herein . . . .Had [he] not so relied . . . [he] would have sought the resignation of the Bank as corporate fiduciary or pursued [his] legal rights including the commencement of litigation."  See Amended Complaint ¶ 111.  This allegation is telling:  as a legal conclusion it should be ignored and, at the very least, fails to adequately establish reliance; furthermore, it emphasizes the point that Plaintiff had no authority over his Trusts' investments.  Indeed, even if he had known the alleged truth, he could not have prevented the purchase of the Evergreen Funds; rather his course of action would have been to "seek resignation of the Bank."  In other words, Plaintiff could not have, as a matter of law, relied upon the alleged misstatements within the aspects of a Section 10b claim.  Plaintiff's Section 10b claim should be dismissed.

### 7.      *Plaintiff's failure to plead reliance forecloses transaction causation.*

To plead transaction causation (an essential element of any Section 10b claim), Plaintiff must allege that "but for" the alleged misrepresentations and omissions, he would not have entered into the detrimental securities transaction.  Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 173 (3d Cir. 2001).  Because the complained of security was a mutual fund, this is not a fraud-on-the-market case.  As noted above, Plaintiff must plead actual reliance on a particular false or misleading statement.  However, as a beneficiary of the Trusts without any control over investments, Plaintiff has not pleaded and cannot plead such reliance.  Without having relied on the alleged misstatements, Plaintiff cannot allege that "but for" the misstatements he would not have entered into the transaction.  Plaintiff has accordingly failed to establish transaction causation, and his claim should be dismissed.

### 8.      *Plaintiff's Section 10b claim should be dismissed because he fails to plead loss causation adequately.*

Plaintiff's Section 10b claim should also be dismissed because he fails to allege loss causation adequately.  To state a claim under Section 10b, Plaintiff must plead that the acts or omissions of the Defendants caused the losses for which he seeks to recover.  See 15 U.S.C.A. § 78u-4(b)(4).  Such causation is often referred to as "loss causation."  To plead loss causation, Plaintiff must set forth facts showing "a causal connection between the material misrepresentation and the loss."  Dura Pharmaceuticals, 544 U.S. at 342.

Loss causation, like all other elements of a Section 10b claim, must be pleaded with specificity.  In this case Plaintiff fails to plead alleged losses with any detail whatsoever.  Instead, Plaintiff asserts that the Defendants' alleged misstatements and/or omissions resulted in "damages in an amount which cannot presently be determined."  See Amended Complaint, ¶ 139.  Plaintiff provides no further detail as to how the alleged misrepresentations and/or omissions resulted in damages, what those damages were, and the amount of his alleged loss.  His lack of specificity is totally inadequate under Section 10b.  See In re Morgan Stanley and Van Kampen Mut. Fund Sec. Litig., No. 03-CIV-8208, 2006 WL 1008138 (S.D.N.Y. April 18,

2006) ("Plaintiffs do not state which funds lost money, and they do not tie these losses to defendants' actions with the specificity required by the securities laws.  These do not constitute the sufficient pleading of a loss").  Plaintiff's failure to plead loss causation renders his Section 10b claim insufficient as a matter of law and the claim should be dismissed.

**F.    SLUSA Mandates Dismissal of Plaintiff's State Law Class Claims (Counts IV-VI).**

As mentioned above, in 1995, after determining that meritless and abusive private lawsuits were harming the nation's securities markets, Congress enacted the Reform Act to impose procedural and substantive restrictions on private securities suits in federal court, including heightened pleading requirements, more rigorous standards for class representation, and strict statutes of limitations.  Spencer v. Wachovia Bank, N.A., No. C.A. 05-81016, slip op. at 3 (S.D. Fla. May 10, 2006) (a true and correct copy of which is attached hereto as **Exhibit H**).[12]  Seeking to avoid the Reform Act's restrictions, securities class action plaintiffs began to frame their allegations of securities fraud as state law causes of action and pursue relief in state court.  Congress enacted the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") to close this loophole and to ensure that national, federal standards would be applied to challenges involving publicly traded securities.  See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 126 S. Ct. 1503, 1511 (2006); Rowinski v. Salomon Smith Barney Inc., 398 F.3d 294, 298-99 (3d Cir. 2005).

