**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RALPH BROOKS, JR. on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | No.:  06-CV-955 |
| v. | ) ) | |
| WACHOVIA BANK, N.A., et al., | ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Filed on Behalf of:
Defendants Wachovia Bank, N.A., Wachovia
Corporation, Evergreen Investment Services,
Inc., Evergreen Investment Management Co.
LLC, and Evergreen Distributors, Inc.

Andrew J. Soven
PA I.D. No. 76766

REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103
(215) 851-8100

Gregory B. Jordan
PA I.D. No. 42105
Mary J. Hackett
PA I.D. No. 51215
K. Issac deVyver
PA I.D. No. 202655

REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA  15219
(412) 288-3131

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION. ................................................................................................  1

II.     LAW AND ARGUMENT. ....................................................................................  2

        A.      Plaintiff's Claims Were Released In <u>Parsky</u> and Should be
                Dismissed. ................................................................................................  2

                1.      Plaintiff released all of his claims, including future claims,
                        in the <u>Parsky</u> settlement. ...............................................................  4

                2.      Plaintiff cannot collaterally attack the <u>Parsky</u> settlement. .................  11

                3.      Plaintiff's securities law claims were released in <u>Parsky.</u> .................  13

                4.      There is no legal support for Plaintiff's assertion that the
                        <u>Parsky</u> release is ineffective due to the Bank's alleged
                        non-disclosure of facts and breach of fiduciary duty. ........................  16

        B.      Plaintiff Has Failed to State a Claim for RICO in Count I. ...........................  17

                1.      Plaintiff cannot avoid dismissal by attempting to
                        re-characterize his RICO predicate acts from securities law
                        claims to breach of fiduciary duty. .....................................................  17

                2.      Having failed to plead a separate enterprise, Plaintiff's
                        RICO claim should be dismissed. ........................................................  19

        C.      Plaintiff Has Failed to State a Claim in Count II Under the
                Securities Act of 1933. ...........................................................................  20

                1.      Plaintiff has failed to meet his burden of affirmatively
                        pleading that his Sections 11 and 12 claims are timely. .....................  20

                2.      Plaintiff has failed to plead that he purchased the
                        challenged securities pursuant to a registration statement or
                        an initial offering. ..............................................................................  22

                3.      Plaintiff fails to adequately plead that Defendants are
                        subject to liability under Section 11. ..................................................  23

                4.      Plaintiff has failed to plead the fundamental element of
                        damages. .............................................................................................  24

        D.      Plaintiff's Exchange Act Claim in Count III Fails as a Matter of
                Law. ........................................................................................................  25

1.      Plaintiff has failed to meet Rule 10b-5's pleading
        requirements................................................................... 25

2.      Plaintiff's Opposition confirms that he avers no material
        misrepresentations or omissions actionable under
        Section 10b...................................................................... 26

3.      Plaintiff ignores the fact that each Defendant, other than the
        Bank, lacks a duty to disclose. ............................................ 28

4.      The Amended Complaint fails to adequately allege scienter............. 28

5.      Plaintiff is not entitled to a presumption of reliance.......................... 30

6.      Plaintiff's alleged losses are not recoverable under Section
        10b...................................................................................... 32

E.      Plaintiff's Class Claims in Counts IV through VI are Preempted by
        SLUSA and Must Be Dismissed.................................................... 33

F.      Plaintiff's State Law Claims are Time-Barred................................. 35

G.      Plaintiff's State Law Claims Fail to State a Cause of Action. ..................... 36

H.      Defendants Have Not Raised Factual Issues and the Court Should
        Not Convert Defendants' Motion to Dismiss into a Motion for
        Summary Judgment. ...................................................................... 37

IV.     CONCLUSION.................................................................................... 38

## I.    <u>INTRODUCTION</u>

Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss ("Opposition"), like his Amended Complaint, is premised on factual vagaries and overbroad or simply incorrect legal conclusions. Plaintiff ignores many of Defendants' arguments for dismissal and relies on misinterpretations of the law to respond to others. When applying the standard under Federal Civil Rule 12(b)(6), the Court should find that Plaintiff has failed to state a claim upon which relief can be granted.

In the first instance, Plaintiff's claims are barred by a prior, court-approved release and settlement. Plaintiff concedes that he was a class plaintiff who shared in the $23 million settlement that Wachovia Bank, N.A. (the "Bank") paid to resolve prior litigation (captioned <u>Robert Parsky, et al. v. Wachovia Bank N.A.</u>) alleging precisely what Plaintiff claims here—that the Bank's investments of trust assets in its affiliated mutual funds constitutes self-dealing and a breach of fiduciary duty. Plaintiff offers a host of reasons why he should be permitted to renege on his obligations under that settlement, including claiming that he did not receive notice of the settlement (despite admittedly receiving the settlement proceeds). Plaintiff's arguments ignore the language of the court approved release, the claims asserted in this case and <u>Parsky</u>, and controlling authority and should be rejected. As a matter of law, Plaintiff cannot now assert claims that he released in <u>Parsky</u> or collaterally attack the <u>Parsky</u> settlement. It is Plaintiff, not Defendants, who is trying to "double dip" and seek a second recovery for claims previously settled and released.

Plaintiff also fails to show that any of his claims have independent merit. Ignoring the practical reality that Plaintiff's claim concerning the investment of assets in a small trust does not and should not give rise to a claim for racketeering activity, Plaintiff's  claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") is barred by statute. Likewise, despite a tortured reading of the Amended Complaint and an overly broad interpretation of the law, Plaintiff cannot show that he adequately pled securities law claims. His securities law claims, based upon the face of the Amended Complaint, are time-barred. Plaintiff's Opposition

also does not articulate any basis for the Court to deny dismissal of his state law claims when those claims are preempted under the Securities Litigation Uniform Standards Act ("SLUSA"), are time-barred, and when the alleged improper conduct forming the basis for those claims is expressly authorized under Pennsylvania state law.  For these reasons, Plaintiff has failed to state a claim upon which relief can be granted, and the Court should dismiss the Amended Complaint with prejudice.

## II.   <u>LAW AND ARGUMENT</u>

### A.   **Plaintiff's Claims Were Released in <u>Parsky</u> and Should be Dismissed.**

Plaintiff does not dispute that he was a class member who accepted settlement proceeds in <u>Parsky</u> nor does he seriously contest that Defendants are entitled to enforce the <u>Parsky</u> settlement in this case.  Instead, Plaintiff attempts to avoid his obligations under the <u>Parksy</u> settlement by arguing that (1) this Court cannot rule on the scope of the <u>Parsky</u> settlement at this stage; (2) the <u>Parsky</u> settlement does not encompass the claims in this case; (3) he can collaterally attack the <u>Parsky</u> settlement; (4) future securities claims cannot be released; and (5) the <u>Parsky</u> release is not effective because of the Bank's alleged breach of fiduciary duty.

With respect to Plaintiff's first argument, his assertion that Defendants' release argument cannot be raised in a Rule 12(b)(6) motion to dismiss is wholly without legal support.  Indeed, this Court has granted a 12(b)(6) motion to dismiss based on a plaintiff's prior settlement and release of claims in a class action lawsuit.  <u>See</u> <u>Montgomery v. Beneficial Consumer Dis. Co.</u>, No. 04-2114, 2005 U.S. Dist. LEXIS 3249 (E.D. Pa. March 2, 2005) (granting 12(b)(6) motion to dismiss based on the plaintiff's prior release of claims in a class action settlement).  Further, the only case Plaintiff cites, <u>Thompson v. Wheeler</u>, 898 F.2d 406, 410 (3d Cir. 1990), does not stand for the proposition for which he cites it.  In <u>Thompson</u>, the defendants styled their motion for summary judgment as a motion to dismiss.  <u>See</u> <u>id</u>. at 410.  The Court of Appeals, based solely on the facts of that case, held that a motion for summary judgment was a more appropriate

vehicle for the defendants' argument.  See id.  The Thompson court did not render a prohibition on raising the defense of release in a motion to dismiss, as Plaintiff seems to suggest.

It is simply absurd to contend that a party who pays significant sums to resolve a matter must face the expense and inconvenience of discovery on those same claims before it can enforce the terms of the prior settlement.  Further, there is no question that, contrary to Plaintiff's contentions, the Court can consider public records, like the court filings in Parsky, without converting Defendants' motion into one for summary judgment.[1]  See Montgomery, 2005 U.S. Dist. LEXIS 3249, at *11-12 (considering courts filing from a class action settlement when dismissing the plaintiff's claims based on prior settlement and release); Gloeckl v. Giant Eagle, Inc., No. 05-1431, 2006 U.S. Dist. LEXIS 27865, at *8 (W.D. Pa. April 28, 2006) ("[I]n resolving a 12(b)(6) motion to dismiss, a court may look beyond the complaint to matters of public record, including court files and records, decisions of government agencies and administrative bodies, and documents referenced in the complaint or essential to a plaintiff's claim which are attached to a defendant's motion.").  Finally, while Plaintiff baldly contends that factual issues exist as to whether Defendants fall within the purview of the Parsky Stipulation of Settlement, Plaintiff never identifies the alleged fact issues raised nor does he offer a contrary interpretation of the Stipulation of Settlement which clearly encompasses Defendants within the term "Releasees."

As set forth below, Plaintiff's remaining arguments to try to avoid the release in Parsky are also without merit.

---

[1]      Although Plaintiff does not raise any specific objection to the other documents attached to Defendants' motion, those documents may also be considered by the Court.  Exhibits A and B to Defendants' motion are the trust agreements for the trusts that form the basis for Plaintiff's claims.  The Court may consider those documents when ruling on Defendants' motion because they are integral to Plaintiff's claims.  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) ("a document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment.") (citations omitted).

### 1.     *Plaintiff released all of his claims, including future claims, in the <u>Parsky</u> settlement.*

Plaintiff argues that he did not release his claims in <u>Parsky</u> because that case involved different claims.  Plaintiff further contends that his claims were not released in <u>Parsky</u> because the claims at issue in this case allegedly occurred after the effective date of the <u>Parsky</u> Final Order and Judgment Approving Settlement.  Plaintiff's arguments are without merit, however, because they are contrary to the complaints filed in each action and the law in this Circuit relating to class action settlements.

The Court of Appeals for the Third Circuit has held that when a plaintiff enters into a release in a class action settlement, he releases all claims based on the same factual predicate as the settled class action, including, if the language in the release is broad enough, future claims and claims that were not and could not have been presented, in the class action.  "It is now settled that a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claim in the settled class action.  This is true even though the precluded claim was not presented, and could not have been presented in the class action itself."  <u>In re Prudential Ins. Co. of Am. Sales Pract. Lit.</u>, 261 F.3d 355, 366 (3d Cir. 2001) (citations omitted).  "The key inquiry is whether the factual predicate for future claims is identical to the factual predicate underlying the settlement agreement."  <u>Monaco v. Mitsubishi Motors Cred. of Am., Inc.</u>, 34 Fed. Appx. 43, 45 (3d Cir. 2002).  If the factual predicate of the two cases is the same, the future claims are released even if they were not or could not have been presented in the original class action.  <u>See</u> <u>id</u>. at 45.

