IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RALPH BROOKS, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO.  06-00955 |
| | : | |
| v. | : | |
| | : | |
| WACHOVIA BANK, N.A., et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

Giles, J.                                                                      September 13, 2007

**I.  Introduction**

Before the court are Defendants' Motion to Dismiss Plaintiff's Amended Complaint

Pursuant to Fed. R. Civ. P. 12(b)(6) and Plaintiff's Motion for Appointment as Lead Plaintiff.

Plaintiff brings suit, on behalf of himself and as representative of a putative class, against

Defendants for violations of federal and state law arising from Defendants' alleged investment of

Plaintiff's fiduciary account assets into proprietary mutual funds and the imposition of related

excessive and duplicative fees and expenses.  Plaintiff brings claims under: the Racketeer

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq. (Count I);

Sections 11, 12, and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k(a), 77l(a)(2), 77o, (Count

II); Section 10b(5) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10-b5

thereunder, 77 C.F.R. § 240.10b-5, (Count III); breach of fiduciary duty (Count IV); breach of

contract (Count V); and unjust enrichment (Count VI).

Defendants' Motion to Dismiss is herein GRANTED and Plaintiff's Motion for

Appointment as Lead Plaintiff is DENIED AS MOOT for the reasons that follow.

The court finds that all of Plaintiff's claims are precluded because they were released by

settlement of prior litigation.  Because all of Plaintiff's claims are thus precluded, the court elects

not to address the motion for dismissal as to each individual count.


## II.  General Background

**A.      Facts As Alleged In The Amended Complaint.**

In considering Defendants' motion to dismiss, the court accepts all of Plaintiff's

allegations as true and draws all reasonable inferences therefrom in his favor.  See Jenkins v.

McKeithen, 395 U.S. 411, 421 (1969).  Ralph Brooks, Jr. brings suit against Defendants

Wachovia Corporation ("Wachovia"),[1] Wachovia Bank ("the Bank"),[2] and Defendants Evergreen

Investment Management Company, LLC ("Evergreen Investment"),[3] Evergreen Distributors, Inc.

("EDI"),[4] and Evergreen Investment Services ("EIS")[5] (collectively referred to as "Evergreen")

---

[1]  Wachovia is the parent company of Evergreen Distributors, Evergreen Investment Management Company, LLC, and Evergreen Investment Services. Wachovia markets its investment products under the brand name of its subsidiary, Evergreen Investments, which is the service mark of Evergreen Investment Management Company, LLC.

[2]  The Bank is a wholly-owned subsidiary of Wachovia and the trustee of the Brooks Trust

[3]  Evergreen Investment, a wholly-owned subsidiary of Wachovia, is an asset and investment management organization serving over four million investors through a range of investment products.  Evergreen Investment is the investment adviser to the Evergreen Family of Funds.

[4]  EDI, a subsidiary of Wachovia, markets funds through financial representatives and is the principal underwriter for the Evergreen Mutual Funds.

[5]  EIS, also a subsidiary of Wachovia, is the administrator of each of the funds subject to the supervision and control of the Funds' Board of Trustees.  EIS provides Evergreen Funds with facilities, equipment, and personnel.  EIS is further entitled to annual fees from each of the Evergreen Funds.

for claims arising out of Defendants' handling of his trust.

On December 12, 1990, a trust account of $87,700 was established for Plaintiff's benefit at CoreStates Bank, N.A.  (Am. Compl. ¶ 21.)  The account encompassed the "Ralph Brooks Educational Fund" and "Ralph Brooks Medical Fund" (together the "Trust" or "Brooks Trust"). Plaintiff was the sole beneficiary of the Trust.  The Bank became the trustee of the Brooks Trust. On or about February 27, 2006, the Trust account at the Bank was terminated.  (Id.)

Plaintiff charges that the Bank secretly mandated the investment of fiduciary assets in the Evergreen Funds, its proprietary mutual funds, rather than in lower-cost, better managed unaffiliated mutual funds or alternate investment opportunities.  (Am. Compl. ¶¶ 55, 63, 70-71.) In September, October, and November 2005, Wachovia Bank allegedly purchased and sold shares of various Evergreen Funds for Plaintiff's trust account – and that of "all or practically all its fiduciary accounts" – to the exclusion of other more advantageous non-proprietary mutual funds.  (Am. Compl. ¶ 41.)