SLUSA "mandates dismissal of any: (1) covered class action; (2) based on state law; (3) alleging a misrepresentation or omission of a material fact or act of deception; (4) in connection with the purchase or sale of a covered security."  In re Lord Abbett Mutual Funds Fee Litigation, 407 F. Supp. 2d 616, 627 (D.N.J. 2005) (dismissing claims for breach of fiduciary

---

[12]    SLUSA prevents plaintiffs from bringing state law claims as class claims.  It does not foreclose plaintiffs from bringing individual state law claims.  Spencer v. Wachovia Bank, N.A., No. C.A. 05-81016, slip op. at 16 (S.D. Fla. May 10, 2006) (citing Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 126 S. Ct. 1503, 1514 (2006))

duty and unjust enrichment for purported scheme to pay excessive brokerage commissions); <u>see also</u> 15 U.S.C. § 78bb(f)(1)-(2).

The Court must focus on the substance of Plaintiff's allegations and be wary of efforts to circumvent SLUSA through artful pleading. <u>See</u> <u>Dudek v. Prudential Securities, Inc.</u>, 295 F.3d 875, 879 (8th Cir. 2002). The presence or absence of a key word is not determinative of SLUSA's applicability, but rather whether a reasonable reading of the complaint reveals allegations generally within SLUSA's purview. <u>See</u> <u>Rowinski</u>, 398 F.3d at 304. When the "gravamen" of the complaint involves an untrue statement or omission of a material fact, and when that conduct coincides with a transaction involving a covered security, SLUSA mandates dismissal. <u>See</u> <u>Dudek</u>, 295 F.3d at 879; <u>see also</u> <u>SEC v. Zandford</u>, 535 U.S. 813, 819 (2002). In this case, Plaintiff's efforts to circumvent SLUSA through artful pleading are obvious. His state law claims are preempted and should be dismissed. <u>Spencer</u>, slip op. at 1-13.

### 1.   *Plaintiff alleges a covered class action.*

Under SLUSA, a "covered class action" is a lawsuit in which "[d]amages are sought on behalf of more than 50 persons or prospective class members . . . ." 15 U.S.C. §§ 78bb(f)(5)(B)(i)(I), 77p(f)(2)(A)(i)(I). Here, Plaintiff purports to bring various state law claims on behalf of a nationwide class and state subclasses of "many thousands" of beneficiaries. <u>See</u> Amended Complaint ¶¶ 83-85. Plaintiff's state law claims meet SLUSA's definition of a covered class action.

### 2.   *Plaintiff's claims are founded on state law.*

Plaintiff's claims are also clearly founded on state law, as they assert state law claims for breach of fiduciary duty, breach of contract and unjust enrichment in Counts IV-VI. <u>See</u> <u>also</u> <u>Spencer</u>, slip op. at 4-5 (concluding same claims raised herein involved state law claims).

### 3.   *The core allegations in Plaintiff's Amended Complaint are that Defendants misrepresented or omitted material facts.*

On its face, Plaintiff's Amended Complaint alleges that Defendants misrepresented and omitted key material facts. Plaintiff's Amended Complaint centers on the singular theme that

Defendants invested the Trusts' assets and other financial assets in the Evergreen Funds through certain misrepresentations and omissions about the value of those investments, purported conflicts of interest and the related fees and expenses. Plaintiff alleges that the disclosures in the prospectuses were "not made in a manner and in language that is readily comprehensible." Amended Complaint ¶ 78. Indeed, one of the purported "common issues" in this case is whether Defendants disclosed "all material facts" in investing the trust assets in Evergreen Funds. Id. ¶ 90(b). Plaintiff repeatedly alleges non-disclosures and omissions concerning all aspects of the mutual fund investments, including alleged misstatements and omissions in the mutual fund prospectuses. Id. at ¶¶ 115-128, 135-140.