The claims in this case and <u>Parsky</u> have the same factual predicate.  Although Plaintiff attempts to paint a narrow picture of <u>Parsky</u> by selectively focusing on a single aspect of the case—alleged adverse tax consequences resulting from the closure of common trust funds—the claims in <u>Parsky</u> were much broader.  In <u>Parsky</u>, the plaintiffs alleged that the Bank breached its fiduciary duty and engaged in self-dealing when it decided to close common trust funds in which trust assets were invested and to invest those assets instead in affiliated Evergreen mutual finds.

The adverse tax consequences were only one aspect of that alleged self-dealing and breach of fiduciary duty.  Among other things, the <u>Parsky</u> plaintiffs alleged that the Bank's investment in affiliated Evergreen mutual funds, and the management of those funds, was a breach of fiduciary duty and self-dealing because it was done to serve the Bank's interests—not the interests of the beneficiaries—and because the Bank did not disclose all the material facts relating to the conversions.  <u>See</u> <u>Parksy</u> First Amended Class Action Complaint, ¶¶ 35-49 (attached as Exhibit E to Defendants' Motion).  Plaintiff here raises *exactly* the same allegations.

Each of Plaintiff's claims in this case is similarly predicated on the Bank's conversion of trust assets invested in common trust funds to Evergreen mutual funds or the management of those funds.  <u>See</u> Amended Complaint, ¶¶ 98-160.  Comparing just a few of the allegations in <u>Parsky</u> to those asserted in this case reveals that they arise from the same alleged improper conduct.

| Parsky, et al. v. Wachovia Bank, N.A., et al.<br>From the Parsky Amended Complaint<br>(attached as Exhibit E to Defendants' Motion) | Brooks, et al. v. Wachovia Bank, N.A., et al.<br>From the Brooks Amended Complaint |
|---|---|
| **As part of its merger plans, the Bank allegedly decided to invest trust assets in affiliated mutual funds to reduce its expenses and maximize its profits:**<br><br>"16.  At some time prior to April 23, 1999, First Union [the Bank's predecessor] decided to terminate the . . . common trust funds . . . and attempt to convert the investments in those common trust funds into shares of certain mutual funds in First Union's Evergreen family of mutual funds.  Such termination and conversion would benefit First Union by reducing administrative and other management expenses, increasing non-advisory fees paid to First Union by members of the class, and achieving some of the economies and efficiencies that were contemplated as a result of First Union's acquisitions of CoreStates and Signet." | **As part of its merger plans, the Bank allegedly decided to invest trust assets in affiliated mutual funds to reduce its expenses and maximize its profits:**<br><br>"25.  In the course of Wachovia's long chain of acquisitions of other financial institutions, . . . it relied increasingly on squeezing more and more revenues and profits from fiduciary operations, including standardizing the investment of fiduciary assets and forcing them, increasingly, into proprietary funds."<br><br>"28.  Beginning some time prior to 1998, Wachovia developed various plans and schemes pursuant to which it and the Bank sought to minimize the operating expenses with respect to fiduciary accounts and maximize their profits from this aspect of their business.  Wachovia's plan included the consolidation and elimination of |

| **Parsky, et al. v. Wachovia Bank, N.A., et al. From the Parsky Amended Complaint (attached as Exhibit E to Defendants' Motion)** | **Brooks, et al. v. Wachovia Bank, N.A., et al. From the Brooks Amended Complaint** |
|---|---|
| <u>See also</u> <u>Parsky</u> Amended Complaint, ¶ 43. | the previously existing trust departments of the Bank and the Acquired Banks and by carrying out the Conversions [of exchanging investment units of common trust funds into shares of affiliated mutual funds]." <br><br> <u>See also</u> Amended Complaint, ¶¶ 71, 90(c), 93. |
| **The Bank used the trust assets to seed and grow its affiliated mutual funds:** <br><br> "16.  …  In addition, the large influx of money into the Evergreen funds would benefit First Union by causing Evergreen to appear to be a rapidly growing family of mutual funds.  Such termination and conversion offered no comparable benefits to plaintiffs and the other members of the class, the beneficiaries of the trusts." | **The Bank used the trust assets to seed and grow its affiliated mutual funds:** <br><br> "29.  Pursuant to such business plans, the Bank decided to utilize the assets within its control, including funds held by the Bank in fiduciary accounts, to fund a group of new Evergreen Funds (some newly formed with no operating history) and/or to add assets to existing Evergreen Funds." |
| **The Bank holds itself out as an expert in investments and financial management:** <br><br> <u>See</u> <u>Parsky</u> Amended Complaint, ¶ 15. | **The Bank holds itself out as an expert in investments and financial management:** <br><br> <u>See</u> Amended Complaint, ¶¶ 48, 49. |
| **The investment of trust assets in affiliated mutual funds allegedly was done to benefit the Bank:** <br><br> "16.  At some time prior to April 23, 1999, First Union decided to . . . convert the investments in [certain] common trust funds into shares of . . . [the] Evergreen family of mutual funds.  Such termination and conversion would benefit First Union by reducing administrative and other management expenses, increasing non-advisory fees paid to First Union by members of the class . . . In addition, the large influx of money into the Evergreen funds would benefit First Union by causing Evergreen to appear to be a rapidly growing family of mutual funds.  Such termination and conversion offered no | **The investment of trust assets in affiliated mutual funds allegedly was done to benefit the Bank:** <br><br> "53.  . . .  Indeed, the actions of Wachovia and the Bank were driven purely by their desire to maximize their profit rather than by the Bank's obligations to the beneficiaries entrusted to it." <br><br> "143.   Upon information and belief, in conspiracy with the other defendants, the Bank failed to consider the best interests of the fiduciary account of the Brooks Trust and the accounts of other members of the Class when it invested fiduciary assets in the Evergreen Funds and/or charged such accounts 'sweep fees' as well as other unjustified |

| Parsky, et al. v. Wachovia Bank, N.A., et al. From the Parsky Amended Complaint (attached as Exhibit E to Defendants' Motion) | Brooks, et al. v. Wachovia Bank, N.A., et al. From the Brooks Amended Complaint |
|---|---|
| comparable benefits to plaintiffs and the other members of the class, the beneficiaries of the trusts." <br><br> "27.  Indeed, the <u>only</u> apparent reasons for the terminations and conversions were First Union's own interests in consolidating operations, reducing administrative expenses, making more money in non-advisory fees, and building up the Evergreen family of mutual funds.  Class members' investments were converted to First Union's Evergreen mutual funds that purportedly had policies and objectives similar to or consistent with those of the corresponding former common trust funds, but with non-advisory fees up to 25 times higher than the non-advisory fees charged to manage the common trust funds.  The conversions were <u>not</u> in the interests of the beneficiaries." <br><br> "47. First Union breached its fiduciary duties to plaintiffs and other members of the class by engaging in self-dealing." | charges and breached its duty of loyalty to plaintiff and other Class members by putting the interests of itself and its affiliates before the interests of plaintiff and the members of the Class." <br><br> "142.  The Bank's decisions to invest the assets of the Brooks Trust and those of the members of the Class in the Evergreen Funds and other proprietary funds and to charge 'sweep fees' to fiduciary accounts were motivated not by the interests of plaintiff and the Class members, but by the Bank's desire to generate investment advisory and other fees for itself and its affiliates and, as well as, to reduce the Bank's operating expenses, all of which as carried out in the manner described above, was wrongful and damaged plaintiff and each member of the Class." |
| **By investing trust assets in affiliated mutual funds, the Bank breach its fiduciary duty:** <br><br> "42.  First Union breached its fiduciary duties to plaintiffs and the other members of the class by failing to administer the trust funds solely in the interests of the beneficiaries." | **By investing trust assets in affiliated mutual funds, the Bank breach its fiduciary duty:** <br><br> "63.  Instead, the Bank, consistent with its overall nationwide corporate policy, uniformly applied its mandate that trust assets (including, in particular, those in *all* irrevocable trust accounts) be invested in Evergreen Funds.  By virtue of its wholesale abrogation of its fiduciary obligations and its failure to act as a prudent investor would, the Bank breached its fiduciary duties and damaged all members of the Class." |
| **The Bank allegedly breached its fiduciary duty by failing to disclose information about the affiliated mutual fund investments:** <br><br> "45.  First Union breached its fiduciary duties to | **The Bank allegedly breached its fiduciary duty by failing to disclose information about the affiliated mutual fund investments:** <br><br> "119.  These Registration Statements and Post- |

| Parsky, et al. v. Wachovia Bank, N.A., et al. From the Parsky Amended Complaint (attached as Exhibit E to Defendants' Motion) | Brooks, et al. v. Wachovia Bank, N.A., et al. From the Brooks Amended Complaint |
|---|---|
| plaintiffs and the other members of the class by failing to furnish information and by failing to disclose all the material facts involving the conversion of their trusts." | Effective Amendments also failed to disclose that among the risk factors faced by investors in Evergreen Funds was the risk that, because its Board of Trustees selected and contracted with Evergreen to provide investment management and administrative services on a "no-bid" basis, Evergreen Funds were being charged excessive fees for such services and because the Board of Trustees was not objective in its selection of investment advisers to the Evergreen Funds, shareholders were not able to obtain the most qualified personnel and the lowest cost consistent with such quality." |
| **By investing trust assets in affiliated mutual funds, the Bank allegedly put its own interests first:**<br><br>"46.  First Union breached its fiduciary duties to plaintiffs and the other members of the class by putting its own interests, including its interests in consolidating operations, reducing administrative expenses, receiving larger non-advisory fees, and building up the Evergreen mutual funds, ahead of the beneficiaries' interests in avoiding or deferring tax liability and receiving complete and accurate information about the management of their investments." | **By investing trust assets in affiliated mutual funds, the Bank allegedly put its own interests first:**<br><br>"142.  The Bank's decisions to invest the assets of the Brooks Trust and those of the members of the Class in the Evergreen Funds and other proprietary funds and to charge 'sweep fees' to fiduciary accounts were motivated not by the interests of plaintiff and the Class members, but by the Bank's desire to generate investment advisory and other fees for itself and its affiliates and, as well as, to reduce the Bank's operating expenses, all of which was carried out in the manner described above, was wrongful and damaged plaintiff and each member of the Class." |

Plaintiff's attempt to distance his claims from the common trust fund "conversions" or closures at issue in <u>Parsky</u> is of no moment.  He is challenging the very same transactions where the Bank closed its common trust funds and invested the trust assets in affiliated mutual funds. Indeed, Plaintiff raises as a purported common issue whether the Bank's corporate business decision to invest the assets of its fiduciary accounts in Evergreens Funds constitutes a breach of fiduciary duty.  <u>See</u> Amended Complaint ¶ 90(c); <u>see also id</u>. at ¶ 93.  The fact that he does not

call this decision or transaction the "conversion" does not change the fact that he is asserting claims based upon the same conduct and factual predicate as in <u>Parsky</u>.