Plaintiff contends that Evergreen Funds regularly underperformed and that the above transactions resulted in long and short term capital losses to Plaintiff's account when it was liquidated in February 2006.  (Am. Compl. ¶¶ 41, 59, 75.)  Plaintiff alleges that, in breach of its fiduciary duties, Wachovia did not independently analyze and monitor fiduciary account assets, engaged in self-dealing, and violated its own Mission and Guiding Principles and Code of Conduct and Ethics  (Am. Compl. ¶¶ 53, 62-63, 64, 67, 71.)  Plaintiff claims that the Bank deliberately covered-up its Evergreen Fund mandate and issued false and misleading prospectuses, registration statements filed with the Securities and Exchange Commission ("SEC"), and other documents.  (Am. Compl. ¶¶ 74, 115, 135.)

Plaintiff also claims that Wachovia Bank charged unreasonable "sweep fees" incurred when the Bank used computer software to "sweep" fiduciary accounts of cash paid from dividends, interest, and other sources.  (Am. Compl. ¶¶ 43, 45.)  He alleges that the Bank charged "sweep fees" to compensate for the loss of revenue Wachovia previously earned from the use of "idle cash" in fiduciary accounts.  (Am. Compl. ¶¶ 43, 45.)

Additionally, Plaintiff alleges that the Bank "double dips" by charging irrevocable trust beneficiaries' accounts excessive and duplicative fees at both the mutual fund and trust levels for managing the same assets.  (Am. Compl. ¶¶ 77-81.)  Investment management/advisory fees were allegedly secretly charged to the Evergreen Funds in the form of "other expenses."  (Am. Compl. ¶ 77.)  Although these "other expenses" were disclosed in Evergreen Fund prospectuses, Plaintiff alleges that the prospectuses were not disseminated to many of the trust beneficiaries, that they were not provided to Plaintiff, and that the disclosure language was not "readily comprehensible."  (Am. Compl. ¶ 78.)

Plaintiff commenced this action on March 2, 2006, and filed an Amended Complaint on June 1, 2006.

**B.     The <u>Parsky</u> Settlement**.

In a separate and prior class action before the Philadelphia County Court of Common Pleas, <u>Robert Parsky and Ann Roantree, on behalf of themselves and all others similarly situated v. Wachovia Bank N.A. f/k/a First Union National Bank</u>, Feb. 2000 Term, No. 000771 (Phila. Cty. Ct. Comm. Pl.), the court-appointed class representatives and Defendants executed a settlement agreement and release on a class-wide basis regarding Defendants' investment of trust

monies into proprietary mutual funds (hereinafter "Parsky settlement" or "Parsky release"). Plaintiff was a class member and received his share of the settlement.

The Parsky class action arose from events beginning prior to 1998.  The Bank allegedly used assets within its control, including funds in fiduciary accounts, to fund a group of new Evergreen Funds or add assets to existing Evergreen Funds.  As a result of these alleged conversions, the Bank allegedly benefitted from money management, investment advisory, and other fees and from the investment of fiduciary assets in the Bank's proprietary mutual funds, to the detriment of the beneficiaries of its fiduciary accounts.  (Am. Compl. ¶¶ 28-30.)

The Parsky class action was filed on February 10, 2000.  Stip. of Settlement at 1, Parsky v. Wachovia Bank, Feb. 2000 Term, No. 000771 (Phila. Cty. Ct. Comm. Pl. Aug. 4, 2003).  The court-approved Parsky class action notice was sent to class members on December 7, 2001.  Stip. of Settlement at 3, Parsky, Feb. 2000 Term, No. 000771.  Following the distribution of Notices of Proposed Settlement to class members, a Stipulation of Settlement was signed on July 23, 2003 and docketed on August 4, 2003.  Final Order & J. Approving Settlement at 1-2, Parsky v. Wachovia Bank, Feb. 2000 Term, No. 000771 (Phila. Cty. Ct. Comm. Pl. Oct. 24, 2003); Stip. of Settlement at 1, Parsky, Feb. 2000 Term, No. 000771.  The court's Final Order approving the settlement agreement was entered on October 24, 2003.  Final Order & J. Approving Settlement at 1, Parsky, Feb. 2000 Term, No. 000771.  On September 1, 2004, Plaintiff's account was credited with $1,364.81 from the Parsky settlement.  (Am. Compl. ¶ 31.)

Plaintiff claims that he did not receive notice of the settlement.  Plaintiff contends that the Parsky settlement, which covered the period of December 1998 to July 1999, focused on tax liability, that its broad release language is ambiguous, and that, even if valid, the release only

covers tax-related claims.  (Am. Compl. ¶¶ 32-39.)