Disclosures associated with mutual fund investments, including disclosure of fees, is an area comprehensively regulated by federal securities laws and thus is precisely the type of action which SLUSA was intended to pre-empt. See Press v. Quick & Reilly, Inc., 218 F.3d 121, 131-32 (2d Cir. 2000). In cases like this, where plaintiff has attempted to assert claims based on the misrepresentation or omission of material facts under state law labels, courts in this Circuit have disregarded these labels and dismissed the claims as preempted by SLUSA. See, e.g., Rowinski, 398 F.3d at 304; In re Lord Abbett, 407 F. Supp. 2d at 627.

In Spencer, as in this action, the plaintiff alleged that the Bank as trustee, by investing trust assets in affiliated mutual funds – Evergreen Funds – without disclosing that such funds were affiliated with Wachovia, and by charging undisclosed advisory and management fees against the trust assets in relation to these funds, engaged in self-dealing in breach of its duty of loyalty to trust beneficiaries. Slip op. at 1-2 (Exhibit H). In trying to avoid SLUSA preemption, the plaintiff in Spencer argued that her claim was for breach of fiduciary duty and was not predicated on misrepresentations or omissions (id. at 5) – no doubt the same argument Plaintiff will raise here. In rejecting the plaintiff's arguments in Spencer, the court noted that the complaint was "replete with claims of misrepresentation." Id. at 7. The Court went on to quote allegations from the Spencer Complaint that are present in Plaintiff's Amended Complaint.

<u>Compare</u> Amended Complaint citations above <u>with</u> slip op. at 1-2, 8-9 (Exhibit H).[13]  As in

<u>Spencer</u>, the "gravamen" of the Amended Complaint is one of misrepresentation and omission.

### 4.      *Plaintiff's claims are in connection with the purchase of a covered security.*

There is no dispute given Plaintiffs' securities laws claims that Evergreen mutual funds

are "covered" securities, which are defined as securities that satisfy the standards of the

Securities Act of 1933, Sections 18(b)(1) and (b)(2), including "those securit[ies] issued by an

investment company that is registered, or that has filed a registration statement, under the

Investment Company Act of 1940." <u>See</u> 15 U.S.C. §§ 77p(f)(3), 77r(b); <u>Spencer</u>, slip op. at 5;

<u>see</u> <u>also</u> <u>Sofonia v. Prudential Life Ins. Co.</u>, 378 F. Supp. 2d 1124, 1128-1129 (S.D. Ia. 2005).

The "in connection with" requirement is also met in this case.  The Supreme Court has

given a broad interpretation to the phrase "in connection with" and has held that this language is

to be construed "not technically and restrictively, but flexibly to effectuate its remedial purpose,"

which is "to achieve a high standard of business ethics in the securities industry."  <u>Zandford</u>, 535

U.S. at 819, 813; <u>see</u> <u>also</u> <u>Dabit</u>, 126 S. Ct. at 1513 (citing <u>Super. of Ins. of State of N.Y. v.</u>

<u>Bankers Life & Cas. Co.</u>, 404 U.S. 6 (1971)).  In <u>Dabit</u>, the Supreme Court recently affirmed that

the traditional broad interpretation that has been given to this language extends to the "in

connection with" phrase as it is used in SLUSA.  Specifically, the Supreme Court held that "it is

enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or

by someone else."  <u>See</u> 126 S. Ct. at 1513.  "The requisite showing, in other words, is 'deception

"in connection with the purchase or sale of any security," not deception of an identifiable

purchaser or seller.'"  <u>Id</u>. (citations omitted).