A comparison of the purported "common" issues proposed in both complaints leads to the same conclusion that Plaintiff is trying to re-litigate the same case.  Plaintiff no doubt quoted in his Amended Complaint the very same purported common issues from the <u>Parsky</u> Amended Complaint hoping to take advantage of the prior ruling certifying a class in <u>Parsky</u>, while at the same time insisting that his issues and claims are different.

| Parsky, et al. v. Wachovia Bank, N.A., et al. Purported "Common Issues" From *Paragraph 31* of the Parsky Amended Complaint (attached as Exhibit E to Defendants' Motion) | Brooks, et al. v. Wachovia Bank, N.A., et al. Purported "Common Issues" From *Paragraph 90* of the Brooks Amended Complaint |
|---|---|
| "whether, as trustee, First Union owed fiduciary duties to members of the class, including a duty of loyalty, a duty of candor, a duty of fair dealing, a duty to avoid self-dealing, an affirmative duty to furnish information and disclose all material facts involving the trust, and a duty to administer the trust funds solely in the beneficiaries' interests, rather than in First Union's interests". | "whether, as corporate fiduciary, the Bank owes and owed fiduciary duties to plaintiff and members of the Class, including a duty of loyalty, a duty of candor, a duty of fair dealing, a duty to avoid self-dealing, an affirmative duty to furnish information and disclose all material facts involving the beneficiaries' fiduciary accounts, and a duty to administer such accounts solely in the beneficiaries' interests, rather than in the Bank's own interests". |
| "whether, as a corporate fiduciary which held itself out as an expert in investments and financial management, First Union was required to exercise a higher degree of care in managing the trusts than would have been required of the average person". | "whether, as corporate fiduciaries which held themselves out as experts in investments and financial management, the Bank was required to exercise a higher degree of care in managing fiduciary accounts than would have been required of the average person". |
| "whether First Union's conduct constituted self-dealing". | "whether the Bank's conduct constituted self-dealing . . . ." |

Plaintiff succinctly explains in his Opposition how his claims, like the claims in <u>Parsky</u>, are predicated on the alleged self-dealing and breach of fiduciary duty arising from the closure of common trust funds, and the conversion to and management of Evergreen mutual funds:

> Plaintiff does claim, however, that, *inter alia*, the Bank breached its duty to him
> and members of the Class by purchasing for their fiduciary accounts shares in the
> ***Bank's proprietary and captive Evergreen Funds*** while failing to give
> consideration to alternative, less expensive, better managed, alternative non-
> proprietary mutual funds or even to CTF's, those in-house mutual funds which are
> charged no fees and expenses.  Plaintiff also asserts other claims arising from the
> Bank's investment of assets in its fiduciary accounts ***in shares of the Evergreen
> Funds***, by charging unjustified and excessive "sweep" fees and additional
> duplicative, investment advisory and administrative fees and by taking and using
> for the Bank's own benefit the "float" belonging to members of the Class.
> (Complaint, ¶ 85).

Opposition, pp. 9-10 (emphasis added).  Simply stated, as quoted in the chart above, the

plaintiffs in Parsky claimed that the exchange of trust investments in common trust funds to

investments in the Bank's affiliated mutual funds constituted self-dealing and a breach of

fiduciary duty.  Plaintiff brings the very same claim here.

Because this case and Parsky share the same factual predicate, Plaintiff released all

claims related to the conversion and management of Evergreen mutual funds and that fall within

the scope of the release in the Parksy Stipulation of Settlement.  The release, which Plaintiff

concedes is very broad in scope, releases claims of

> every nature and description whatsoever, ***known or unknown, suspected or
> unsuspected*** . . . which the Releasors, or any of them, ***had, now has or may
> hereafter have*** . . . ***arising from or in connection with or in any way related,
> directly or indirectly***, to any of the acts, facts, matters, transactions, events,
> occurrences, disclosures, statements, representations, omissions, or failures to act
> set forth, alleged, referred to or otherwise ***embraced in this case*** . . . .

Parsky Stipulation of Settlement, ¶ 22 (attached as Exhibit D to Defendants' Motion).  Given the

broad release language, Plaintiff released his claims that the investment of trust assets in

affiliated mutual funds constitutes self-dealing and a breach of fiduciary duty regardless of

whether Plaintiff knew about the claims or the facts giving rise to the claims occurred after

Parsky.  See Monaco, 34 Fed. Appx. at 45 (because of broad release language in class action

settlement, plaintiff released all claims relating to a leasing agreement, even claims that were not

and could not have been asserted in the class action); Ross v. Metropolitan Life Ins. Co., 411

F.Supp. 2d 571, 576-577 (W.D. Pa. 2006) (by entering into class action settlement with a broad

release, plaintiff released all claims relating to insurance policies, even claims that were not raised in the class action); Chartener v. Provident Mut. Life. Ins. Co., No. 02-8045, 2004 U.S. Dist. LEXIS 8954, at *13-14 (E.D. Pa. May 14, 2004) (plaintiff entered into a broad release in a state court class action settlement and was therefore precluded from raising similar claims in federal court).

Contrary to Plaintiff's assertions, the Court of Appeals has recognized the importance of allowing parties to settle class action lawsuits and for those settlements to bar all claims arising out of the facts of those settlements.  The Court of Appeals has noted that while it might seem "anomalous" that a court without jurisdiction over certain claims has the power to release those claims as part of a class action settlement, the rule exists "because it serves the important policy interest of judicial economy by permitting parties to enter into comprehensive settlements that prevent relitigation of settled questions at the core of a class action."  In re Prudential, 261 F.3d at 366 (internal quotations and citations omitted).  This rule is in place to prevent plaintiffs from employing multiple theories to assert multiple lawsuits against the same defendant for the same conduct.  That is exactly what Plaintiff is attempting to do in this case.  The Court should not let Plaintiff "double-dip" by asserting claims against the Bank and other Defendants for the same conduct—investment in affiliated Evergreen mutual funds—that served as the basis for the Parsky settlement.

### 2.      *Plaintiff cannot collaterally attack the Parsky settlement.*

Once a settlement agreement has been approved in a final order and is no longer appealable, the courts cannot entertain "a challenge to the propriety of the settlement agreement and its terms."  In re Orthopedic Bone Screw Prod. Liab. Litig., 350 F.3d 360, 365 (3d Cir. 2003).  Further, after a court "has decided that the due process protections did occur for a particular class member or group of class members, the issue may not be relitigated."  In re Diet Drugs Prod. Liab. Litig., 431 F.3d 141, 146 (3d Cir. 2005), cert. dismissed, 126 S. Ct. 1908 (2006).  As it relates to this case, the Parsky court clearly found that Plaintiff was a class member that was party to the Parsky settlement and that Plaintiff and the other class members received

the best notice practicable under the circumstances of the settlement and that the notice was in compliance with due process.  See Parsky Final Order and Judgment Approving Settlement, ¶ 2; Parsky Stipulation of Settlement, ¶¶ I, J (attached as Exhibits C and D, respectively, to Defendants' Motion).  Plaintiff cannot now collaterally attack the Parsky court's findings.  No discovery on this issue is necessary or appropriate.[2]

Plaintiff has offered no basis for the Court to find that he did not receive notice.  The only support for Plaintiff's argument that he did not receive notice of the Parsky settlement is the allegation in the Amended Complaint that "upon information and belief" he did not receive notice.  See Amended Complaint, ¶¶ 31, 40.  Not only is Plaintiff's self-serving allegation contrary to the findings of the Parsky court, but it is nothing more than a bald assertion or a legal conclusion.  Nowhere in the Amended Complaint does Plaintiff allege any facts to support his allegation that "upon information and belief" he did not receive notice.  Plaintiff admittedly received Parsky settlement proceeds from the Bank.  See id. at ¶31.  Assuming he had no notice and did not intend to settle Parsky, he should have contacted the Bank when the settlement proceeds appeared in his bank account; yet, Plaintiff alleges no facts to show that he questioned receiving the money.  The Court should not accept Plaintiff's bald assertion as true when ruling on Defendants' motion to dismiss.  See Zeidler v. City of Philadelphia, No. 05-6002, 2006 U.S. Dist. LEXIS 1879194, at *7-8 (E.D. Pa. July 5, 2006) ("Courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint [when ruling on a motion to dismiss] and legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness.")  Moreover, actual notice is not necessary to enforce the Parsky settlement and release against Plaintiff.  All that is required to enforce the settlement and release

---

2       Plaintiff cites no controlling authority holding that this Court can reject the terms of the Parsky settlement.  The only authority Plaintiff cites, Wilkes v. Phoenix Home Life Mut. Ins., 902 A.3d 366 (Pa. 2006), is distinguishable.  In Wilkes, the court reviewed the notice of settlement given to class members of an out-of-state class action settlement for the limited purpose of determining whether the notice properly alerted the plaintiffs that they were inappropriately included in the class.  See Wilkes, 902 A.3d at 382-383.

is that Plaintiff received the "best notice practicable under the circumstances" of the class settlement, which, as set forth above, the <u>Parsky</u> court clearly found he did.  <u>See</u> <u>Montgomery</u>, 2005 U.S. Dist. LEXIS 3249, at *17-20 (because the plaintiff received the best notice practicable of a prior class action settlement, her "assertion that she did not receive actual notice, even if true" was not sufficient to prevent the settlement from barring her claims).

Plaintiff likewise offers no support for his contention that the release in the <u>Parsky</u> was improper.  Plaintiff fails to quote any specific language in the release that is ambiguous or insufficient.  The Court should reject Plaintiff's bald and conclusory assertions.

This conclusion makes imminent sense.  A company which pays millions of dollars in settlement to avoid continued litigation should not be embroiled in the same litigation and discovery based upon a bald, false allegation that a plaintiff who was ***admittedly paid*** in connection with the prior settlement allegedly did not receive notice of the prior settlement. Certainly, Plaintiff's hesitant claim that "upon information and belief" he did not receive notice is even more suspect in these circumstances.  Plaintiff should not benefit from his bald assertion by getting a second bite at the same apple.

### 3. *Plaintiff's securities law claims were released in <u>Parsky</u>.*

Plaintiff additionally argues that he could not have released his securities claims under 15 U.S.C. §§ 77n and 78cc(a).  Section 77n (which applies to the Securities Act) and 78cc (which applies to the Exchanges Act) contain similar provisions that create some restrictions on parties' ability to release federal securities claims.  <u>See</u> 15 U.S.C. §§ 77n, 78cc(a).  Those statutes, however, are not as broad as Plaintiff contends and do not invalidate the release in the <u>Parsky</u> Stipulation of Settlement as it relates to Plaintiff's securities claims.