## C.      **Class Issues And Relief Sought**.

Plaintiff seeks class certification on behalf of a class defined as "all beneficiaries of fiduciary accounts for which the Bank was corporate fiduciary whose assets were invested by the Bank in Evergreen Funds."  (Am. Compl. ¶ 84.)   He claims that there are at least 5,000 members of the Class (which can be broken down into Sweep-Fees Sub-Class, Federal Securities Sub-Class, and RICO Sub-Class) and that the affected fiduciary accounts collectively have assets of more than $300 billion.  (Am. Compl. ¶¶ 83-84.)

In his Amended Complaint, Plaintiff defines the Class Period as running "from the earlier of the Bank's investment of fiduciary assets in any of its proprietary mutual funds or the imposition of 'sweep fees' on fiduciary accounts to the present . . . [excluding] any claims that were validly released by the [Parsky settlement]."  (Am. Compl. ¶ 85.)

Plaintiff on behalf of the Class seeks: (1) class certification and appointment of Plaintiff and his counsel to represent the class; (2) entry of judgment on each of Plaintiff's claims in his favor; (3) an accounting and repayment of unjust enrichment; (4) damages, including compensatory, restitution, recissory, and punitive; (5) injunction removing the Bank as fiduciary for all accounts in which Class members are currently beneficiaries; (6) injunction providing for new procedures at the Bank to address the conflict of interest, including creation of a "Chinese Wall," ending "sweep fees," and/or outsourcing financial management of fiduciary account assets, as well as the appointment of an overseeing ombudsman; (7) injunction providing for the Bank's proprietary mutual funds to select investment advisors based on objective criteria; and (8)

incidental relief, punitive damages, and costs and attorneys' fees.  (Am. Compl. ¶ 82 & pp. 53-56.)

### III.  Legal Standard for Motion to Dismiss

Dismissal of a complaint pursuant to Rule 12(b)(6) is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  The court must accept all of plaintiff's allegations as true and draw all reasonable inferences therefrom.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) ("[T]he material allegations of complaint are taken as admitted.");  Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir. 1993) ("At all times in reviewing a motion to dismiss we must 'accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom.'" (quoting Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990))).

### IV.  Discussion

A.      Plaintiff's Claims Are Barred By The Parsky Settlement.

Defendants argue that Plaintiff's claims are precluded by the Parsky settlement because the claims in both cases share the same factual predicate.  Plaintiff, however, claims he did not receive notice of the settlement and did not consent to it.  He argues that, even if he had received the notice sent under Parsky, the notice was too vague and ambiguous to provide sufficient notice.  Therefore, he argues that the Parsky settlement does not bar his claims.

7

In the alternative, Plaintiff argues that the <u>Parsky</u> settlement is not a bar because his claims are based on actions that occurred after the settlement was executed, that is, his claims are predicated on purchases and sales of Evergreen Funds since June 2, 2003. (Am. Compl. ¶ 114.) He asserts that his claims and other claims addressed in the <u>Parsky</u> settlement are not the same and arise from different facts.

After review of the Amended Complaint, the <u>Parsky</u> release, and the briefs and oral arguments of counsel, the court finds that Plaintiff's claims must be dismissed as a matter of law because Plaintiff legally is barred from collaterally attacking notice of the <u>Parsky</u> settlement and his claims, under fact and law, are precluded.

**1.      Plaintiff May Not Collaterally Attack Notice Of The <u>Parsky</u> Settlement.**

A plaintiff's ability to attack collaterally notice of a prior settlement is limited. An absent class member may only collaterally attack notice of a prior settlement if there was a lack of due process. <u>In re Diet Drugs Prods. Liab. Litig.</u>, 431 F.3d 141, 145-46 (3d Cir. 2005). There is "a failure of due process only in those cases where it cannot be said that the procedure adopted fairly insures the protection of the interests of absent parties who are to be bound by it." <u>Id.</u> at 145 (quoting <u>Hansberry v. Lee</u>, 311 U.S. 32, 42 (1940)).