Relying on this interpretation, the Court in <u>Spencer</u> dismissed similar state law claims on

SLUSA grounds.  Precisely as in this case, in <u>Spencer</u>, the plaintiff asserted state law class

claims for breach of fiduciary duty and unjust enrichment against the Bank.  <u>See</u> <u>Spencer</u>, No.

---

13      It is no surprise that the allegations in <u>Spencer</u> are similar to those asserted in this action
because Plaintiff's counsel in <u>Spencer</u> was also co-counsel with Plaintiff's attorney herein for two
years in five actions filed against Bank of America, all of which have been dismissed.

05-81016, slip op. at 1-2.  (Exhibit H).[14]  After finding that the other requirements of SLUSA were met, the court in Spencer addressed the "in connection with" requirement for SLUSA preemption.  The court reasoned that the plaintiff was essentially alleging that the Bank misled trust beneficiaries about its investment in affiliated funds and the expenses associated with those transactions.  See id. at 12-13.  Because the Bank's conduct was premised on, and furthered by, the purchase of the affiliated mutual funds, the court held that the plaintiff's state law claims were "in connection with" the purchase of the shares of the affiliated funds.  See id. at 13.  The court in Spencer, therefore, held that SLUSA preempted the plaintiff's state law class claims.

Spencer is squarely on point with this case.  Plaintiff here alleges what amounts to a scheme to mislead fiduciary customers about the Evergreen mutual fund investments.  The allegations and claims are premised on, and were allegedly furthered by, the purchase of shares of affiliated mutual funds for trusts and estates.  As such, Plaintiff's state law claims are "in connection with" a securities transaction and are preempted by SLUSA.  Precisely as the Court in Spencer ruled just two months ago, all requirements for SLUSA preemption have been met here and, accordingly, the state law class claims in the Amended Complaint must be dismissed.

### G.    Plaintiff's Common Law Claims Fail to State a Claim.

#### 1.    *Plaintiff's state law claims are time-barred.*

Under Pennsylvania law, claims for breach of contract and unjust enrichment must be brought within four years of accrual of a cause of action.  See 42 Pa. C.S.A. § 5525 (4), (8); see also Cole v. Lawrence, 701 A.2d 987, 989 (Pa. Super. Ct. 1997) (claims for unjust enrichment are subject to a four-year limitations period as contracts implied in law).  A two-year statute of limitations applies to breach of fiduciary duty claims.  See 42 Pa. C.S.A. § 5524 (7); see also

---

[14]    The Spencer Plaintiff alleged that the Bank, among other things, (1) violated state law by investing trust assets in affiliated funds, (2) failed to disclose certain material information relating to the investment in the affiliated funds, and (3) "devised a scheme to maximize its profits by forcing the irrevocable trusts to invest in the Evergreen Funds whether or not such investments were in the best interests of the trusts or their beneficiaries."  See id. at 2.  The allegations in Spencer track those in this case.

Gurfein v. Sovereign Group, 826 F. Supp. 890, 917 (E.D. Pa. 1993) (finding the two-year statute of limitations applies to breach of fiduciary duty claims under Pennsylvania law).

As admitted in the Amended Complaint, Plaintiff has been on notice of the investment of trust assets in affiliated mutual funds since the "conversion" occurred over eight years ago in 1998. The last surviving limitations period expired, therefore, at the latest in 2002. For purposes of this motion to dismiss, however, even if Plaintiff contends his claims did not accrue at the time the "conversions" took place, it is apparent that those claims accrued no later than December 2001, when the class notice went out to all Parsky class members. Undeniably, at that time, Plaintiff's claims had accrued (and were, in fact, being actively litigated by the plaintiffs in Parsky). Even under this overly generous reading of the facts, Plaintiff's claims would have expired in December 2005. Because his suit was filed in March 2006, all of his state law claims have expired. Further, as a member of the Parsky class, Plaintiff received a court-approved class notice in December 2001. See Exhibit D at 3 ¶ G. Accordingly, even in the absence of the release that bars all of Plaintiff's current claims, any claims based upon the investment of trust investments in Evergreen mutual funds are barred by the statute of limitations.