Sections 77n and 78cc(a) only invalidate settlement releases between parties that attempt to circumvent compliance with federal law with anticipatory waivers of violations of federal law. <u>See</u> <u>Lancer Offshore, Inc. v. Dominion Income Mgmt. Corp.</u>, No. 01 Civ. 4860, 2002 U.S. Dist. LEXIS 4674, at *16 (S.D. N.Y. March 20, 2002).  "Settlement of claims arising from acts which are violations of securities laws are not void as a matter of law, at least where such settlement

agreements do not *themselves* continue the precise conduct which violates the law." Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 656 (N.D. Cal. 1978) (citations omitted and emphasis in original).  Further, as Plaintiff concedes, Sections 77n and 78cc(a) have no effect on releases of mature, ripened securities claims that the releasing party knew or should have known about at the time the release was effectuated.  See Beaumont Capital Corp. v. Bear, Stearns & Co., No. 85 Civ. 4572, 1988 U.S. Dist. LEXIS 14800, at *23-24 (S.D. N.Y. Dec. 1, 1988); Lancer Offshore, Inc., No. 01 Civ. 4860, 2002 U.S. Dist. LEXIS 4674, at *16-17.  The releasing party has a duty of reasonable inquiry into securities claims that he may have had at the time of signing the release and failure to make a reasonable inquiry will result in a release of those claims.  See Moseman v. Van Leer, 263 F.3d 129, 133-134 (4th Cir. 2001); Beaumont Capital Corp., 1988 U.S. Dist. LEXIS 14800, at *24.

Sections 77n and 78cc(a) have no application in this case.  Plaintiff has not and cannot point to anything in the release in the Parsky Stipulation of Settlement that excuses the Bank from complying with securities law or that can be construed as an anticipatory waiver of compliance with securities law.  See Korn v. Franchard Corp., 388 F. Supp. 1326, 1329-1330 (S.D. N.Y. 1975) (release not invalid under Section 78cc(a) because it did not authorize a continuing violation of federal law).  The release was nothing more than consideration for the resolution of disputed claims in a court approved settlement in which all parties were represented by counsel and knowingly and voluntarily entered into the release.  See Petro-Ventures, Inc. v. Takessian, 967 F.2d 1337, 1342-1343 (9th Cir. 1992) (release not invalid under Section 78cc(a) when the language was unambiguous and the parties knowingly and voluntarily entered into the settlement).

Further, the Parsky settlement only released ripe claims that Plaintiff knew or should have known about.  The Bank converted trust investments in common trust funds into shares of Evergreen mutual funds beginning in 1998.  See Amended Complaint, ¶ 28.  The Parsky settlement was not final until October 24, 2003.  See Parsky Final Order and Judgment Approving Settlement, p. 6 (attached as Exhibit C to Defendants' Motion).  Any federal

securities claims that Plaintiff now contends he possesses would have ripened during that 5 year time period between 1998 and 2003 and Plaintiff knew or should have known about those alleged claims.[3]  Plaintiff had a duty to investigate the existence of any such claims prior to the final settlement in Parsky, but he has alleged no facts to show such an investigation.  Having failed to investigate and discover the existence of any alleged securities claims during that time, Plaintiff cannot now rely on Sections 77n and 78cc(a) to invalidate the release.  See Moseman, 263 F.3d at 133-134 (finding that plaintiffs released their federal securities claims, notwithstanding Sections 77n and 78cc(a), by failing to make a reasonable investigation before signing a release).

Finally, it is important to note that the Court of Appeals has found that a plaintiff can release federal securities claims in a class action settlement, even when those claims were not asserted in the class action.  In Grimes v. Vitalink Com. Corp., 17 F.3d 1553, 1554-1556 (3d Cir. 1994), the plaintiffs were class members in a non-opt-out class action settlement in state court that included a general release.  Some of the plaintiffs objected to the class action settlement and, when those objections were overruled, the plaintiffs filed a class action lawsuit in Pennsylvania federal court alleging securities fraud.  See id. at 1556.  Even though the state court did not have subject matter jurisdiction over the securities claims, the Court of Appeals found the securities claims had been released because the facts underlying the class action settlement were also underlying the securities claims (i.e., the cases had the same factual predicate).  See id. at 1561-1562.  Here too, as explained above, the facts underlying the claims in this case and Parsky are the same and, therefore, Plaintiff released his securities claims as part of the Parsky settlement.

---

[3]       Plaintiff appears to argue that additional violations of the same type released in Parsky occurred after Parsky.  That is of no consequence.  The alleged violations had matured and were ripe before the Parsky settlement; thus, additional violations of the same type that were already released cannot be asserted.  See Valerio, 80 F.R.D. at 656 (holding that the plaintiffs could not assert alleged additional violations of released claims because the plaintiff knew of the basis of the alleged violations at the time of entering into the release).

**4.     There is no legal support for Plaintiff's assertion that the <u>Parsky</u> release is ineffective due to the Bank's alleged non-disclosure of facts and breach of fiduciary duty.**

As an initial matter, Defendants do not concede, as Plaintiff contends, that they stood in a fiduciary relationship with Plaintiff, the putative class in this case, or the members of the <u>Parsky</u> class.  Setting Plaintiff's misstatement aside, his assertion that the release in <u>Parsky</u> is somehow ineffective due to the Bank's alleged non-disclosure of material facts is wholly without merit.  None of the authority Plaintiff cites supports his argument.  The two cases identified, <u>Greenan v. Ernst</u> and <u>Wolgin v. Smith</u>, both involved partnership dissolutions in which one of the partners claimed that the other engaged in fraud by failing to disclose certain facts during the partnership dissolution.  <u>See</u> <u>Greenan v. Ernst</u>, 393 Pa. 321, 322 (Pa. 1958); <u>Wolgin v. Smith</u>, No. 94-7471, 1996 U.S. Dist. LEXIS 8563, at *3-5 (E.D. Pa. June 21, 1996).  Neither case had anything to do with a settlement or a subsequent attempt by a plaintiff to assert released claim.  In fact, the <u>Wolgin</u> court specifically rejected the argument that the case was similar to a settlement. <u>Wolgin</u>, 1996 U.S. Dist. LEXIS 8563, at *11.

Plaintiff's citations to the Restatement (Second) of Trusts are equally inapplicable.  Plaintiff makes bold statements about the effect of a beneficiary's lack of knowledge when making a release and a trustee's obligation when pleading consent and ratification as defenses; however, the Restatement does not support Plaintiff's argument.  The Restatement Section and Comment Plaintiff cites identify those circumstances when a beneficiary may hold a trustee liable for **breach of trust** in connection with an act or omission by the trustee.  <u>See</u> Restatement (Second) of Trusts § 216 and comment k (1959).  They have nothing to do with settlement releases or alleged fraud in connection with a settlement release.

In any event, Plaintiff has not and cannot allege that the Bank defrauded him when he entered into the <u>Parsky</u> settlement.  Frankly, Plaintiff's argument demonstrates either a complete misunderstanding of the law or is simply an attempt to muddy the waters to avoid dismissal.  In either case, the argument is without merit.  The Court approved the <u>Parsky</u> settlement.  The fact that the Bank served as trustee to trust accounts for the settling plaintiffs cannot be a basis to try

to invalidate and collaterally attack a court approved settlement, or no defendant which had a fiduciary relationship with settling plaintiffs could ever be sure that a settlement would be upheld.

**B.     Plaintiff Has Failed to State a Claim for RICO in Count I.**

> **1.     *Plaintiff cannot avoid dismissal by attempting to re-characterize his RICO predicate acts from securities law claims to breach of fiduciary duty.***

Plaintiff cannot dispute that the Private Securities Litigation Reform Act's amendment to RICO (the "RICO amendment") "eliminated any conduct actionable as fraud in the purchase or sale of securities as a predicate act for a private cause of action under RICO." Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc., 189 F.3d 321, 327 (3d. Cir. 1999) (internal quotations and citations omitted).  Instead, to try to overcome this clear legal mandate, Plaintiff attempts to recast the RICO predicate acts underlying his claim from securities fraud to breach of fiduciary duty.  Plaintiff's own allegations in his Amended Complaint undermine his argument.

In Count II, Plaintiff's Securities Act claim, he alleges that Defendants disseminated various prospectuses that made numerous misrepresentations and omissions regarding Evergreen mutual funds.  See Amended Complaint, ¶¶ 120-128.  In Count III, Plaintiff's Exchange Act claim, he asserts that Defendants disseminated false and misleading prospectuses and other documents relating to the purchase and sale of Evergreen mutual funds.  See id. at ¶ 135. Plaintiff uses the ***same*** allegations as predicate acts for his RICO claim.  Plaintiff alleges that Defendants engaged in mail and wire fraud, as predicate acts for RICO, in order to disseminate false and misleading statements about Evergreen mutual funds.  See id. at ¶¶ 105, 108-110. Plaintiff even ***references and incorporates*** into his RICO claim allegations from his Securities Act claims as predicate acts.  See id. at ¶¶ 108, 110.  Plaintiff's RICO claim cannot stand when the same allegations that support the alleged RICO predicate acts also support his securities claims.  See Ravenna v. Integrated Food Techs. Corp., No. 99-524, 1999 U.S. Dist. LEXIS

14681, at *4-5 (E.D. Pa. Sept. 15, 1999) (dismissing the plaintiff's RICO claim pursuant to the RICO amendment when he also asserted securities fraud claims based on the same conduct).

Plaintiff attempts to split hairs by arguing that some of the alleged false and misleading statements were a breach of fiduciary duty while others were securities fraud or, as Plaintiff has put it, he "has alleged both conduct actionable as securities fraud and conduct that is not." See Opposition, p. 22. However, the Court of Appeals has rejected such "surgical presentation" of claims in order to ferret out certain facts to support a RICO claim and other facts to support securities fraud in order to avoid dismissal. See Bald Eagle, 189 F.3d at 330; see also Burton v. Ken-Crest Services, Inc., 127 F. Supp.2d 673, 677 (E.D. Pa. 2001) ("Plaintiff cannot magically revive his claim by picking out discreet details of his allegations and then claiming that they are not actionable securities fraud."). The Court must look at the entirety of the conduct alleged and dismiss RICO claims where the alleged conduct amounts to securities fraud, even if its totality or constituent parts can also be characterized as other defined predicate acts. See Bald Eagle, 189 F.3d at 330.

Additionally, Plaintiff is mistaken when he contends that he can avoid dismissal under the RICO amendment because he pled his RICO and securities claims in the alternative under Federal Civil Rule 8(e). See Opposition, p. 22. The RICO amendment prohibits a party from basing a RICO claim "upon any conduct that would have been actionable as fraud in the purchase or sale of securities[.]" 18 U.S.C. § 1964(c). Courts routinely dismiss RICO claims based on allegations that could give rise to securities fraud if *any plaintiff* could have brought a securities claim based on the conduct alleged in a complaint, even when the plaintiff at bar could not assert the securities claim. Thus, in this case, even if Plaintiff had not alleged securities claims, his RICO claim would still be appropriately dismissed because it is based on conduct that "would have been" actionable securities claims. See, e.g., Gatz v. Ponsoldt, 297 F. Supp. 2d 719, 731 (D. Del. 2003) ("Whether plaintiffs were purchasers or sellers of securities would only be relevant to the inquiry of their standing to bring a securities fraud claim, whereas the PSLRA's exclusion of securities fraud as a RICO predicate act applies regardless of whether a

particular plaintiff has standing to bring a civil action…."); In re Ikon Office Solutions, Inc. Sec. Litig., 86 F. Supp. 2d 481, 485 (E.D. Pa. 2000) (dismissing RICO claim when the facts alleged had given rise elsewhere to shareholders' suits).