Opt-out procedures fully satisfy due process requirements for class action suits. <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 812 (1985) (finding that "a fully descriptive notice [sent] first-class mail to each class member, with an explanation of the right to 'opt-out,' satisfies due process"); <u>cf.</u> <u>Prince George Ctr. v. U.S. Gypsum Co. (In re Prudential Ins. Co. of Am.)</u>, 704

A.2d 141, 148 (Pa. Super. 1997) (finding that, under Pennsylvania law, actual receipt of notice

by a class member is not required to bind an absent class member and that a plaintiff is bound by

the settlement agreement if he or she had the ability to opt-out and did not choose to do so).  In a

settlement where opt-out rights were given, there must be "adequate representation by the class

representatives, notice of the class proceedings, and the opportunity to be heard and participate in

the class proceedings."  In re Diet Drugs Prods. Liab. Litig., 431 F.3d at 145 (citing Phillips

Petroleum, 472 U.S. at 811-12).

Once issues of due process protections for class members have been decided by a court,

they may not be relitigated.  Id. at 146.  Prior to approving a settlement, a court necessarily

decides these very issues.  A judge of the Philadelphia Court of Common Pleas approved the

Parsky settlement, including its method of notice.  Consequently, there is no issue of lack of due

process.  Because adequacy of notice has already been decided, it may not be relitigated.  See id.

Therefore, Plaintiff may not collaterally attack the Parsky settlement agreement.[6]


**2.      Plaintiff's Claims Are Precluded By The Parsky Settlement.**

Plaintiff argues that the Parsky settlement does not preclude his claims because the

---

[6]  Relying on a Pennsylvania Supreme Court case, Wilkes v. Phoenix Home Life Mut.
Ins. Co., 902 A.2d 366 (Pa. 2006), Plaintiff argues for broad collateral substantive review of the
adequacy of class notice.  Plaintiff's reliance on Wilkes, however, is misplaced.  The Wilkes
court addressed the issue of notice for purposes of *res judicata* and whether full faith and credit
should be given to a judgment from another state.  Id. at 383.  The court was careful to draw a
distinction between the issues under consideration and "the inquiry into adequacy [of notice] for
class action purposes."  Id.  Here, neither *res judicata* nor the constitutional issue of full faith and
credit is raised.

Parsky release was solely limited to the tax consequences of conversions and over-reporting of capital gains.  Plaintiff avers that the claims – that Defendants breached their duty by investing in proprietary mutual funds claims, charging unjustified and excessive sweep fees and additional fees, and failing to disclose material information about these investments  – are unrelated to those in Parsky.  He also argues that his claims cover conduct occurring after the Parsky settlement. Defendants counter that the plaintiffs in Parsky previously alleged that the Defendant had breached its fiduciary duty and engaged in self-dealing by investing in proprietary funds and, because Plaintiff's present claims are based on the same factual predicate, they are legally barred.

       a.       ***The Parsky Settlement Bars Later Claims Based On The Allegations Underlying The Claims Covered By It.***

The Third Circuit has held that "a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action . . . even though the precluded claim was not presented, and could not have been presented, in the class action itself."  In re Prudential Ins. Co. of Am. Sales Practice Litig., 261 F.3d 355, 366 (3d Cir. 2001) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268 (9th Cir. 1992) (finding that a federal court may release claims over which it does not have subject-matter jurisdiction where the state claims arise from a common nucleus of operative facts); In re Baldwin United Corp. (Single Premium Deferred Annuities Ins. Litig.), 770 F.2d 328, 336 (2d Cir. 1985) (applying the rule in TBK Partners); TBK Partners, Ltd. v. Western Union Corp., 675 F.2d 456, 460 (2d Cir. 1982) (establishing that a class action settlement can bar later claims based on allegations underlying the claims covered by the settlement even where the precluded claims were not and could not

have been presented in the class action itself)).  The Third Circuit has held that even claims that

were unknown at the time of settlement can be covered by releases.  See Three Rivers Motors

Co. v. Ford Motor Co., 522 F.2d 885, 896 (3d Cir. 1975) (applying Pennsylvania law to hold that

"where the parties manifest an intent to settle all accounts, the release will be given full effect

even as to unknown claims").[7]


      **b.**    ***The Parsky Release Is Valid.***

The release in the Parsky Stipulation of Settlement, July 24, 2003, reads:

> 'Released Claims' means each and every direct, individual, class, representative, derivative and other claim, right, action, allegation, demand, defense, counterclaim, issue, setoff, liability, penalty, and *cause of action of every nature whatsoever, known or unknown, suspected or unsuspected*, including (without limitation) all claims for damages, restitution, disgorgement or recission, or any other legal or equitable relief, liquidated or unliquidated, which the Releasors, or any of them, *had, now has or may hereafter have* against the Releasees, or any of them, *arising from or in connection with or in any way related*, directly or indirectly, to *any* of the acts, facts, matters, transactions, events, occurrences, disclosures, statements, representations, omissions, or failures to act set forth, alleged, referred to or otherwise embraced in this case . . . .