## 2. Plaintiff's state law claims fail as a matter of law.

The Court in Spencer noted that even if SLUSA did not pre-empt the state law claims, which it does, the state law claims – based upon the very same allegations asserted here – fail to state a claim as a matter of law. Spencer, slip op. at 14-16 (Exhibit H). The same result should be reached here.

Each of Plaintiff's claims for breach of fiduciary duty, breach of contract, and unjust enrichment is predicated on the faulty contention that the investment of trust assets and charging of fees was improper. See, e.g., Amended Complaint ¶ 89. Plaintiff has failed to state a claim upon which relief can be granted because the alleged improper conduct that forms the basis for his claims—investment in the Evergreen Funds and imposition of "sweep fees"—is expressly authorized by state law and permitted by the Trust Instruments themselves. No claim, therefore, exists as a matter of law.

The laws of the Commonwealth of Pennsylvania explicitly permit trustees to invest the assets of trust investments in mutual funds advised or serviced by an affiliate of the trustee.  See 20 Pa. C.S.A. § 7209 ("Notwithstanding that a bank or trust company or an affiliate provides services to the investment company or investment trust, . . . and receives reasonable compensation for those services and notwithstanding any other provision of law, a bank or trust company acting as a fiduciary, agent or otherwise may invest and reinvest in a mutual fund"); see also 20 Pa. C.S. § 7211; In re Estate of Kopf, No. O.C. 71 of 2001, slip op. (Warren Cty Orphans' Ct. Dec. 31, 2001) (no breach of fiduciary duty because investments in affiliated mutual funds are authorized by statute), aff'd 850 A.2d 20 (Pa. Super. Ct. 2004) (a true and correct copy of which is attached hereto as **Exhibit I**).  Because investment of trust assets in mutual funds thus carries the imprimatur of the Pennsylvania General Assembly, investing assets of the Trusts was not wrongful and was not an "abdication" of any duty owed to Plaintiff.[15]  See also 1996 OCC Ltr.  LEXIS 33 (OCC Interpretive Letter No. 722 (May 1996)) (the Office of the Comptroller of the Currency, which regulates the bank, has opined that a national bank may invest trust assets in proprietary mutual funds and receive trustee fees notwithstanding any fees the mutual fund servicer may charge); Restatement (Third) of Trusts, Prudent Investor Rule § 227, comment m, at 51.

Furthermore, Pennsylvania law explicitly permits the "sweep fees" that Plaintiff claims were wrongfully charged to the Trusts.  See 20 Pa. C.S.A. § 7207(b) (authorizing a fiduciary to make temporary investments of funds it may hold uninvested, and to charge a reasonable fee in addition to any other fee for services rendered in making temporary investments).  As counsel for Plaintiff well knows, the Orphans' Court in Pennsylvania expressly held years ago that the Probate, Estates and Fiduciaries Code permits fiduciaries to "sweep" income into investment vehicles in which the bank may have an ancillary relationship, and "to charge a reasonable fee, *in*

---

[15]     20 Pa.C.S. § 7206(f) ("Mutual funds.—Investment in a mutual fund is not a delegation of investment function, and neither the mutual fund nor its advisor is an investment agent.")

*addition to* all other compensation, for said temporary investments." In re Packard Trust, 12 Fiduciary Rep. 2d 148, 150-51 (Mont. Cty. 1992) (emphasis in original).[16]