### 2.   *Having failed to plead a separate enterprise, Plaintiff's RICO claim should be dismissed.*

Plaintiff offers no argument in response to Defendants' assertion that the Amended Complaint fails to plead a RICO "enterprise" separate and apart from the "persons" acting through the enterprise.  Plaintiff instead regurgitates the allegations in the Amended Complaint and contends that they are sufficient at this juncture in the case.  See Opposition, pp. 27-28. Plaintiff is wrong.

Under RICO, a plaintiff must allege a "person" and "enterprise" distinct from one another.  See Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001).  "[L]iability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs."  See Reves v. Ernst & Young, 507 U.S. 170, 185 (1993) (emphasis in original).  The plaintiff must allege facts showing that the defendant "person" acted through the separate and distinct "enterprise."  See Jaguar Cars, Inc. v. Royal Oak Motors Car Co., Inc., 46 F.3d 258, 268 (3d Cir. 1995).

Plaintiff has not met this pleading in requirement.  The Amended Complaint alleges the legal conclusions that Defendants Wachovia Corporation and the Bank are "persons" under RICO, that an "enterprise" exists, and that the "enterprise" is separate and distinct from the "persons."  See Amended Complaint, ¶¶ 101-103.  But Plaintiff fails to allege a single fact to support his legal conclusion that the "persons" and "enterprise" are separate and distinct.  To the contrary, all of the facts alleged in the Amended Complaint relating to Defendants' alleged pattern of racketeering—disseminating trust statements and other mailings and administering fiduciary accounts—are all the actions of the Bank.  See id. at ¶¶ 104, 108-109.  Dismissal is therefore warranted because Plaintiff has alleged facts to show that the Bank has engaged in its own affairs, but not to show that the Bank or any of the other Defendants engaged in the affairs

of, and acted through, a separate and distinct enterprise.  <u>See</u> <u>Richmond v. Nationwide Cassel,</u> <u>L.P.</u>, 52 F.3d 640, 647 (7th Cir. 1995) (dismissing RICO claim when the factual allegations in the complaint related to only two of the defendants and there was no showing in the complaint that the other members of the alleged enterprise "participated in the fraud" or that the two defendants "conducted the affairs of either of the alleged enterprises (rather than their own affairs) through a pattern of racketeering[.]"); <u>Olick v. Dippel</u>, No. 93-1495, 1993 U.S. Dist. LEXIS 12986, at *22-23 (E.D. Pa. Aug. 5, 1993) (dismissing RICO claim with prejudice for failing to allege an "enterprise" separate and distinct from the "persons").

### C.    Plaintiff Has Failed to State a Claim in Count II Under the Securities Act of 1933.

In his Opposition, Plaintiff relies on the most expansive reading of securities laws possible in the hope that the Court will overlook his inability to plead his claims as required under law.  Notwithstanding his liberal interpretation of the law, Plaintiff has not and cannot state a claim under the Securities Act and his claims should accordingly be dismissed.

#### 1.    *Plaintiff has failed to meet his burden of affirmatively pleading that his Sections 11 and 12 claims are timely.*

Plaintiff cannot simply ignore the Section 13 requirements for timely pleading Sections 11 and 12 claims as he has done in his Opposition.  "The one-year/three-year limitation periods of Section 13 are not alternative—that is, plaintiffs must plead and prove facts demonstrating compliance with **both** limitations periods."  <u>In re Chaus Securities Litigation</u>, 801 F.Supp. 1257, 1265 (S.D.N.Y. 1992) (emphasis added).  A plaintiff's "failure to plead facts in conformity with [Section 13] is fatal to any claim based upon either [Section 11 or 12]."  <u>Premier</u> <u>Industries, Inc. v. Delaware Valley Financial Corp.</u>, 185 F. Supp. 694 (E.D. Pa. 1960). Section 13 requires that claims must be brought "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence."  15 U.S.C. §77m.  To satisfy this requirement, the complaint must allege: (1) the time and circumstances of the discovery of the fraudulent statement; (2) the

reasons the fraudulent statement was not discovered earlier (if more than one year has lapsed); and (3) the diligent efforts the plaintiff undertook to discover the fraudulent statement. <u>Premier</u>, 185 F.Supp. at 695; <u>In re Chaus</u>, 801 F.Supp. at 1264; <u>Kramer v. Scientific Control Corp.</u>, 352 F. Supp. 1175 (E.D. Pa. 1973).

Plaintiff has offered no basis in his Opposition for the Court to find that this pleading requirement was met.  First, with respect to compliance with the one-year statute of limitations, Plaintiff baldly claims that he has "specifically alleged that at all relevant times prior to the commencement of this action he was without knowledge of the material misstatements and omissions of material fact underlying his securities claims."  <u>See</u> Opposition, p. 37; Amended Complaint, ¶¶ 113-114.  On its face, this statement fails the affirmative pleading requirements for the one-year statute of limitations because it fails to explain any of the required elements relating to the discovery of these claims, particularly how and why discovery was not made earlier.  Plaintiff claims that the challenged conduct has been occurring "since June 2, 2003", but never alleges facts showing the time and circumstances of the discovery of the fraudulent statement, the reasons why it was not discovered earlier (where, as here, more than one year has lapsed since the purported fraudulent conduct occurred), and the diligent efforts that Plaintiff undertook in making or seeking such discovery.[4]  Plaintiff cannot disavow any knowledge of the material misstatement prior to filing the instant action while at the same time claim that such conduct has been occurring since June 2, 2003 without some explanation as to why the Amended Complaint fails to plead facts supporting the purported 2003 discovery.  Indeed, Section 13 requires Plaintiff to plead the time and circumstances of the discovery of the fraudulent statement, the reasons why Plaintiff relies on 2003, why the conduct is alleged to not have been

---

[4]     No doubt, Plaintiff is attempting to try to "save" his untimely claims which stem from the closure of the common trust funds and investment in affiliated mutual funds occurring as early as 1998 by alleging such arbitrary dates.  To the extent Plaintiff relies on June 2, 2003, Section 13 requires Plaintiff to plead facts regarding this date and the impact of the one-year statute of limitations, particularly where the Amended Complaint was not filed until almost three years later.

discovered prior to the commencement of this action and the diligent efforts which plaintiff undertook in making or seeking such discovery.  See, e.g., Premier, 185 F.Supp. at 695.

Next, Plaintiff erroneously contends that Defendants bear the burden of asserting a "particular date by which they allege Plaintiff was aware, or should have been aware, of the wrongdoing."  See Opposition, p. 37.  It is Plaintiff's burden to plead facts to show the actual time of, and circumstances leading up to, the discovery of Defendants' alleged improper conduct. See Chaus, 801 F.Supp. at 1264.  Tellingly, Plaintiff fails to explain how the claims are timely under the one-year statute of limitations and relies only on paragraphs 113 and 114 of the Amended Complaint.  See Opposition, p. 37.  It is incumbent upon Plaintiff, not Defendants, to allege in more particular detail the circumstances surrounding the discovery of the fraud and the diligent efforts Plaintiff undertook to apprise himself of the facts, particularly where he claims that the conduct has been occurring since 2003, but he failed to file a complaint until almost three years later.  Accordingly, Plaintiff's claims under Sections 11 and 12 of the Securities Act should be dismissed for failure to conform to the pleading requirements of Section 13.

### 2. *Plaintiff has failed to plead that he purchased the challenged securities pursuant to a registration statement or initial offering.*

Despite his lengthy argument, Plaintiff fails to address the fundamental standing requirement necessary to link the challenged purchases to the challenged registration statement and initial offerings.  To have standing under Section 11, Plaintiff must demonstrate that the challenged securities were in fact acquired pursuant to a particular registration statement found to be false or misleading.  That registration statement must be part of an initial offering.  See Warden v. Crown American Realty Trust, No. Civ. A. 96-25J, 1998 WL 725946 142353 (W.D. Pa. Oct. 15, 1998).  Plaintiff, however, failed to plead that his shares were purchased pursuant to a defective registration statement or emanated from any initial offering.  While Plaintiff challenges several registration statements, his only specific references to any purchases are limited to shares of the Evergreen Core Bond Fund in September 2005, October 2005 and November 2005.  See id. at ¶ 41.  The Amended Complaint makes no other reference to any

challenged purchases of any other shares of other Evergreen mutual funds. Nowhere does the Amended Complaint allege that any of the challenged purchases were in initial offerings.

Likewise, for purposes of Section 12, only purchasers of initial offers are protected against fraud and misrepresentations related to a prospectus. Unless a plaintiff purchases his shares in the initial public offering, he cannot assert a claim. See Warden, 1998 WL 725946; Ballay v. Legg Mason Wood Walker, Inc., 925 F. 2d 682 (3d Cir. 1991). Again, Plaintiff fails to show that any of the challenged purchases emanated from any initial offers. Because Plaintiff has not pled facts to satisfy the standing requirement, his claims should be dismissed.

### 3. *Plaintiff fails to adequately plead that Defendants are subject to liability under Section 11.*

Plaintiff fails to plead which, if any, Defendant can be liable or how any Defendant falls under Section 11's five statutorily defined categories of persons subject to liability under this provision. In his Opposition, Plaintiff concedes that indeed he ***cannot*** plead or otherwise elucidate the specific role of any Defendant with respect to Section 11 liability because he requests "an opportunity to conduct discovery" regarding the roles of each named Defendant. See Opposition, p. 38.

Further, the Amended Complaint conflates the various corporate Defendants as "either directly or through their 'controlled persons' underwriters, issuers, offerors, [or] solicitors" in an attempt to attribute knowledge or conduct by any one Defendant to all the other Defendants. See e.g., Amended Complaint, ¶¶ 116, 129, 132. But Plaintiff fails to offer any facts in support of such conclusory allegations other than a purported parent-subsidiary relationship. See Opposition, p. 39. That assertion is flawed and fails to satisfy the pleading requirement that any Defendant is an enumerated party subject to liability under Section 11. See Azzolini v. Corts Trust II for Provident Financial Trust I, No. 1:03-cv-1003, 2005 WL 2253971 (E.D. Tenn. Sept. 16, 2005) (dismissing Section 11 claims where plaintiff failed to allege sufficient facts and relied on parent-subsidiary relationship to show that defendant was an issuer subject to liability).

Plaintiff's cited authority is inapposite.  Plaintiff relies heavily on cases that do not even involve the interpretation of "underwriters" or any of the other statutorily enumerated categories in the context of a Section 11 claim.  Rather, Plaintiff's cases involve various interpretations of the exemption provision of Section 4(1) relating to the sale of unregistered securities.