(Am. Compl. ¶ 34, Parsky Stipulation, ¶ 22 (emphasis added).)

---

[7] "[A] federal court may release claims over which it has no subject matter jurisdiction if the state claims arise from the *same nucleus of operative facts* as the claims properly before it." In re Prudential, 261 F.3d at 366 (citations omitted) (emphasis added); see Grimes v. Vitalink Comm. Corp., 17 F.3d 1553, 1562 (3d Cir. 1994) (finding that facts underlying federal non-disclosure claims in a federal securities lawsuit were litigated and resolved in state court proceedings and that plaintiffs were precluded from relitigating the issue), cert. denied, 513 U.S. 986 (1994).  This rule promotes judicial economy by preventing the relitigation of settled questions resolved in comprehensive settlement agreements.  In re Prudential, 261 F.3d at 366.  Thus, the Parsky settlement bars later claims presented in this action if it is shown that such claims are based on the allegations underlying the claims in Parsky, even if the precluded claims were not presented and could not have been presented in Parsky.  See id.

A review of Third Circuit precedent reveals that broad language in settlement releases, such as in the Parsky release, have been upheld as valid. In In re Prudential Insurance Company of America Sales Practice Litigation, a class of policy holders in a prior nationwide class action had alleged that Prudential had engaged in deceptive sales practices. 261 F.3d at 358. Eventually, a settlement was agreed upon and approved by the court. Id. at 359. The settlement released Prudential from any claims "that *have been, could have been, may be or could be alleged or asserted now or in the future . . .* on *the basis of, connected with, arising out of, or related to*, in whole or in part" the class policies. Id. at 367 (emphasis added).

The plaintiffs in In re Prudential had opted-out of the class for two of their policies, but had remained class members with regard to two other policies. Id. at 360. They brought a separate suit in state court against Prudential alleging deceptive and fraudulent practices with respect to the two policies excluded from the class. Id. at 361-62. The district court enjoined the plaintiffs from bringing suit and dismissed their separate action. Id. The Third Circuit affirmed, concluding that plaintiffs' claims in their state court action on the excluded policies were based on the same factual predicates as the class policies in the settled class action and that the broad language of the settlement release covered plaintiffs' claims. Id. at 367-68, 370.

The language of the Parsky release is almost identical to the broad language of the release in In re Prudential and those in other cases upheld by the Third Circuit. See In re Prudential, 261 F.3d at 367; see, e.g., Monaco v. Mitsubishi Motors Credit of Am., 34 Fed. Appx. 43, 45 (3d Cir. 2002) (unpublished) (enforcing a settlement agreement releasing "claims of *any kind, known, or unknown*, that class members *had, have or may in the future have arising out of* the class members vehicle leases" (emphasis added)); Grimes, 17 F.3d at 1554 n.1 (enforcing a settlement

12

agreement releasing "[a]ll claims, rights, causes of action, suits, matters and issues, *known or unknown*, that *arise now or hereafter out of, or that relate to, or that are, were or could have been asserted in connection with* [defendant's] employment agreements . . . or any matters, transactions or occurrences referred to in the Complaint or any other complaint in the Consolidated Action . . . or other activities relating to any of the foregoing" (emphasis added)); <u>Three Rivers Motors</u>, 522 F.2d at 895 (enforcing a settlement agreement releasing claims that "*have had, now have or which they or any of them hereafter* can, shall, or may have, upon or by reason of any matter, cause or thing *whatsoever from the beginning of the world to the date of these presents*" (emphasis added)).

The broad language of the <u>Parsky</u> release, typical of general release language, indicates a "clear intent to leave nothing open and unsettled between the parties."  <u>See</u> <u>Three Rivers Motors</u>, 522 F.2d at 895.  The language of the <u>Parsky</u> release is not overly broad, is valid, and provides sufficient notice.

   **c.**   ***Plaintiff's Claims Share The Same Factual Predicate With Those Released In The <u>Parsky</u> Settlement And Are Precluded.***

Despite the plaintiff's attempts to frame their claims in a way that is distinguishable from <u>Parsky</u>, Defendants' chart used at oral argument to compare the <u>Brooks</u> and <u>Parsky</u> Amended Complaints[8] demonstrates their striking similarity.  (<u>See</u> Def. Reply In Support of Mot. to

---

  [8]  Although not physically attached to Plaintiff's Amended Complaint, the <u>Parsky</u> Amended Complaint is a matter of public record, is incorporated by reference in the present Amended Complaint, and therefore is deemed attached to the Amended Complaint.  (<u>See</u> Am. Compl. ¶¶ 31-40.)