Accordingly, because the Bank's actions were authorized under state law, it is axiomatic that those actions did not breach a duty of care owed to Plaintiff or cause unjust enrichment to flow to any Defendant. See In re Packard Trust, 12 Fiduciary Rep. 2d at 151 ("the Court affirms the practice of 'sweeping' income [and] affirms the practice of charging reasonable 'sweep' fees"); see also Heritage Surveyors & Eng'rs, Inc. v. National Penn Bank, 801 A.2d 1248, 1253 (Pa. Super. Ct. 2002) (bank did not breach a duty owed to plaintiff when it complied with its legal duty to maintain the confidentiality of its customer's information); In re Estate of Kopf, No. O.C. 71 of 2001, slip op. at 5 (trustee did not breach duty of loyalty by engaging in conduct authorized by statute). Accord Hughes v. LaSalle Bank, N.A., 419 F.Supp.2d 605, 619 (S.D.N.Y., 2006) (in dismissing claims brought by the same Plaintiffs' counsel, the Court noted that the applicable state law "expressly permits a trustee to invest and reinvest the trust estate in a mutual fund, including those mutual funds 'for which the trustee or an affiliate acts as advisor or manager' and receives 'reasonable remuneration' for any services provided to the mutual funds").

Ironically, in addition to seeking damages for the imposition of "sweep fees," Plaintiff also seeks damages for the practice that pre-dated sweeping accounts—that of leaving funds idle for periods of time. See, e.g., Amended Complaint ¶ 158. In Plaintiff's case, however, the Trusts explicitly *authorized* the Bank to hold trust assets uninvested. See Exhibit A, Article Fifth at C; Exhibit B, Article Fifth at C. Thus, because the terms of the Trusts allowed the Bank to hold

---

16      The Packard case resolved the question of the propriety of sweep fees under Pennsylvania law at a time when Plaintiff's counsel was attempting to secure federal court adjudication of the same question. Although he obtained a ruling from the district court, that, contrary to Pennsylvania law, the fees were improper, the Third Circuit promptly reversed the decision, finding that the lower court lacked subject matter jurisdiction. See Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1050 (3d Cir. 1993), cert. denied sub nom. Upp v. Mellon Bank, N.A., 510 U.S. 964 (1993). While subsequent changes in the scope of the Court's diversity jurisdiction have altered the jurisdictional calculus, Pennsylvania law on sweep fees remains explicit and unchanged.

uninvested assets of the Trusts, having idle funds on hand cannot now serve as a basis for a cause of action.

In sum, because both state law and the Trust Instruments authorized the conduct challenged in the Amended Complaint, Plaintiff's claims for breach of fiduciary duty and breach of contract are barred as a matter of law.  See In re McCune, 705 A.2d 861, 865, 868 (Pa. Super. 1997) (investment of charitable trust funds by a corporate trustee in its own stock was not improper self-dealing where authorized by the will); In re Will of Heidenreich, 378 N.Y.S.2d 982, 985 (N.Y. Surrogate's Ct. 1976) (same).

Plaintiff's breach of contract claim must also be dismissed because Plaintiff cannot identify any provisions of the Trust Instruments that the Bank allegedly breached.[17]  Indeed, Plaintiff does not identify in the Amended Complaint any term of the instruments that prohibited investment in shares of the Evergreen mutual funds or imposition of sweep fees.  To the contrary, the Trust Instructions explicitly permitted the Bank to invest in "*all* forms of real or personal property" without limitation.  Exhibit A, Article Fifth; Exhibit B, Article Fifth (emphasis added).  A party cannot be liable for breach of contract when its actions did not breach a term of the contract.  See Cable & Assoc. Ins. Co. v. Commercial Nat'l Bank, 875 A.2d 361, 364-65 (Pa. Super. 2005) (a bank does not breach a contract where it has complied with the terms of the agreement).

Plaintiff also claims that the Bank has breached a duty of good faith and fair dealing by its conduct.  As set forth above, the complained-of conduct is lawful.  No duty of good faith compels the Bank "to surrender rights which it has been given by statute" or by contract.

---

[17]     While Plaintiff claims that fees were "excessive," he does not claim that the Bank's fees breached the terms of the Trust Instruments because they did not.  Under these circumstances, he has failed to state a claim for breach of contract or breach of fiduciary duty for "excessive" fees. 20 Pa.C.S.A. §7185(c); In re Duncan Trust, 391 A.2d 1051, 1055 (Pa. 1978) (compensation set forth in the instrument creating the trust will be enforced).