### 4.      *Plaintiff has failed to plead the fundamental element of damages.*

Plaintiff devotes a mere four sentences responding to Defendants' argument that his Sections 11 and 12 claims should be dismissed for failure to plead damages adequately.  Plaintiff cannot justify his failure to plead damages by relying on the conclusory allegation in the Amended Complaint that "the Fund shares were sold at a loss."  See Opposition, p. 42. Plaintiff's assertion that Defendants are "ignoring" the allegations relating to Plaintiff's damages is without merit when the Amended Complaint makes no such allegations.  Where, as here, it is apparent from the face of the Amended Complaint that Plaintiff has not properly alleged compensable damages under the Securities Act, dismissal is proper.  See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 272 F. Supp. 2d 243, 246, 253-55 (S.D.N.Y. 2003) (dismissing Sections 11 and 12(a)(2) claims in part where it was apparent from face of complaint that plaintiff could not recover damages).

The court in In re Salomon Smith Barney Mutual Fund Fees Litigation, 441 F.Supp. 2d 579 (S.D.N.Y. 2006), recently addressed allegations similar to the ones in this case and held that the plaintiffs failed to plead damages sufficiently with respect to Sections 11 and 12 claims.  In that case, the plaintiffs alleged that the defendants "improperly directed" them into affiliated mutual funds that provided lower returns, charged higher expenses and "steered" them away from better performing mutual funds.  See id. at 584.  Once the mutual funds were sold, the defendant allegedly extracted improper fees from the plaintiffs.  See id.  The plaintiffs also contended that various affiliates of the defendant "reaped lucrative fees for managing and advising the [affiliated funds] … and defendants had an incentive to increase collective investments in the [affiliated funds] as much as possible."  Id.

In analyzing and rejecting the plaintiffs' complaint, the Court noted that the plaintiffs did not allege how they were purportedly damaged or lost money on the challenged investments. See id. at 590-91.  The plaintiffs failed to illustrate the causal link between the alleged misconduct and the economic harm suffered.  Moreover, with respect to any damage claims by the plaintiffs based on the allegation that they "forewent better investment opportunities by virtue of [d]efendants' actions," the Court reaffirmed that " a shareholder cannot recover for 'damages' based on hypothetical investments he did not make." Id. at 589 (citations omitted).

Here, Plaintiff has failed to even allege what loss was suffered let alone any causal link between the challenged conduct and any harm.  Plaintiff offers only that he was damaged in an "amount which cannot presently be determined." See Amended Complaint, ¶ 133.  Moreover, Plaintiff attempts to rely on the conclusory allegation that he suffered a "loss" without more.  See id. at ¶ 41.  In essence, Plaintiff is trying to attribute some unknown loss or damage to the purported violations of Sections 11 and 12.  Despite pleading numerous purported "causes," many of which echo those asserted unsuccessfully by the plaintiffs in Salomon Smith Barney, Plaintiff has failed to adequately plead facts creating an inference regarding the "effect" of the conduct – how he was damaged and why such damage is attributable to the challenged conduct.  Plaintiff's silence with respect to damages speaks volumes and relying on the Amended Complaint's subliminal pleading of such a fundamental element of his Securities Act claims is telling.  Plaintiff's claims should be dismissed.

**D.      Plaintiff's Exchange Act Claim in Count III Fails as a Matter of Law.**

**1.      _Plaintiff has failed to meet Rule 10b-5's pleading requirements._**

Plaintiff begins his Opposition by broadly asserting that the Amended Complaint satisfies Rule 10b's pleading requirements.  But for this overarching legal conclusion, Plaintiff actually provides no substance as to how the facts alleged in the Amended Complaint satisfy those requirements.  Instead, Plaintiff cites to RICO and pre-Reform Act authority that, according to Plaintiff, permit "flexibility" in the application of fraud's pleading standards.  To the contrary,

Plaintiff's recitation of legal authority disregards the fact that the Court of Appeals has expressly stated that in Section 10b cases, the Reform Act's particularity requirement should be "rigorously," not flexibly, applied.  See GSC Partners CDO Fund v. Washington, 368 F.3d 228, 236 (3d Cir. 2004).  Under the Reform Act, all averments of fraud, including malice, intent, knowledge and other conditions of the mind must be pled with particularity.  See id.

In this case, rather than set forth the requisite facts with clarity and particularity, Plaintiff's Amended Complaint makes conflicting allegations that fail any particularity pleading standard.  For example, to avoid statute of limitations issues, Plaintiff asserts that his Section 10b claim is "not predicated upon the 1998 conversion of investments in common trust funds into Evergreen Funds, but rather upon purchases and sales of Evergreen Funds since June 2, 2003." Opposition, p. 35.  However, when identifying the course of conduct and/or scheme that allegedly makes up his Section 10b claim, Plaintiff cites to Amended Complaint paragraphs that address only the 1998 conversion.  See id. at 45 (citing Amended Complaint, ¶¶ 28-29). Similarly, when attempting to identify purchases made in reliance upon alleged omissions and/or misrepresentations, Plaintiff points to purchases made in 2005 (not 2003).  See Opposition, p. 46 (citing Amended Complaint, ¶ 41).  When the inconsistencies are separated from the realities and the Amended Complaint is examined and read for what it really avers, it appears that Plaintiff attempts to plead a Section 10b claim based upon a scheme from 1998, that resulted in misrepresentations and/or omissions that occurred in 2003, upon which a beneficiary who did not have any control over the management of his trust relied upon in connection with purchases that occurred in 2005.  As is thoroughly set forth below, such leaps in logic and factual averments fail, as a matter of law, to set forth an actionable Section 10b claim.

## 2. *Plaintiff's Opposition confirms that he avers no material misrepresentations or omissions actionable under Section 10b.*

Plaintiff's difficulties in asserting a Section 10b claim begin with the fact that he bases his claim on allegations of corporate mismanagement, not material misrepresentations or omissions.  Corporate mismanagement is not material under Section 10b and, therefore, not

actionable.  Section 10(b) and Rule 10b-5 were not intended to bring within their ambit simple corporate mismanagement or every imaginable breach of fiduciary duty in connection with a securities transaction.  "For a misrepresentation to be actionable [under Section 10b] it must be material.  A company's failure to disclose its corporate mismanagement or breaches of fiduciary duty has been held not to be a material misrepresentation." Gannon v. Continental Ins. Co., 920 F.Supp. 566, 579 (D.N.J. 1996); Santa Fe Industries, Inc. v. Green, 430 U.S. 462, 477 (1977) ("we do not think [that Congress] would have chosen this 'term of art'[manipulation] if it had meant to bring within the scope of s10(b) instances of corporate mismanagement…in which the essence of the complaint is that shareholders were treated unfairly by a fiduciary."); Craftmatic Securities Litigation v. Kraftsow, 890 F.2d 628, 639 (3d Cir. 1989).

   In opposition to dismissal, Plaintiff points to Amended Complaint paragraph 137 as setting forth the "materiality" of the facts alleged in the Amended Complaint. See Opposition, p. 47.  According to Paragraph 137, Plaintiff alleges "that Defendants failed to disclose the true facts regarding how the Evergreen Funds were operated, including inter alia, the true facts regarding how the vendors of investment advisory and other services were selected and the existence of excessive investment advisory fees and other expenses." See Opposition, p. 47.  In other words, Plaintiff's Section 10b claim is based on the operation, selection and payment of advisors for a mutual fund—corporate mismanagement—not fraud affecting the price of a security.  Therefore, even accepting all of Plaintiffs allegations as true, Plaintiff's Section 10b claims are predicated on mismanagement, and not fraud, and the alleged omissions and/or misrepresentations are not material for Section 10b purposes. See Forkin v. Rooney Pace, Inc., 804 F.2d 1047, 1050 (8th Cir. 1986) ("The reasoning behind limiting section 10(b) and Rule 10b-5 to instances of actual fraud is clear.  If they were not so limited, every instance of broker misconduct would give rise to a cause of action under the anti-fraud provisions of the federal securities laws.  Indeed, violation of any law by anyone connected with a securities transaction would give rise to a section 10(b) cause of action.").

### 3.     *Plaintiff ignores the fact that each Defendant, other than the Bank, lacks a duty to disclose.*

Plaintiff's Section 10b allegations fail to state a claim for the additional reason that he has failed to allege that any Defendant, other than the Bank, had a duty to disclose the alleged omissions and or misrepresentations.  As the Supreme Court has explained, "[s]ilence, absent a duty to disclose, is not misleading under Rule 10b-5."  <u>Basic, Inc. v. Levinson</u>, 485 U.S. 224, 239 n. 17 (1988); <u>Oran v. Stafford</u>, 226 F.3d 275, 285-286 (3d Cir. 2000).  In this case, Plaintiff's Amended Complaint attempts to avoid Section 10b's pleading requirements by imputing the Bank's fiduciary duty to all of the other Defendants.  <u>See</u> Amended Complaint, ¶ 137.  However, such "group pleading" is insufficient to satisfy the particularity requirements of the Reform Act, and the Supreme Court has rejected aiding and abetting liability under Section 10b.  <u>See</u> <u>Central Bank of Denver N.A. v. First Interstate Bank</u>, 511 U.S. 164, 177 (1994).  Because he has no response to this fatal flaw, Plaintiff simply ignores the Supreme Court's mandate, stating nothing in defense to the deficiency.  As such, Plaintiff's 10b claim against all of the Defendants other than the Bank, should be dismissed for lack of materiality. Supreme Court precedent mandates this result.

### 4.     *The Amended Complaint fails to adequately allege scienter.*

Plaintiff begins his opposition in support of his scienter allegations by reiterating his earlier misrepresentation of the law, claiming that the pleading requirements for scienter should be applied with some flexibility.  <u>See</u> Opposition, p. 47.  As explained above, the Court of Appeals requires that the Reform Act's pleading standards be "rigorously" applied.  <u>See</u> <u>GSC Partners CDO Fund</u>, 368 F.3d at 236.  Such a rigorous approach is required by the express language of the Reform Act, mandating that a plaintiff must, "with respect to <u>each</u> act or omission . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2) (emphasis added).  Plaintiff's allegations fail to set forth ***particular*** facts, with respect to ***each*** act or omission, giving rise to an inference that ***any*** defendant acted with the required state of mind.

For example, Plaintiff purports to establish motive and opportunity to commit fraud by alleging that Defendants had a "plan to unfairly and fraudulently extract unjust fees and other income from plaintiff."  See Amended Complaint, ¶ 135.  However, such allegations are too general to rise to the level of motive and opportunity necessary to state a Section 10b claim.  To adequately establish motive and opportunity, the Court of Appeals requires that Plaintiff assert "a concrete and personal benefit to the individual defendants resulting from this fraud."  GSC Partners CDO Fund, 368 F.3d at 237 (quoting Kalnit v. Eichler, 264 F.3d 131, 139 (2d Cir. 2001)).  Charging fees and obtaining income from customers is the essence of every corporate motive held by those in business—to make money.  Such general allegations are insufficient to establish scienter.  See GSC Partners CDO Fund, 368 F.3d at 238 (holding that underwriter defendant's desire to generate fees was too generic to give rise to inference of scienter); Fidel v. Farley, 392 F.3d 220, 232-33 (6th Cir. 2004) (rejecting scienter allegation based on outside auditor's motive to keep client because auditor "would always be motivated to maintain positive relations with a current client, and there is no indication that its motive to retain Fruit of the Loom as a client was any different than its general motive to retain business").