Dismiss Pl.'s Am. Compl. 5-8.)  Defendants' chart used at oral argument is replicated below:

| **Parsky, et al. v. Wachovia Bank, N.A., et al.** <br><br> **From the Parsky Amended Complaint (attached as Exhibit E to Defendants' Motion)** | **Brooks, et al. v. Wachovia Bank, N.A., et al.** <br><br> **From the Brooks Amended Complaint** |
| --- | --- |
| **As part of its merger plans, the Bank allegedly decided to invest trust assets in affiliated mutual funds to reduce its expenses and maximize its profits:** <br><br> "16. At some time prior to April 23, 1999, First Union [the Bank's predecessor] decided to terminate the . . . common trust funds . . . and attempt to convert the investments in those common trust funds into shares of certain mutual funds in First Union's Evergreen family of mutual funds. Such termination and conversion would benefit First Union by reducing administrative and other management expenses, increasing non-advisory fees paid to First Union by members of the class, and achieving some of the economies and efficiencies that were contemplated as a result of First Union's acquisitions of CoreStates and Signet." <br><br> See also Parsky Amended Complaint, ¶ 43. | **As part of its merger plans, the Bank allegedly decided to invest trust assets in affiliated mutual funds to reduce its expenses and maximize its profits:** <br><br> "25. In the course of Wachovia's long chain of acquisitions of other financial institutions, . . . it relied increasingly on squeezing more and more revenues and profits from fiduciary operations, including standardizing the investment of fiduciary assets and forcing them, increasingly, into proprietary funds." <br><br> "28. Beginning some time prior to 1998, Wachovia developed various plans and schemes pursuant to which it and the Bank sought to minimize the operating expenses with respect to fiduciary accounts and maximize their profits from this aspect of their business. Wachovia's plan included the consolidation and elimination of the previously existing trust departments of the Bank and the Acquired Banks and by carrying out the Conversions [of exchanging investment units of common trust funds into shares of affiliated mutual funds]." <br><br> See also Amended Complaint, ¶¶ 71, 90(c), 93. |
| **The Bank used the trust assets to seed and grow its affiliated mutual funds:** <br><br> "16. … In addition, the large influx of money into the Evergreen funds would benefit First Union by causing Evergreen to appear to be a rapidly growing family of mutual funds. Such termination and conversion offered no comparable benefits to plaintiffs and the other members of the class, the beneficiaries of the trusts." | **The Bank used the trust assets to seed and grow its affiliated mutual funds:** <br><br> "29. Pursuant to such business plans, the Bank decided to utilize the assets within its control, including funds held by the Bank in fiduciary accounts, to fund a group of new Evergreen Funds (some newly formed with no operating history) and/or to add assets to existing Evergreen Funds." |

14

| **The Bank holds itself out as an expert in investments and financial management:** | **The Bank holds itself out as an expert in investments and financial management:** |
|---|---|
| See Parsky Amended Complaint, ¶ 15. | See Amended Complaint, ¶¶ 48, 49. |
| **The investment of trust assets in affiliated mutual funds allegedly was done to benefit the Bank:** | **The investment of trust assets in affiliated mutual funds allegedly was done to benefit the Bank:** |
| "16. At some time prior to April 23, 1999, First Union decided to . . . convert the investments in [certain] common trust funds into shares of . . . [the] Evergreen family of mutual funds. Such termination and conversion would benefit First Union by reducing administrative and other management expenses, increasing non-advisory fees paid to First Union by members of the class . . . In addition, the large influx of money into the Evergreen funds would benefit First Union by causing Evergreen to appear to be a rapidly growing family of mutual funds. Such termination and conversion offered no comparable benefits to plaintiffs and the other members of the class, the beneficiaries of the trusts." | "53. . . . Indeed, the actions of Wachovia and the Bank were driven purely by their desire to maximize their profit rather than by the Bank's obligations to the beneficiaries entrusted to it." |
|  | "143. Upon information and belief, in conspiracy with the other defendants, the Bank failed to consider the best interests of the fiduciary account of the Brooks Trust and the accounts of other members of the Class when it invested fiduciary assets in the Evergreen Funds and/or charged such accounts 'sweep fees' as well as other unjustified charges and breached its duty of loyalty to plaintiff and other Class members by putting the interests of itself and its affiliates before the interests of plaintiff and the members of the Class." |
| "27. Indeed, the only apparent reasons for the terminations and conversions were First Union's own interests in consolidating operations, reducing administrative expenses, making more money in non-advisory fees, and building up the Evergreen family of mutual funds. Class members' investments were converted to First Union's Evergreen mutual funds that purportedly had policies and objectives similar to or consistent with those of the corresponding former common trust funds, but with non-advisory fees up to 25 times higher than the non-advisory fees charged to manage the common trust funds. The conversions were not in the interests of the beneficiaries." | "142. The Bank's decisions to invest the assets of the Brooks Trust and those of the members of the Class in the Evergreen Funds and other proprietary funds and to charge 'sweep fees' to fiduciary accounts were motivated not by the interests of plaintiff and the Class members, but by the Bank's desire to generate investment advisory and other fees for itself and its affiliates and, as well as, to reduce the Bank's operating expenses, all of which as carried out in the manner described above, was wrongful and damaged plaintiff and each member of the Class." |
| "47. First Union breached its fiduciary duties to plaintiffs and other members of the class by engaging in self-dealing." |  |