Creeger Brick and Bldg. Supply, Inc. v. Mid-State Bank and Trust Co., 560 A.2d 151, 154 (Pa. Super. Ct. 1989).

Finally, Count VI asserts a claim against all Defendants for unjust enrichment.  A plaintiff must prove three elements to succeed on an unjust enrichment claim under Pennsylvania law: (1) "benefits conferred on one party by another," (2) "appreciation of such benefits by the recipient," and (3) "acceptance and retention of these benefits under such circumstances that it would be inequitable [or unjust] for the recipient to retain the benefits without payment of value."  Allegheny General Hosp. v. Philip Morris, Inc., 228 F.3d 429, 447 (3d Cir. 2000) (brackets in original).  See also Torchia v. Torchia, 346 Pa. Super. 229, 233, 499 A.2d 581, 582 (1985) (setting forth the elements of an unjust enrichment claim).

Given that the conduct challenged here, including the collection of both trustee and mutual fund fees relating to invest trust assets in mutual funds administered by Bank affiliates, is permissible under state law as well as the Trust Instruments, there is no basis to conclude that the fees paid to the Bank or the Evergreen mutual funds were "unjust" as a matter of law.  Further, the gravamen of Plaintiff's claims is that he paid too much money to the Bank for the services it provided, yet he does not and cannot allege that the Bank charged more for its services than provided for in the terms of the Trust Instruments.

In addition, because the relationship between Plaintiff and the Bank was defined by contract, there is no basis for claiming unjust enrichment, a legal cause of action reserved for those situations where no express contract exists.  See Wilson Area Sch. Dist. v. Skepton, 895 A.2d 1250, 1254 (Pa. 2006) (stating "it has long been held in this Commonwealth that the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract, regardless of how harsh the provisions of such contracts may seem in the light of subsequent happenings" (quotations omitted)).

Finally, there are no allegations that Plaintiff had a relationship, contractual, fiduciary or otherwise, with, or paid fees, unjust or otherwise, to any Defendants other than the Bank.

## IV.   <u>CONCLUSION</u>

Plaintiff's Amended Complaint should be dismissed because it fails to state a claim upon which relief can be granted.  Among other defects, Plaintiff's claims have been released, are not cognizable under the cited federal statutes, are predicated on conduct that is permitted under and fully consistent with state law and the relevant trust instruments, and are time-barred.

Respectfully submitted,


_____/s/ *Elizabeth F. Abrams*_____
Andrew J. Soven (Pa. Id. No. 76766)
Elizabeth F. Abrams (Pa. Id. No. 86525)
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
(215) 851-8100

Gregory B. Jordan (Pa. Id. No. 42105)
Mary J. Hackett (Pa. Id. No. 51215)
Sharon L. Rusnak (Pa. Id. No. 84339)
**REED SMITH LLP**
435 Sixth Avenue
Pittsburgh, PA 15219
(412) 288-3131

Attorneys for Defendants Wachovia Bank, N.A., Wachovia Corporation, Evergreen Investment Services, Inc., Evergreen Investment Management Co. LLC, and Evergreen Distributors, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of July, 2006, I caused a true and correct copy of the foregoing Defendants' Motion to Dismiss Plaintiff's Amended Complaint, and the accompanying Memorandum of Law in Support of the Motion to Dismiss to be served via the Court's electronic filing system and via first class U.S. Mail, postage prepaid, upon the following counsel of record:

Richard D. Greenfield
Greenfield & Goodman LLC
7426 Tour Drive
Easton, MD 21601
email:  whitehatrdg@earthlink.net

Ann Miller
Ann Miller LLC
834 Chestnut Street, Suite 206
Philadelphia, PA 19107
email:  am@attorneyannmiller.com

_____ /s/ *Elizabeth F. Abrams* _____
Elizabeth F. Abrams