Likewise, the facts alleged in the Amended Complaint are also far too general to establish scienter through allegations of conscious misbehavior or recklessness.  The standard for conscious misbehavior or recklessness holds that "it is not enough for plaintiffs to merely allege that defendants 'knew' their statements were fraudulent or that defendants 'must have known' their statements were false . . . [p]laintiffs must plead allegations of scienter with particularity. They must support their allegations with the essential factual background that would accompany 'the first paragraph of any newspaper story' – that is, the 'who, what, when, where and how' of the events at issue."  GSC Partners CDO Fund, 368 F.3d at 239 (internal citations omitted). Despite this clear standard, the Amended Complaint attempts to establish misbehavior or recklessness by offering nothing more than the legal conclusion that the Defendants intentionally breached their fiduciary duty to Plaintiff.  See Amended Complaint, ¶ 137.  Such an overarching

legal conclusion falls far short of the particularity required by the Reform Act and controlling authority.

Plaintiff's allegations of conscious misbehavior or recklessness fail for the additional reason that Plaintiff does not distinguish among the Defendants.  As this Court and others have recognized, "group pleading" did not survive the Reform Act.  See In re PMA Capital Corp. Sec. Litig., No. 03-6121, 2005 U.S. Dist. LEXIS 15696, at *41 (E.D. Pa. July 27, 2005); Payne, 2006 WL 1157861; In re Bio-Technology Gen. Corp. Sec. Litig., 380 F. Supp. 2d 574, 583 (D.N.J. 2005).  The Reform Act plainly requires that Plaintiff plead a particularized factual basis that *each* Defendant is culpable, and precludes attribution of knowledge or intent from one Defendant to another.  Once again, presumably conceding that his Amended Complaint is flawed in this manner, Plaintiff simply ignores this fatal defect.  Indeed, despite the excessive length of the Amended Complaint, Plaintiff's allegations fail to establish scienter with any element of particularity.

### 5.    *Plaintiff is not entitled to a presumption of reliance.*

To set forth a cause of action under Section 10b, a plaintiff must allege, with particularity, facts substantiating the claim that the plaintiff relied on the alleged misrepresentation.  See Basic, Inc., 458 U.S. at 243.  In this case, Plaintiff attempts to avoid the burden of pleading reliance by claiming that he is entitled to one of two presumptions allowed under the law.  Neither presumption applies here.

The first presumption that Plaintiff incorrectly claims is that, because this case "involves" an omission, he is entitled to presumption of reliance set forth in Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 153-54 (1972).  See Opposition, pp. 49-51.  In fact, in Affiliated Ute, the Supreme Court held that in cases seeking to predicate Section 10b liability upon omissions, reliance is presumed from the materiality of the information not disclosed.  See id. What Plaintiff glosses over is the fact that no presumption arises in cases of alleged misrepresentations.  See Sharp, 649 F.2d at 187.  In cases such as this one involving alleged omissions and misrepresentations, the "proper approach to the problem of reliance is to analyze

the plaintiff's allegations, in light of the likely proof at trial, and determine the most reasonable placement of the burden of proof of reliance." Id. at 188; Lewis v. McGraw, 619 F.2d 192, 195 (2nd Cir. 1980) ("We therefore presume reliance only 'where it is logical' to do so.").[5]  Because the proof at trial necessary to connect Defendants' alleged wrongful conduct to Plaintiff's alleged losses will primarily focus on alleged misrepresentations and omissions, Plaintiff is not entitled to the Affiliated Ute presumption or reliance.  See Sharp, 649 F.2d at 186.

The second presumption that Plaintiff incorrectly seeks to take advantage of is based upon the fraud-on-the-market theory.  See Opposition, p. 51.  Under that theory, a plaintiff is entitled to a presumption of reliance only if he bought securities in an efficient market, because the price of the security is assumed to have incorporated the alleged misrepresentation of the defendant.  However, where the alleged misrepresentation does not affect the price of the security, the plaintiff is not entitled to the presumption.  See Clark v. Nevis Capital Management, LLC, 2005 WL 488641, at *18 (S.D.N.Y. 2005) ("Put simply, fraud-on-the-market does not apply here because the share price of a mutual fund is not affected by alleged misrepresentations or omissions.") (internal citations omitted); In re Van Wagoner Funds, Inc., 382 F.Supp.2d 1173 (N.D. Cal. 2004) (mutual fund share price not determined by any "market" but by value of underlying assets).

In this case, the alleged misrepresentations and/or omissions have absolutely nothing to do with the value of the securities held by the funds.  Therefore, there is no way, as a matter of law, that the alleged misrepresentations and/or omissions could have affected the share price of the underlying securities held by the funds.  As such, Plaintiff is not entitled to a presumption of

---

[5]     Plaintiff alleges in the Amended Complaint that "[a]s a direct result [of]…the manipulative scheme of which the issuance and dissemination of such Evergreen Funds prospectuses, written communications to beneficiaries of the Bank's fiduciary accounts and periodic statements of account were an integral part, the Bank caused Evergreen Funds shares to be purchased for the beneficial ownership of plaintiff…all of which caused them damages in an amount which cannot presently be determined." See Amended Complaint, ¶ 139.  In other words, according to Plaintiff's allegations, the damages resulting from his Section 10b claim are a result of misrepresentations in the prospectuses, written communications and periodic statements.

reliance based upon the fraud-on-the-market theory.  Plaintiff maintains the burden to plead reliance and has not fulfilled that burden.

### 6.  *Plaintiff's alleged losses are not recoverable under Section 10b.*

Plaintiff also fails to adequately allege loss causation for the fundamental reason that the damages he seeks to recover are not compensable under Section 10b.  According to Plaintiff, "loss causation arises [in this case] from the manner in which Defendants selected and operated the Evergreen Funds."  <u>See</u> Opposition, p. 53.  In other words, Plaintiff's Amended Complaint does not complain about the price of Evergreen mutual funds, but rather the manner in which the funds were selected and operated.  Such damages, however, are not recoverable under Section 10b.  As is explained *supra*, Section 10b protects investors against manipulation of stock prices, not against fund management.  <u>See</u> <u>Basic, Inc.</u>, 485 U.S. at 230.

For example, in <u>Castillo</u>, three plaintiff-investors asserted Section 10b claims against Dean Witter for its alleged failure to disclose an incentive compensation system that promoted the sale of its proprietary funds through its retail outlets.  <u>See</u> <u>Castillo v. Dean Witter Discover & Co.</u>, 1998 WL 342050, at *4-5 (S.D.N.Y. June 25, 1998).  The system rewarded brokers for selling proprietary products with commissions higher than those paid on foreign funds.  It was undisputed that the total amount of fees was disclosed, but the plaintiffs complained about how those fees were allocated.  <u>See</u> <u>id</u>. at *3.  The court held that plaintiffs could not allege loss causation since "the allocation of fees would not affect the damages for the losses claimed by plaintiffs.  It is the total fees charged that would affect the asset value of a mutual fund and the decision to invest.  The prospectuses disclosed these amounts."  <u>Id</u>. at *5.

Similarly, in this case Plaintiff's Section 10b claim is not based upon the price of Evergreen mutual funds, but upon the resulting expenses such as fees associated with the purchase of the funds and the administration of Plaintiff's account.  <u>See</u> Amended Complaint, ¶ 80.  However, as in <u>Castillo</u>, such complaints do not set forth a causal relationship between the omissions and/or misrepresentations and an alleged loss.  The allocation of fees for the purchase of Evergreen mutual funds and/or the administration of Plaintiff's trust account had no effect on

the price of the funds, and is therefore immaterial to a Section 10b claim.  See In re PEC

Solutions, Inc. Sec. Litig., No. 03-cv-331, 2004 WL 1854202, at *11 (E.D. Va. May 25, 2004)

("to establish loss causation for a securities fraud claim, the plaintiff must allege: (1) that he or

she purchased a security at a market price that was artificially inflated due to a fraudulent

misrepresentation and (2) that the artificial inflation was actually lost due to the alleged fraud."

(citation omitted)), aff'd, 418 F.3d 379 (4th Cir. 2005); In re Morgan Stanley and Van Kampen

Mut. Fund Sec. Litig., No. 03 Civ. 8208, 2006 WL 1008138, at *9 (S.D.N.Y. April 18, 2006).

### E.   Plaintiff's Class Claims in Counts IV through VI are Preempted by SLUSA and Must Be Dismissed.

In arguing against SLUSA preemption, Plaintiff selectively cites to 17 allegations from

his 160-paragraph Amended Complaint claiming that as to those 17 allegations, no

"misrepresentation" or anything "coinciding" with the purchase or sale of a security is alleged

and thus his state law claims cannot be preempted.  Artful pleading is a proscribed practice to

avoid SLUSA preemption and courts are cautioned that the presence or absence of a key word is

not determinative of SLUSA's applicability, but rather the appropriate analysis is whether a

reasonable reading of the complaint reveals allegations generally within SLUSA's purview.  See

Rowinski v. Salomon Smith Barney, Inc., 398 F.3d 294, 304 (3d Cir. 2005).  When the

"gravamen" of the complaint involves an untrue statement or omission of a material fact, and

when that conduct coincides with a transaction involving a covered security, SLUSA mandates

dismissal.  See SEC v. Zandford, 535 U.S. 813, 819 (2002).

Here, Plaintiff goes well beyond artful pleading and requests that this Court turn a blind

eye to the core allegations of the Amended Complaint.  Plaintiff asks this Court to blatantly

ignore the numerous *explicit* allegations in the Amended Complaint alleging "false and

misleading prospectuses and other documents which concealed material facts and misrepresented

other material facts in connection with the purchase and sale of Evergreen Funds shares[.]"  See,

e.g., Amended Complaint, ¶¶ 115-128; 135-140; 145; 153.  Indeed, the allegations in the

Amended Complaint leave no doubt that the elements of SLUSA have been satisfied warranting preemption of the state law claims.

As Plaintiff argues, "this case involves material omissions." Opposition at 49. Indeed, Plaintiff's Opposition is replete with references that their allegations concerning misrepresentations and disclosures in connection with the purchases of shares of mutual funds form the crux of their claims. See Opposition, p. 11 ("The Complaint specifically alleges purchases and sales by Wachovia of various Evergreen Funds for plaintiff's trust account"); p. 16 ("Plaintiff's claims in this litigation involve . . . misrepresentations in Registration Statements surrounding the purchase and sale of Evergreen Funds shares . . . ."); p. 36 ("The Amended Complaint further asserts that . . . prospectuses misrepresented material facts and omitted other material facts, which are described in detail in the Amended Complaint."); id. ("It is clear from the face of the complaint that Plaintiff has alleged purchases and sales of Evergreen Funds."). Plaintiff's class claims based on state law are *precisely* the type of claims SLUSA is intended to preempt. See Felton v. Morgan Stanley Dean Witter & Co., 429 F. Supp.2d 684, 693 (S.D.N.Y. 2006) (holding that dismissal on SLUSA grounds appropriate where plaintiff's claim is a "securities fraud wolf dressed up in a breach of contract sheep's clothing."); In re Salomon Smith Barney Mutual Fund Fees Litigation, 2006 WL 2085979, at *18-19 (S.D.N.Y. July 26, 2006) (dismissing plaintiffs' state law breach of fiduciary claims *with prejudice* applying Dabit's broad interpretation of SLUSA's "pre-emptive" sweep where allegations "coincide" with challenged securities transaction).