15

| | |
|---|---|
| **By investing trust assets in affiliated mutual funds, the Bank breach[ed] its fiduciary duty:** | **By investing trust assets in affiliated mutual funds, the Bank breach[ed] its fiduciary duty:** |
| "42. First Union breached its fiduciary duties to plaintiffs and the other members of the class by failing to administer the trust funds solely in the interests of the beneficiaries." | "63. Instead, the Bank, consistent with its overall nationwide corporate policy, uniformly applied its mandate that trust assets (including, in particular, those in *all* irrevocable trust accounts) be invested in Evergreen Funds. By virtue of its wholesale abrogation of its fiduciary obligations and its failure to act as a prudent investor would, the Bank breached its fiduciary duties and damaged all members of the Class." |
| **The Bank allegedly breached its fiduciary duty by failing to disclose information about the affiliated mutual fund investments:** | **The Bank allegedly breached its fiduciary duty by failing to disclose information about the affiliated mutual fund investments:** |
| "45. First Union breached its fiduciary duties to plaintiffs and the other members of the class by failing to furnish information and by failing to disclose all the material facts involving the conversion of their trusts." | "119. These Registration Statements and Post-Effective Amendments also failed to disclose that among the risk factors faced by investors in Evergreen Funds was the risk that, because its Board of Trustees selected and contracted with Evergreen to provide investment management and administrative services on a "no-bid" basis, Evergreen Funds were being charged excessive fees for such services and because the Board of Trustees was not objective in its selection of investment advisers to the Evergreen Funds, shareholders were not able to obtain the most qualified personnel and the lowest cost consistent with such quality." |
| **By investing trust assets in affiliated mutual funds, the Bank allegedly put its own interests first:** | **By investing trust assets in affiliated mutual funds, the Bank allegedly put its own interests first:** |
| "46. First Union breached its fiduciary duties to plaintiffs and the other members of the class by putting its own interests, including its interests in consolidating operations, reducing administrative expenses, receiving larger nonadvisory fees, and building up the Evergreen mutual funds, ahead of the beneficiaries' interests in avoiding or deferring tax liability and receiving complete and accurate information about the management of their investments." | "142. The Bank's decisions to invest the assets of the Brooks Trust and those of the members of the Class in the Evergreen Funds and other proprietary funds and to charge 'sweep fees' to fiduciary accounts were motivated not by the interests of plaintiff and the Class members, but by the Bank's desire to generate investment advisory and other fees for itself and its affiliates and, as well as, to reduce the Bank's operating expenses, all of which was carried out in the manner described above, was wrongful and damaged plaintiff and each member of the Class." |

16

The Parsky claims do not focus solely on the tax consequences of the conversion, as Plaintiff contends. The Parsky Amended Complaint duplicates Plaintiff's claims of breach of fiduciary duty arising from the Bank's alleged conversion of assets in its fiduciary accounts into shares of its proprietary Evergreen Funds, the claimed charging of inflated non-advisory fees, the claimed failure to administer the trust funds solely in the interest of the beneficiaries, and the claimed failure to disclose material facts concerning the conversion of trusts into shares of Evergreen funds. Plaintiff's claims for "breach of fiduciary duty and unjust enrichment [are] based upon, *inter alia*, defendants' unnecessary and duplicative investment advisory and administrative fees, the Bank's charging of 'sweep' fees, [its] misrepresentations in Registration Statements surrounding the purchase and sale of Evergreen funds . . . , and violation of applicable federal law." (Pl.'s Mem. of Law in Opp. to Def.'s Mot. to Dismiss Am. Compl. 16.)