In his Opposition, Plaintiff claims that Defendants "ignore the controlling Third Circuit precedent in Rowinski v. Salomon Smith Barney, Inc., 398 F.3d 294 (3d Cir. 2005)." Opposition, p. 54. To the contrary, Defendants cited the Rowinski case because it *supports* dismissal of Plaintiff's state law class claims. See Defendants' Motion, pp. 35-36 (citing Rowinski). The Court of Appeals held that preemption was warranted where "a reasonable reading of the complaint evidences allegations of 'a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security.'" Rowinski, 398 F.3d at 304

(citations omitted).  The <u>Rowinski</u> court did not have the benefit of a complaint such as Plaintiff's Amended Complaint where the complaint ***explicitly*** makes such allegations.  <u>See, e.g.</u>, Amended Complaint, ¶¶  115-128; 135-140.

Recognizing that the Amended Complaint is replete with allegations that trigger SLUSA preemption, Plaintiff argues that <u>Rowinski</u> mandates that the Court conduct its SLUSA analysis in a vacuum based on the 17 allegations Plaintiff selectively cited to in his Opposition. Plaintiff's argument fails for two simple reasons.  First, Plaintiff's Amended Complaint, as drafted, is simply inconsistent with this argument.  Plaintiff incorporates ***every*** allegation into their state law claims—not merely the 17 allegations cited in Plaintiff's Opposition.  <u>See</u> Amended Complaint, ¶¶ 140, 145, 153.  Second, in <u>Rowinski</u>, the Court of Appeals held that where a plaintiff incorporates every allegation into every count of the complaint, the SLUSA analysis compels the conclusion that each state law claim is preempted.  <u>See</u> <u>Rowinski</u>, 398 F.3d at 305.  Accordingly, Plaintiff's class claims based on state law are preempted and dismissal is warranted.  <u>See</u> <u>LaSala v. Bordier ET CIE</u>, No. 05-4520, 2006 WL 2615849 (D. N.J Sept. 11, 2006) (holding that SLUSA preempted state law claims and dismissed action because "the Third Circuit has indicated that SLUSA preempts actions, not claims.").

**F.     Plaintiff's State Law Claims are Time-Barred.**

Plaintiff raises no opposition to the fact that his trust was invested in the challenged investments more than five years before he filed his Complaint.  Plaintiff argues instead that this Court should ignore the fact that his claims are time-barred and apply some type of "accrual" period prior to the filing of the Complaint to permit him to raise otherwise time-barred claims. Not surprisingly, Plaintiff does not cite any authority to support this novel approach.  Plaintiff also half-heartedly argues that he was a minor and could not possibly have "legally cognizable 'notice'" that the Evergreen Funds were affiliated mutual funds; and, even if he did, he claims that he was unaware of some unspecified "wrongdoing" which purportedly had not yet accrued. <u>See</u> Opposition, p. 72.  However, Plaintiff pleads that he is currently 25 years old and the result

of a simple math calculation confirm that Plaintiff has not been a minor for quite some time.  <u>See</u>
Amended Complaint, ¶ 7.

> **G.     Plaintiff's State Law Claims Fail to State a Cause of Action.**

Plaintiff claims that, pursuant to Federal Civil Rule 8, he is under no obligation to
identify the contract and the provision in which he alleges in the Amended Complaint has been
breached.  <u>See</u> Opposition, p. 71.  He claims that his vague and conclusory allegation that
"explicit and implied" contracts have been breached is sufficient "at this juncture."  <u>See</u> <u>id</u>.  To
the contrary, Plaintiff's Amended Complaint in this case is legally insufficient even under the
most basic requirements of Rule 8.  Plaintiff's casual approach to pleading imposes an enormous
workload on opposing counsel and this Court to decipher such indiscriminate, vague and
conclusory allegations.  Plaintiff's Amended Complaint should be dismissed for failing to
provide Defendants with adequate notice of the claims being alleged against them.

Moreover, there are no allegations that Plaintiff had a relationship, contractual, fiduciary
or otherwise, with any Defendant other than the Bank.  The only written document which defines
the relationship Plaintiff had with the Bank is the trust instrument establishing Plaintiff's trust.
Plaintiff has not, and simply cannot, allege that the Bank breached any provision of that
"contract" by investing trust assets in affiliated mutual funds.  Accordingly, Plaintiff's breach of
contract claim must be dismissed.

With respect to Plaintiff's unjust enrichment and breach of fiduciary duty claims,
Plaintiff argues that "whether the Bank's conduct is authorized by state law is a fact question."
Plaintiffs' Opposition, p. 71.  Indeed, Plaintiff claims that Defendants have "failed to state how
the Bank has complied with applicable state law" which is a question of fact and "inappropriate
for consideration at this time."  <u>Id</u>. at 66.  Contrary to Plaintiff's argument, Defendants submit
that this is a question of law.  Indeed, the laws of the Commonwealth of Pennsylvania explicitly
permit trustees to invest the assets of trust investments in mutual funds advised or serviced by an
affiliate of the trustee.  <u>See</u> 20 Pa. C.S. § 7314.1; 20 Pa. C.S. § 7209; <u>see also</u> 20 Pa. C.S. § 7211.

Moreover, the Orphans' Court in Pennsylvania resolved this issue in <u>In re Estate of Kopf</u>, No. O.C. 71 of 2001, slip op. (Warren Cty. Orphans' Ct. Dec. 31, 2001) (attached as Exhibit I to Defendants' Motion).  In <u>Kopf</u>, the question presented was "whether the long established duty of loyalty owed by a trustee is modified . . . [where] trustees are given statutory permission to invest in affiliated mutual funds."  <u>See</u> Opinion, p. 3.  The Court held that in light of Pennsylvania law permitting a trustee to utilize affiliated mutual funds as investment vehicles in trust accounts, the bank did not breach its fiduciary duty.  <u>See id</u>. at 5.  Accordingly, Plaintiff's breach of fiduciary duty and unjust enrichment claims should be dismissed because the conduct challenged is authorized by law.

### H.   Defendants Have Not Raised Factual Issues and the Court Should Not Convert Defendants' Motion To Dismiss into a Motion For Summary Judgment.

Plaintiff's efforts to try to convert Defendants' motion to dismiss into a motion for summary judgment are nothing more than a delay tactic to avoid early dismissal so that he can try to find a viable claim in discovery or compel a settlement.  Plaintiff contends that Defendants make a number of factual assertions that the Court must disregard or the Court must convert Defendants' motion to dismiss into a motion for summary judgment.  On page 4 of his Opposition, Plaintiff provides a laundry list of Defendants' supposed factual assertions.  <u>See</u> Opposition, p. 4.  Plaintiff's contentions are inaccurate.

Plaintiff asserts in items 1 through 4 of his list, as well as other places in his Opposition, that Defendants have made factual assertions relating to Plaintiff's settlement and release of claims in <u>Parsky</u>.  However, Plaintiff's assertions ignore the fact that all of Defendants' arguments relating to <u>Parsky</u> are based solely on the allegations in the Amended Complaint and Exhibits C through G of Defendants' motion, which are court filings and public documents from the <u>Parsky</u> case.  <u>See</u> Opposition, p. 4.  Once again, there is no question that the Court can consider public records, like the court filings in <u>Parsky</u>, without converting Defendants' motion

into one for summary judgment.  See Montgomery, 2005 U.S. Dist. LEXIS at *11-12; Gloeckl, 2006 U.S. Dist. LEXIS 27865, at *7.

Items 5 though 10 on Plaintiff's list are similarly based upon allegations in the Amended Complaint.  As outlined above, Defendants' arguments that Plaintiff's claims under the Securities Act and Exchange Act are time-barred, that the Bank and Wachovia Corporation are not underwriters, that the alleged misrepresentations under the Exchange Act are not material, and that Plaintiff was on notice of his state law claims are all based on the allegations, or lack of allegations, set forth in the Amended Complaint.  Obviously the Court can and must consider the allegations in the Amended Complaint when ruling on Defendants' motion.

A Rule 12(b)(6) motion to dismiss must be converted into a motion for summary judgment only when the parties submit extraneous materials that are outside the pleadings and the Court considers those extraneous materials.  See Fed.R.Civ.P. 12(b)(6); Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992).  Except for the public records relating to the Parsky settlement, which the Court clearly may consider, Plaintiff has not pointed to a single piece of extraneous material upon which Defendants rely.  Any other alleged "factual assertions" are simply argument of counsel and interpretation of the allegations in the Amended Complaint, which are not a basis for converting a motion to dismiss into a motion for summary judgment. See Fastener Systems, Inc. v. MBNA America, 48 Fed. Appx. 418, 420 (3d Cir. 2002) ("We have found that the court may consider legal arguments presented in memorandums or briefs and arguments of counsel when deciding a Rule 12(b)(6) motion to dismiss without invoking Rule 56 summary judgment.") (internal citations omitted).

## IV.    CONCLUSION

In consideration of settlement funds that he admittedly received, Plaintiff released all of the claims that he is attempting to assert in this case in the Parsky litigation.  Plaintiff is now precluded from "double-dipping" and asserting those claims again.  Moreover, each of Plaintiff's claims is independently defective for numerous reasons, including that they are not cognizable under the cited statutes, are time-barred, and are predicated on conduct that is permitted under

state law.  For these reasons, Plaintiff has failed to state a claim upon which relief can be granted and his claims should be dismissed with prejudice.

Respectfully submitted,


   /s/ AS 955
Andrew J. Soven
PA I.D. No. 76766

REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103
(215) 851-8100

Gregory B. Jordan
PA I.D. No. 42105
Mary J. Hackett
PA I.D. No. 51215
K. Issac deVyver
PA I.D. No. 202655

REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA  15219
(412) 288-3131

Attorneys for Defendants Wachovia Bank,
N.A., Wachovia Corporation, Evergreen
Investment Services, Inc., Evergreen Investment
Management Co. LLC, and Evergreen
Distributors, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of October 2006, I caused a true and correct copy of the foregoing Defendants' Reply Brief in Support of Motion to Dismiss Plaintiff's Amended Complaint to be served upon the following counsel of record by the Court's electronic filing system:

> Richard D. Greenfield
> Greenfield & Goodman LLC
> 7426 Tour Drive
> Easton, MD  21601
> email:  whitehatrdg@earthlink.net


> Ann Miller
> Ann Miller LLC
> 834 Chestnut Street
> Suite 206
> Philadelphia, PA  19107
> Email:  am@attorneyannmiller.com


    _/s/ Andrew J. Soven_
    Andrew J. Soven