Although the Parsky Amended Complaint did not specifically mention "sweep fees," Plaintiff's claim regarding sweep fees shares the same factual predicate as the allegedly excessive non-advisory fees cited in the Parsky complaint. Both claims arise from the same alleged scheme and concurrent factual predicates, that is, investment of fiduciary assets in proprietary mutual funds and the imposition of fees to the benefit of the trustee and against the interests of the beneficiaries.

Furthermore, the Parsky settlement resolved the question of the trustee's discretion to charge fees and to make investments in the administration of the trust so long as its actions were consistent with the particular trust agreement. Thus, the release of any future claims was acknowledgment by class members that the exercise of the trustee's discretion, consistent with the trust authorization for investment and charging of fees, would not be the subject of future

17

lawsuits.  Plaintiff released claims about the administration of his trust that are permitted by the

Trust agreement or by law.  The use of sweep fees was consistent with Pennsylvania law.[9]

Plaintiff does not allege that the Brooks Trust agreement was individually violated and cannot

allege that sweep fees generally are improper or are per se unreasonable.

A claim by claim comparison undercuts Plaintiff's argument that the acts alleged

occurred after the Parsky settlement and that the claims are based on separate factual allegations.

Plaintiff argues that its allegations of purchases and sales by Wachovia of Evergreen Funds for

Plaintiff's trust account include purchases in September, October, and November of 2005 and

sales in October 2005, which post-date the Parsky settlement.

In Ross v. Metropolitan Life Insurance Company, a similar argument was raised and

rejected.  411 F. Supp. 2d 571 (W.D. Pa. 2006).  There, the three members of a putative class

alleged that the defendant issued policies that breached contracts with the plaintiffs, and that the

defendants misled the plaintiffs.  Id. at 573.  The settlement in the prior case released *any* claims

during a class period that ended in 1997.  Id. at 574.  The issue before the court was whether *all*

claims regarding any policy issued during the class period were barred.  Id. at 575.  Finding that

notice had been adequate, the court concluded that the plaintiffs' claims were precluded by the

---

[9] Pennsylvania law explicitly allows the use of sweep fees.  20 Pa. C.S.A. § 7207(b) ("A fiduciary may make temporary investment of funds which the fiduciary is entitled to hold uninvested . . . without regard to any investment restrictions imposed by the governing instrument and may make a reasonable charge."); 20 Pa. C.S.A. § 7315.1(b); see In re Packard Trust, 12 Fiduciary Rep. 2d 148, 150-51 (O.C. Mont. Co. 1992) (holding that Pennsylvania's Probate, Estates and Fiduciaries Code permits fiduciaries to sweep income into temporary investment funds and "to charge a reasonable fee, *in addition to* all other compensation, for said temporary investments," affirming these practices, and dismissing claims objecting to these practices).

prior settlement.  Id. at 580.  The court observed that it was

> not persuaded by [plaintiff's] claim that he is not challenging actions occurring
> within the Class Period, but, instead, that he is challenging the yearly decisions of
> [defendant] which sets the charges for his policies.  First, the same yearly events,
> i.e. setting charges or dividends, occurred during the Class Period.  Second, the
> setting of the actual rates or charges were the result of the initial sale and
> classification of the policies, which also occurred during the class period. . . . A
> class member should not be permitted to plead around a broad Release and Waiver
> negotiated in a complex lawsuit merely by asserting that some facts associated with
> his claim occurred outside of the Class Period.

Id. at 578 n.3.

As in Ross, any securities claim that Plaintiff may now have would have ripened during
the time period before the Parsky settlement.  The same acts about which Plaintiff complains,
that is, the investment in proprietary mutual funds claims in disregard of the interests of
beneficiaries, the charging of excessive fees, and failing to disclose material information about
these investments, occurred during the Parsky class period.  The purchases and sales of
Evergreen Funds complained of here are the result of the alleged initial conversion of assets in
Wachovia's fiduciary accounts into shares of its proprietary Evergreen Funds, which occurred
during the Parsky class period.  Plaintiff cannot plead around the Parsky release by only asserting
claims for acts occurring after the date of settlement.


## V.  Conclusion

For the foregoing reasons, Defendants' motion to dismiss is granted.  An appropriate
Order follows.


19